COPY

1   FAYER GIPSON LLP
    Gregory A. Fayer (State Bar. No. 232303)
2   GFayer@fayergipson.com
    Elliot B. Gipson (State Bar. No. 234020)
3   EGipson@fayergipson.com
    Minh Z. Kuo (State Bar No. 287489)
4   MKuo@fayergipson.com
    2029 Century Park East, 34th Floor
5   Los Angeles, California 90067
    Telephone: 310.557.3558
6   Facsimile:  310.557.3589

7
    Attorneys for Plaintiff
8   CYBERsitter, LLC

9

BY
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2012 JUN 18 PM 4: 07
FILED

10          UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

12

13  CYBERsitter, LLC, a California limited        CASE NO. CV12-5293 -RSWL
    liability company,                                          (AJWx)
14
            Plaintiff,                            COMPLAINT FOR:
15
                                                 1.  **DIRECT AND CONTRIBUTORY
16      v.                                            TRADEMARK INFRINGEMENT
                                                     (15 U.S.C. § 1125(A))**
17  Google Inc., a Delaware corporation;
    ContentWatch, Inc., a Utah corporation,      2.  **DIRECT AND CONTRIBUTORY
18  d/b/a Net Nanny; and DOES 1-10, inclusive,       TRADEMARK INFRINGEMENT
                                                     (CAL. BUS. & PROF. CODE
19          Defendants.                               § 14200 ET SEQ.)**

20                                               3.  **FALSE ADVERTISING
                                                     (15 U.S.C. § 1125(A))**
21
                                                 4.  **FALSE ADVERTISING
22                                                   (CAL. BUS. & PROF. CODE
                                                     § 17500)**
23
                                                 5.  **UNFAIR COMPETITION
24                                                   (CAL. BUS. & PROF. CODE
                                                     § 17200)**
25
                                                 6.  **UNJUST ENRICHMENT**
26
                                                 **DEMAND FOR JURY TRIAL**
27

28

                              COMPLAINT

Plaintiff CYBERsitter, LLC ("CYBERsitter" or "Plaintiff") alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark infringement, false advertising, unfair competition and unjust enrichment against defendants Google Inc. ("Google") and ContentWatch, Inc. d/b/a Net Nanny ("CWI" or "Net Nanny/CWI") (collectively, "Defendants").

2.     The claims herein stem from Defendants' unauthorized misappropriation of Plaintiff's "CYBERSITTER" trademark, and the false and misleading use of that mark in paid advertisements for Plaintiff's competitors' products, including as part of Google's AdWords advertising platform.  The Defendants named herein intentionally and wrongfully used a bait and switch strategy to confuse consumers into purchasing a competing product, namely, by using the CYBERSITTER trademark in false advertising to attract consumers, then selling the consumers the Net Nanny/CWI product once they had been wrongfully misdirected to defendant's website.  Through this misappropriation, defendant Net Nanny/CWI has attempted to capitalize on and siphon off the goodwill associated with Plaintiff's CYBERsitter product.  Defendant Google has willfully participated in, facilitated and encouraged these acts for its own financial gain.  This action seeks to put an end to Defendants' illegal conduct, to recompense Plaintiff for the damages it has suffered, and to restore the profits that Defendants have gained through their false and deceptive advertising practices.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338 and 1367.

4.     This Court has personal jurisdiction over Defendants because Defendants conduct business in this District, Defendants have taken unlawful actions that have caused injury to Plaintiff in this District, and defendant Google is a citizen of the State of California.

1

COMPLAINT

FAYER GIPSON LLP

5.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District and a substantial part of the property that is the subject of the action is situated within this District.

6.     Defendants, at all relevant times, have had actual knowledge that CYBERsitter was located in the Central District of California, and that their infringement of CYBERsitter's mark would damage CYBERsitter in the Central District of California.

## THE PARTIES

7.     Plaintiff CYBERsitter is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Santa Barbara, California.  CYBERsitter is engaged in the business of software development and sales.  In particular and as relevant here, CYBERsitter developed, markets and sells the Internet content filtering program known as "CYBERsitter."

8.     Defendant Google Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Mountain View, California.  Google is one of the world's largest providers of Internet search engine services.  Google also solicits and sells advertising to be displayed in conjunction with the keyword searches conducted by Google's users.

9.     Defendant ContentWatch, Inc. is a corporation organized and existing under the laws of the State of Utah, with its principal offices located in Salt Lake City, Utah.  CWI does business, *inter alia*, under the name "Net Nanny," which it has registered as a d/b/a with the Utah Secretary of State.  As relevant here, CWI is engaged in the business of marketing and selling an Internet content filtering software program known as "Net Nanny."  Plaintiff is informed and believes that CWI purchased the rights to the name "Net Nanny" and other associated intellectual property in or about 2007, pursuant to an asset purchase agreement with CWI's predecessor in interest, LookSmart, Ltd. ("LSL"), a Delaware corporation with its

principal place of business in San Francisco, California.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as DOES 1-10, inclusive, are unknown at the present time and Plaintiff therefore sues said DOES and each of them by such fictitious names.   If necessary, Plaintiff will seek leave of court to amend this complaint to allege their true names and capacities when they are ascertained.

11.     Unless otherwise indicated herein, on information and belief, each of DOES 1-10, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants and at all relevant times each of the Defendants was the principal or agent, partner, independent contractor, loan-out company, servant and/or employee of at least one other of the other Defendants and all of the acts performed by them or omissions alleged herein were made in the course and scope of their employment, agency, partnership or other such relationship and with knowledge, consent, approval and/or ratification of the principals and each of them.   Unless otherwise indicated herein, each of the parties herein named as DOES 1-10 are responsible in some manner or fashion and is liable and responsible on the facts alleged herein for all the relief sought.

## GENERAL ALLEGATIONS

### The CYBERsitter Software and the "CYBERSITTER" Mark

12.     CYBERsitter is a family-owned software company based in Santa Barbara, California.   CYBERsitter markets and sells various software products, including an Internet content filtering software program known as "CYBERsitter." The CYBERsitter program, which was created by CYBERsitter's principal, Brian Milburn, was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Internet.

13.     The CYBERsitter program was first introduced to the public in 1995.   It

FAYER GIPSON LLP

was the first Internet content filtering program to be marketed and sold to the public. Since its introduction in 1995, the CYBERsitter program has been continuously marketed and sold to the public by CYBERsitter.

14.     When the CYBERsitter program was first introduced, the program was initially sold to consumers in a CD form.  Over time, however, CYBERsitter transitioned from physical sales model to an Internet download model.  As of today, CYBERsitter no longer sells physical copies of the CYBERsitter program.  The product is now sold by CYBERsitter exclusively on its website, www.CYBERsitter.com, at a cost of $39.95 per copy.

15.     As a result of CYBERsitter's marketing and sales efforts over the past 17 years, CYBERsitter has become one of the most recognizable names in Internet content filtering, perhaps the most recognizable.  It is used by parents, schools and businesses around the globe. CYBERsitter now boasts over two million active CYBERsitter users worldwide.   The CYBERsitter program has won numerous awards, including winning *PC Magazine*'s prestigious Editor's Choice Award five times.

16.     As a result, the "CYBERSITTER" mark has come to be well-known amongst consumers throughout the United States and throughout the world. CYBERsitter is the owner of trademark rights in the CYBERSITTER mark. Defendants, at all relevant times, have had actual and constructive knowledge that the CYBERSITTER mark is a trademark developed, used and owned by CYBERsitter. Indeed, Defendants' actions alleged herein were intentionally designed to trade upon the goodwill associated with the CYBERSITTER mark.

<u>The Google "AdWords" Advertising Platform and Policies</u>

17.     Google is one of the world's leading Internet search engines.  Google's search engine operates by providing users who enter certain "keywords" with a catalogue of web pages and links responsive to their keyword search.

18.     Google's primary source of revenue comes from paid advertisements that

4

COMPLAINT

Google displays on its search engine, as well as on other websites for which Google provides sponsored ads. In response to Google keyword searches, Google displays paid advertising results called "sponsored links" in conjunction with the other search results. The Google "sponsored links" appear both at both the top and bottom of the search results for a given keyword search.

19. The paid ads are displayed in a format virtually identical to that of the non-paid results – they are displayed with a webpage caption highlighted in blue, followed by a URL address highlighted in green, followed by a description of content from the site, which (for some entries only) is followed by a beige arrow pointing to other potentially related links. The only apparent distinction between the paid ads and the natural search results is that the paid ads are highlighted in yellow and there is a small banner above them indicating that the sponsored links are "Ads" related to the keyword search.

20. In or about 2000, Google launched a paid advertising program know as the "AdWords" program. The AdWords program allows sponsors to purchase certain keywords that will trigger the sponsor's advertisement whenever a user conducts searches using the keywords.

21. Until 2004, Google's internal trademark policies forbade the use of any trademark not owned by the sponsor as a sponsor's keyword. The policies also forbade the use of trademarks not owned by a sponsor in the context of the sponsor's advertisement itself.

22. In or about 2004, however, Google changed its internal trademark policies to permit the use of third-party trademarks as keywords, even in cases in which the mark's owner objected to the use. This change was based in part upon Google's internal studies that showed that its advertising revenues would increase if it permitted broader use of third-party marks, although the studies also noted that permitting the use of third-party marks would increase the likelihood of trademark infringement claims by third parties. Google nevertheless maintained its prohibition

on the use of third-party trademarks in a sponsor's advertisement itself.

23.    In or about 2009, however, Google once again reevaluated and changed its internal trademark use policies.  This time Google decided to permit the use of third-party trademarks even in the context of a sponsor's advertisement itself, even over the objections of the trademark owner.  This change was also based upon Google's own internal studies that showed that allowing broader use of third-party trademarks would increase Google's profits, while also noting that permitting the use of third-party marks in advertising would increase the likelihood of trademark infringement claims by third parties.  By effecting this change in policy, Google took a calculated risk of permitting and facilitating potential trademark infringement in order to increase its profits.

24.    Today, Google's AdWords program permits third-party trademarks to be "auctioned" off to the highest bidder for use in Google's paid advertising program, even over the objections of the trademark owner.   Google's advertisers bid competitively to jockey for the highest page placement when Google users search for a competitor's trademarks.  Google itself suggests trademarks and other keywords to its advertisers to use as triggers for the paid ads.  The highest bidders then pay Google on a "cost-per-click" basis, whereby Google receives a fee whenever a Google user clicks on the sponsored link.  Google thus has a financial incentive to entice its users to click on the sponsored links rather than on the ordinary search results, from which Google gets nothing.

25.    While Google's policies now permit and encourage the use of third-party marks both as keywords and in the paid advertisements themselves, Google's policies nevertheless limit the use of third-party trademarks in paid advertisements to situations in which the sponsor (a) is a reseller of the trademarked product or service, (b) makes component parts of the trademarked product or service, (c) offers compatible parts for the trademarked product or service, or (d) provides information or reviews about the trademarked product or service.  Pursuant to these policies,

Google has taken steps to ensure compliance with these limitations on the use of third party marks, including, but not limited to, using automated search devices and/or human searches to ensure that any sponsored link that advertises a product for sale actually sells that product on the site to which the Google ad is directed.

The False Ads Displayed as Part of the Google AdWords Program

26.    In the years after CYBERsitter was introduced to the public, several other commercial content-filtering programs entered the market.   Among these was a program developed and marketed by defendant CWI's predecessors in interest.   The program, called "Net Nanny," was first introduced to the public in the mid-1990's. Over the years, the makers of Net Nanny became one of CYBERsitter's primary competitors.

27.    Earlier this year, CYBERsitter's president, Brian Milburn, learned that Google and CWI, as part of Google's AdWords platform, were running paid advertisements for the Net Nanny program that incorporate and utilize the CYBERSITTER trademark (the "False Ads").   Upon investigation, the False Ads were displayed by Google whenever a user would search for the term "CYBERSITTER" or similar terms on the Google search engine.   Each of the False Ads made false, misleading, confusing and unauthorized use of the CYBERsitter mark.   The False Ads were often displayed as the first result in a user's search for the term "CYBERSITTER," as well as in similar and related searches incorporating the term.   Plaintiff is further informed and believes that a disproportionate percentage of Google users click on the first result in a user search.   CYBERsitter at no time authorized either Google or Net Nanny or any other party to use the CYBERsitter mark in connection with the False Ads.

28.    As but one example, one of the False Ads bears the caption "CYBERsitter | Net Nanny.com."   The text of this False Ad urges prospective consumers to: "Protect your child with #1 rated CYBERsitter software.  Just $29.99!" Similar False Ads target Mac users with the caption, "Mac CYBERsitter | Net

Nanny.com," and similar text stating: "Protect your child with #1 rated Mac CYBERsitter software. Save 25%!" There are several False Ads containing similar text and format. Plaintiff is informed and believes that defendant CWI owns and controls the NetNanny.com website.

29. The False Ads make verifiably false statements on their face. On reasonable investigation, the CYBERsitter program has never been offered for sale on the NetNanny.com website. CYBERsitter has never given permission or authorization to any party to sell the CYBERsitter program on the NetNanny.com website. Moreover, upon reasonable investigation, the Net Nanny website does not sell any product at a price of $29.99. The False Ads thus violate Google's own trademark use policies on their face, as the False Ads do not fall within any of the four permitted uses of third party trademarks set forth in Google's policies: CWI's paid ads advertise CYBERsitter for sale on the NetNanny.com website, but the product is not for sale on the site.

30. The False Ads not only make verifiably false statements and violate Google's own trademark use policies, the False Ads are also highly misleading and likely to cause consumer confusion. The False Ads create the false perception of an association between CYBERsitter and Net Nanny/CWI, and mislead consumers as to the source and sponsorship of the CYBERsitter program. Consumers are wrongly led to believe that the CYBERsitter program is made by, associated with or sponsored by Net Nanny/CWI and/or that the Net Nanny program is made by, associated with or sponsored by CYBERsitter. This perception has been created intentionally by Defendants, including through the design and use of the "CYBERsitter│Net Nanny.com" caption of the False Ads, the touting of CYBERsitter as the "#1 rated" program in the context of a Net Nanny/CWI advertisement, and the false statement that CYBERsitter is for sale on NetNanny.com – its competitor's website. Consumers are likely to believe that the Net Nanny program is the CYBERsitter program, or is a joint program sold by both CYBERsitter and Net Nanny, or that CYBERsitter and Net

COMPLAINT

Nanny/CWI have merged into one company and/or create common products. This is particularly true of consumers who click on the False Ads, but find only the Net Nanny program for sale on the sponsored website. Indeed, there has been at least one instance of actual confusion as to the source or origin of CYBERsitter's goods, as CYBERsitter has received at least one query based on the False Ads asking whether CYBERsitter had merged with Net Nanny/CWI.

31.     This confusion is increased by the fact that, the rights to the "NET NANNY" mark and associated marks were purchased in or about 2007 by defendant CWI as part of an asset purchase agreement with CWI's predecessor in interest, LSL. CWI also has its own content filtering software product known as "ContentWatch." While Net Nanny and ContentWatch are associated products, CYBERsitter is not associated with either of them and they are, in fact, CYBERsitter's competitors. Making matters worse, CWI also runs joint advertisements of the ContentWatch and Net Nanny programs through the Google AdWords platform that are strikingly similar to the False Ads.    The ads are captioned "Content Watch Net Nanny | ContentWatch.com," and they advertise "Easy to Install and Manage Content Watch Net Nanny."    These advertisements are designed to blur the distinction between ContentWatch and Net Nanny in a similar manner as the False Ads were designed to blur the distinction between Net Nanny and CYBERsitter. However, any suggestion of association or sponsorship between Net Nanny and CYBERsitter is false.

32.     The False Ads have caused damage to Plaintiff in the form of lost sales, lost profits, lost license revenues, consumer confusion and loss of goodwill among the consuming public from the false and misleading perceptions that Google and CWI have created through the False Ads.    In addition, Defendants have further been unjustly enriched though their violation of Plaintiff's rights, receiving fees, sales, revenues and a transfer of the goodwill of CYBERsitter's customers as a result of their illegal conduct.

**FIRST CLAIM FOR RELIEF**

**(TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a))**

**Against Defendants Google and DOES 1-10**

33.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 32 as if fully set forth herein.

34.    Plaintiff possesses a valid mark entitled to protection under the Lanham Act , 15 U.S.C. §§ 1051 *et seq.* – namely, the CYBERSITTER mark.

35.    Defendants Google and DOES 1-10 (collectively, the "Google Defendants") have used the CYBERSITTER mark, as well as confusingly similar marks such as "CYBER SITTER" (collectively, the "CYBERSITTER marks"), in commerce, including but not limited to: (i) by incorporating and displaying the CYBERSITTER marks in the text and/or title of paid advertisements that Google posts in conjunction with its users' keyword searches for the CYBERSITTER marks; (ii) by selling the right to use the CYBERSITTER marks to third parties as part of Google's paid advertising programs, including in the AdWords platform; (iii) by displaying the CYBERSITTER marks in close proximity to third party advertisements when its users search for the CYBERSITTER marks, and doing so in a manner that creates a likelihood of confusion amongst consumers of the products; and (iv) by displaying the CYBERSITTER marks in Google's proprietary directory for use in Google's paid advertising programs.

36.    The Google Defendants' use of the CYBERSITTER marks is likely to cause consumer confusion, or to cause mistake and/or deceive consumers as to the affiliation, connection, or association of Plaintiff's goods and services and/or the third party goods and services in conjunction with which the Google Defendants use the CYBERSITTER marks.    The Google Defendants' unlawful use of the CYBERSITTER marks is likely to cause consumers to believe, falsely, that CYBERsitter's goods and services are created, sponsored by and/or affiliated with third parties or third party goods and services; and/or that third party goods and

10

COMPLAINT

services are created, sponsored by and/or affiliated with CYBERsitter or its goods and services.

37.    The Google Defendants' use of the CYBERSITTER marks complained of herein is not and has never been authorized by Plaintiff.  The Google Defendants used the CYBERSITTER marks with the knowledge of and indifference to Plaintiff's rights to the CYBERSITTER marks.

38.    The Google Defendants' unlawful use of the CYBERSITTER marks was intentional, willful, and with reckless disregard and indifference to Plaintiff's rights. Indeed, the Google Defendants' unlawful acts were undertaken with the express purpose of encouraging and directing users searching for Plaintiff's CYBERsitter product to visit the websites of Plaintiff's competitors in order to increase the Google Defendants' advertising revenues.

39.    As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has suffered and will continue to suffer damages and the Google Defendants have been and continue to be unjustly enriched in an amount to be determined at trial.

40.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Google Defendants will continue to engage in conduct violative of the Lanham Act.  Plaintiff is entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF

## (TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a))

## Against Defendants CWI and DOES 1-10

41.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 40 as if fully set forth herein.

42.  Plaintiff possesses a valid mark entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* – namely, the CYBERSITTER mark.

43.  Defendants CWI and DOES 1-10 (collectively, the "CWI Defendants" have used the CYBERSITTER mark, as well as confusingly similar marks such as "CYBER SITTER," in commerce, including but not limited to: (i) by incorporating and displaying the CYBERSITTER marks in the text and/or title of advertisements for the CWI Defendants' competing goods and services, which the CWI Defendants pay Google to display in conjunction with keyword searches for the CYBERSITTER marks; and (ii) by causing the CYBERSITTER marks to be displayed in close proximity to the CWI Defendants' advertisements when Google users search for the CYBERSITTER marks, and doing so in a manner that creates a likelihood of confusion amongst consumers of the products.

44.  The CWI Defendants' use of the CYBERSITTER marks is likely to cause consumer confusion, or to cause mistake and/or deceive consumers as to the affiliation, connection, or association of Plaintiff's goods and services and/or the third party goods and services in conjunction with which the CWI Defendants use the CYBERSITTER marks.  The CWI Defendants' unlawful use of the CYBERSITTER marks is likely to cause consumers to believe, falsely, that CYBERsitter's goods and services are created, sponsored by and/or affiliated with third parties or third party goods and services; and/or that third party goods and services are created, sponsored by and/or affiliated with CYBERsitter or its goods and services.

45.  The CWI Defendants' use of the CYBERSITTER marks complained of herein is not and has never been authorized by Plaintiff.  The CWI Defendants used the CYBERSITTER marks with the knowledge of and indifference to Plaintiff's rights to the CYBERSITTER marks.

46.  The CWI Defendants' unlawful use of the CYBERSITTER marks was intentional, willful, and with reckless disregard and indifference to Plaintiff's rights. Indeed, the CWI Defendants' unlawful acts were undertaken with the express purpose

FAYER GIPSON LLP

of encouraging and directing users searching for Plaintiff's CYBERsitter product to visit websites on which the CWI Defendants' competing goods and services are offered in order to increase the CWI Defendants' revenues and siphon off the goodwill associated with Plaintiff's goods and services.

47.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has suffered and will continue to suffer damages and the CWI Defendants have been and continue to be unjustly enriched in an amount to be determined at trial.

48.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the CWI Defendants will continue to engage in conduct violative of the Lanham Act.  Plaintiff is entitled to preliminary and permanent injunctive relief.

## THIRD CLAIM FOR RELIEF

## (CONTRIBUTORY TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a))

## Against Defendants Google and DOES 1-10

49.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 48 as if fully set forth herein.

50.     With full knowledge of CYBERsitter's rights, the Google Defendants have knowingly facilitated and materially contributed to third party infringements of CYBERsitter's trademark rights in violation of the Lanham Act, including but not limited to: (i) by encouraging and facilitating third parties, including the CWI Defendants, to use the CYBERSITTER marks in paid advertisements in a false and misleading manner; (ii) by facilitating, encouraging and assisting in the incorporation and display of the CYBERSITTER marks in the text and/or title of paid advertisements that the Google Defendants post in conjunction with their users'

13

keyword searches for the CYBERSITTER marks, including the False Ads; (iii) by selling the right to use the CYBERSITTER marks to third parties, including the CWI Defendants, as part of the Google Defendants' paid advertising programs, including in the AdWords platform; (iv) by displaying the CYBERSITTER marks in close proximity to third party advertisements when Google users search for the CYBERSITTER marks in a manner that creates a likelihood of consumer confusion; and (iv) by displaying the CYBERSITTER marks in Defendants' proprietary directory in order to encourage and facilitate the unlawful use of the CYBERSITTER marks in the Google Defendants' paid advertising programs.

51.    The Google Defendants knew or should have known that the underlying infringing acts that they facilitated and to which they contributed are likely to cause consumer confusion, or to cause mistake and/or deceive consumers as to the affiliation, connection, or association of Plaintiff's goods and services and/or the third party goods and services in conjunction with which the Google Defendants use the CYBERSITTER marks.

52.    The Google Defendants' facilitation of and material contribution to the CWI Defendants' infringing acts was willful, intentional, and with the knowledge of and indifference to Plaintiff's rights in the CYBERSITTER marks.   Indeed, the Google Defendants' unlawful acts were undertaken with the express purpose of encouraging and directing users searching for Plaintiff's CYBERsitter product to visit the websites of Plaintiff's competitors in order to increase the Google Defendants' advertising revenues.

53.    As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has suffered and will continue to suffer damages and the Google Defendants have been and continue to be unjustly enriched in an amount to be determined at trial.

54.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and

irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill. Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Google Defendants will continue to engage in conduct violative of the Lanham Act. Plaintiff is entitled to preliminary and permanent injunctive relief.

## FOURTH CLAIM FOR RELIEF
## (TRADEMARK INFRINGEMENT –
## CAL. BUS. & PROF. CODE § 14200 ET SEQ.)
### Against Defendants Google and DOES 1-10

55.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 54 as if fully set forth herein.

56.   Plaintiff possesses a valid mark entitled to protection under California Business and Professions Code Sections 14200 *et seq.* (hereinafter, "California Trademark Act") – namely, the CYBERSITTER mark.

57.   The Google Defendants have used the CYBERSITTER mark, as well as confusingly similar marks such as "CYBER SITTER" in commerce, including but not limited to: (i) by incorporating and displaying the CYBERSITTER marks in the text and/or title of paid advertisements that Google posts in conjunction with its users' keyword searches for the CYBERSITTER marks; (ii) by selling the right to use the CYBERSITTER marks to third parties as part of Google's paid advertising programs, including in the AdWords platform; (iii) by displaying the CYBERSITTER marks in close proximity to third party advertisements when its users search for the CYBERSITTER marks, and doing so in a manner that creates a likelihood of confusion amongst consumers of the products; and (iv) by displaying the CYBERSITTER marks in Google's proprietary directory for use in Google's paid advertising programs.

58.   The Google Defendants' use of the CYBERSITTER marks is likely to cause consumer confusion, or to cause mistake and/or deceive consumers as to the

PAYER GIPSON LLP

affiliation, connection, or association of Plaintiff's goods and services and/or the third party goods and services in conjunction with which the Google Defendants use the CYBERSITTER marks.   The Google Defendants' unlawful use of the CYBERSITTER marks is likely to cause consumers to believe, falsely, that CYBERsitter's goods and services are created, sponsored by and/or affiliated with third parties or third party goods and services; and/or that third party goods and services are created, sponsored by and/or affiliated with CYBERsitter or its goods and services.

59.   The Google Defendants' use of the CYBERSITTER marks complained of herein is not and has never been authorized by Plaintiff.  The Google Defendants used the CYBERSITTER marks with the knowledge of and indifference to Plaintiff's rights to the CYBERSITTER marks.

60.   The Google Defendants' unlawful use of the CYBERSITTER marks was intentional, willful, and with reckless disregard and indifference to Plaintiff's rights. Indeed, the Google Defendants' unlawful acts were undertaken with the express purpose of encouraging and directing users searching for Plaintiff's CYBERsitter product to visit the websites of Plaintiff's competitors in order to increase the Google Defendants' advertising revenues.

61.   As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has suffered and will continue to suffer damages and the Google Defendants have been and continue to be unjustly enriched in an amount to be determined at trial.

62.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Google

1    Defendants will continue to engage in conduct violative of California law. Plaintiff is

2    entitled to preliminary and permanent injunctive relief.

### FIFTH CLAIM FOR RELIEF

### (TRADEMARK INFRINGEMENT –

### CAL. BUS. & PROF. CODE § 14200 ET SEQ.)

### Against Defendants CWI and DOES 1-10

7        63.    Plaintiff repeats and realleges the allegations made in paragraphs 1

8    through 62 as if fully set forth herein.

9        64.    Plaintiff possesses a valid mark entitled to protection under California

10   Business and Professions Code Sections 14200 *et seq.* – namely, the CYBERSITTER

11   mark.

12       65.    Defendants have used the CYBERSITTER mark, as well as confusingly

13   similar marks such as "CYBER SITTER," in commerce, including but not limited to:

14   (i) by incorporating and displaying the CYBERSITTER marks in the text and/or title

15   of advertisements for competing goods and services, which Defendants pay Google to

16   display in conjunction with keyword searches for the CYBERSITTER marks; and (ii)

17   by causing the CYBERSITTER marks to be displayed in close proximity to

18   Defendants' advertisements when Google users search for the CYBERSITTER marks,

19   and doing so in a manner that creates a likelihood of confusion amongst consumers of

20   the products.

21       66.    Defendants' use of the CYBERSITTER marks is likely to cause

22   consumer confusion, or to cause mistake and/or deceive consumers as to the

23   affiliation, connection, or association of Plaintiff's goods and services and/or the third

24   party goods and services in conjunction with which Defendants use the

25   CYBERSITTER marks. Defendants' unlawful use of the CYBERSITTER marks is

26   likely to cause consumers to believe, falsely, that CYBERsitter's goods and services

27   are created, sponsored by and/or affiliated with third parties or third party goods and

28   services; and/or that third party goods and services are created, sponsored by and/or

1    affiliated with CYBERsitter or its goods and services.

2    67.    Defendants' use of the CYBERSITTER marks complained of herein is
3    not and has never been authorized by Plaintiff.  Defendants used the CYBERSITTER
4    marks with the knowledge of and indifference to Plaintiff's rights to the
5    CYBERSITTER marks.

6    68.    Defendants' unlawful use of the CYBERSITTER marks was intentional,
7    willful, and with reckless disregard and indifference to Plaintiff's rights.   Indeed,
8    Defendants' unlawful acts were undertaken with the express purpose of encouraging
9    and directing users searching for Plaintiff's CYBERsitter product to visit websites on
10   which Defendants' competing goods and services are offered in order to increase
11   Defendants' revenues and siphon off the goodwill associated with Plaintiff's goods
12   and services.

13   69.    As a direct, proximate, and foreseeable result of the conduct and
14   omissions alleged above, CYBERsitter has suffered and will continue to suffer
15   damages and the CWI Defendants have been and continue to be unjustly enriched in
16   an amount to be determined at trial.

17   70.    As a direct and proximate result of the foregoing acts and conduct,
18   Plaintiff has sustained and will continue to sustain substantial, immediate, and
19   irreparable injury, for which there is no adequate remedy at law, including without
20   limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on
21   that basis avers that unless enjoined and restrained by this Court, the CWI Defendants
22   will continue to engage in conduct violative of California law.  Plaintiff is entitled to
23   preliminary and permanent injunctive relief.

24                    **SIXTH CLAIM FOR RELIEF**
25              **(CONTRIBUTIORY TRADEMARK INFRINGEMENT –**
26              **CAL. BUS. & PROF. CODE § 14200 ET SEQ.)**
27                 **Against Defendants Google and DOES 1-10**
28   71.    Plaintiff repeats and realleges the allegations made in paragraphs 1

FAYER GIPSON LLP

1   through 70 as if fully set forth herein.

2   72.   With full knowledge of CYBERsitter's rights, the Google Defendants
3   have knowingly facilitated and materially contributed to third party infringements of
4   CYBERsitter's trademark rights in violation of California law, including but not
5   limited to: (i) by encouraging and facilitating third parties, including the CWI
6   Defendants, to use the CYBERSITTER marks in paid advertisements in a false and
7   misleading manner; (ii) by facilitating, encouraging and assisting in the incorporation
8   and display of the CYBERSITTER marks in the text and/or title of the paid
9   advertisements that the Google Defendants post in conjunction with their users'
10  keyword searches for the CYBERSITTER marks, including the False Ads; (iii) by
11  selling the right to use the CYBERSITTER marks to third parties, including the CWI
12  Defendants, as part of the Google Defendants' paid advertising programs, including in
13  the AdWords platform; (iv) by displaying the CYBERSITTER marks in close
14  proximity to third party advertisements when Google users search for the
15  CYBERSITTER marks in a manner that creates a likelihood of consumer confusion;
16  and (iv) by displaying the CYBERSITTER marks in Defendants' proprietary directory
17  in order to encourage and facilitate the unlawful use of the CYBERSITTER marks in
18  the Google Defendants' paid advertising programs.

19  73.   The Google Defendants knew or should have known that the underlying
20  infringing acts that they facilitated and to which they contributed are likely to cause
21  consumer confusion, or to cause mistake and/or deceive consumers as to the
22  affiliation, connection, or association of Plaintiff's goods and services and/or the third
23  party goods and services in conjunction with which the Google Defendants use the
24  CYBERSITTER marks.

25  74.   The Google Defendants' facilitation of and material contribution to the
26  CWI Defendants' infringing acts was willful, intentional, and with the knowledge of
27  and indifference to Plaintiff's rights in the CYBERSITTER marks.   Indeed, the
28  Google Defendants' unlawful acts were undertaken with the express purpose of

encouraging and directing users searching for Plaintiff's CYBERsitter product to visit the websites of Plaintiff's competitors in order to increase the Google Defendants' advertising revenues.

75.   As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has suffered and will continue to suffer damages and the Google Defendants have been and continue to be unjustly enriched in an amount to be determined at trial.

76.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Google Defendants will continue to engage in conduct violative of California law.  Plaintiff is entitled to preliminary and permanent injunctive relief.

## SEVENTH CLAIM FOR RELIEF
## (FALSE ADVERTISING – LANHAM ACT § 43(a))
### Against All Defendants

77.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 76 as if fully set forth herein.

78.   Defendants have made false and misleading statements in the False Ads concerning Plaintiff's products and services and their association with or sponsorship by Net Nanny/CWI.  Such statements include Defendants' statements advertising the CYBERsitter product for sale on the Net Nanny/CWI website (*e.g.*, "Protect your child with #1 rated CYBERsitter software.   Just $29.99!") and the misleading suggestion that the Net Nanny/CWI website is affiliated with CYBERsitter (*e.g.*, "CYBERsitter | Net Nanny.com").

79.   Defendants knew or should have known, through the exercise of reasonable care, that such statements were untrue and misleading.

80.     Defendants' false and misleading statements deceive and/or have the capacity to deceive a substantial segment of Plaintiff's potential customers, and do so in a material manner that is likely to influence the purchasing decisions of Plaintiff's potential customers, including by inducing potential customers to purchase the products and services of Plaintiff's competitors by creating a false impression of an association between those products and services and Plaintiff's own.

81.     Both Plaintiff's products and services and Defendants' products and services are sold in interstate commerce.

82.     Defendants jointly participated in and aided and abetted one another in making the false and misleading statements alleged herein and knowingly participated in the creation, development and propagation of the False Ads.

83.     Defendants' violations were intentional, willful, and with reckless disregard and indifference to Plaintiff's rights.

84.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has suffered and will continue to suffer damages and Defendants have been and continue to be unjustly enriched in an amount to be determined at trial.

85.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in conduct violative of the Lanham Act.  Plaintiff is entitled to preliminary and permanent injunctive relief.

## EIGHTH CLAIM FOR RELIEF

### (FALSE ADVERTISING – CAL. BUS. & PROF. CODE § 17500 ET SEQ.)

#### Against All Defendants

86.     Plaintiff repeats and realleges the allegations made in paragraphs 1

21

COMPLAINT

1    through 85 as if fully set forth herein.

2          87.    Defendants have made untrue and misleading statements in the False Ads

3    concerning Plaintiff's products and services and their association with or sponsorship

4    by Net Nanny/CWI. Such statements include Defendants' statements advertising the

5    CYBERsitter product for sale on the Net Nanny/CWI website (*e.g.*, "Protect your

6    child with #1 rated CYBERsitter software. Just $29.99!") and the misleading

7    suggestion that the Net Nanny/CWI website is affiliated with CYBERsitter (*e.g.*,

8    "CYBERsitter | Net Nanny.com").

9          88.    Defendants knew or should have known, through the exercise of

10   reasonable care, that such statements were untrue and misleading.

11         89.    Defendants' untrue and misleading statements deceive and/or have the

12   capacity to deceive a substantial segment of Plaintiff's potential customers, and do so

13   in a material manner that is likely to influence the purchasing decisions of Plaintiff's

14   potential customers, including by inducing potential customers to purchase the

15   products and services of Plaintiff's competitors.

16         90.    Defendants jointly participated in and aided and abetted one another in

17   making the untrue and misleading statements alleged herein and knowingly

18   participated in the creation, development and propagation of the False Ads.

19         91.    Defendants' violations were intentional, willful, and with reckless

20   disregard and indifference to Plaintiff's rights.

21         92.    As a direct, proximate, and foreseeable result of the conduct and

22   omissions alleged above, CYBERsitter has suffered and will continue to suffer

23   damages and Defendants have been and continue to be unjustly enriched in an amount

24   to be determined at trial.

25         93.    As a direct and proximate result of the foregoing acts and conduct,

26   Plaintiff has sustained and will continue to sustain substantial, immediate, and

27   irreparable injury, for which there is no adequate remedy at law, including without

28   limitation the loss of consumer goodwill. Plaintiff is informed and believes and on

COMPLAINT

that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in conduct violative of California law.  Plaintiff is entitled to preliminary and permanent injunctive relief.

## NINTH CLAIM FOR RELIEF

### (UNFAIR COMPETITION – CAL. BUS. & PROF. CODE § 17200 ET SEQ.)

#### Against All Defendants

94.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 93 as if fully set forth herein.

95.   Defendants, through the conduct alleged herein, have engaged in and continue to engage in unlawful, unfair, and/or fraudulent conduct in violation of Section 17200 *et seq.* of the California Business and Professions Code.  Defendants have also engaged in and continue to engage in conduct that is deceptive, untrue and misleading in violation of California Business and Professions Code, Section 17500, which also constitutes a violation of Section 17200.

96.   The unlawful conduct in which Defendants have engaged and continue to engage includes violations of Plaintiff's trademark rights under federal law and California state law, and acts of false and deceptive advertising in violation of Plaintiff's rights under federal law and California state law, as alleged above.

97.   Defendants' violations were intentional, willful, and with reckless disregard and indifference to Plaintiff's rights.

98.   As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, CYBERsitter has been deprived of money that was wrongfully paid to Defendants, but, absent Defendants' violations, would have otherwise been due to CYBERsitter.  CYBERsitter is entitled to restitution of such sums as would otherwise have been owed or paid to CYBERsitter, in amounts to be determined at trial.

99.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and

irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in unlawful and wrongful conduct in violation of California law. Plaintiff is entitled to preliminary and permanent injunctive relief.

**TENTH CLAIM FOR RELIEF**

**(UNJUST ENRICHMENT)**

**Against All Defendants**

100.  Plaintiff repeats and realleges the allegations made in paragraphs 1 through 99 as if fully set forth herein.

101.  Defendants, through the conduct alleged herein, have received the benefits of the use and exploitation of Plaintiff's trademarks and of Plaintiff's goodwill.

102.  Defendants have unjustly retained the benefits of their use and exploitation of Plaintiff's trademarks and of Plaintiff's goodwill at Plaintiff's expense.

103.  As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Defendants have been unjustly enriched through the use and exploitation of Plaintiff's trademarks and of Plaintiff's goodwill and has been deprived of money that was wrongfully paid to Defendants, but, absent Defendants' violations, would have otherwise been due to CYBERsitter.  CYBERsitter is entitled to restitution of any and all such sums in an amount to be determined at trial.

104.  As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in unlawful and wrongful conduct in violation of California law. Plaintiff is entitled to preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff CYBERsitter respectfully requests that the Court enter judgment against Defendants as follows:

A.     For an award of damages caused by Defendants' unlawful conduct in an amount to be ascertained at trial, including damages accruing from Plaintiff's lost sales, lost licensing royalties and loss of goodwill;

B.     For an award of Defendants' profits stemming from their unlawful conduct in an amount to be ascertained at trial;

C.     For an award of amounts necessary and sufficient to compensate Plaintiff for the cost of corrective advertising in an amount to be ascertained at trial;

D.     For restitution of Defendants' ill-gotten gains and such sums as would otherwise have been owed or paid to Plaintiff absent Defendants' violations of law, in an amount to be ascertained at trial;

E.     For treble damages pursuant to the Lanham Act;

F.     For prejudgment interest thereon;

G.     For an accounting of Defendants' profits derived by Defendants from the sale of goods or services associated with the acts of infringement and false advertising complained of herein;

H.     For preliminary and permanent injunctive relief;

I.     For Plaintiff's attorneys' fees and costs of suit incurred in this action; and

J.     For such other and further relief as the Court may deem just and proper.

DATED: June 18, 2012

FAYER GIPSON LLP
GREGORY A. FAYER
ELLIOT B. GIPSON
MINH Z. KUO

By

GREGORY A. FAYER
Attorneys for Plaintiff CYBERsitter, LLC

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

DATED:  June 18, 2012

FAYER GIPSON LLP
GREGORY A. FAYER
ELLIOT B. GIPSON
MINH Z. KUO

By
    GREGORY A. FAYER
Attorneys for Plaintiff CYBERsitter, LLC

26

COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV12- 5293 RSWL (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:  FAYER GIPSON
Gregory A. Fayer (SBN 232303)
2029 Century Park East Suite 3535
Los Angeles, California 90067
Tel  (310) 557-3558
Fax (310) 557-3589



## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CYBERsitter, LLC, a California limited liability
company,

PLAINTIFF(S)

v.

Google Inc., a Delaware corporation; Content Watch,
Inc., a Utah corporation, d/b/a Net Nanny; and DOES
1-10, inclusive

DEFENDANT(S).

CASE NUMBER

CV12-5293-RSWL(AJWx)

**SUMMONS**

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Gregory A. Fayer_____, whose address is _2029 Century Park East, Suite 3535, Los Angeles, California 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  __JUN 18 2012_____        By: _____
                                              Deputy Clerk

                                        (Seal of the Court)  1227

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                          **SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
CYBERsitter, LLC

**DEFENDANTS**
Google Inc., ContentWatch, Inc. d/b/a Net Nanny, and DOES 1-10, inclusive

COPY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)
FAYER GIPSON LLP, Gregory A. Fayer
2029 Century Park East, Suite 3535, Los Angeles, California 90067
(310) 557-3558

Attorneys (If Known)
Unknown

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** damages to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. 1125(A) Trademark Infringement; 15 USC 1125(A) False Advertising; Cal. Bus. & Proc. Code 14200 Trademark Infringement, 17200 Unfair Competition

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 240 Torts to Land | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

**CV12-5293**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
 ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
 ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
 ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff CYBERsitter, LLC – Santa Barbara County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Defendant Google Inc. - Delaware<br>Defendant ContentWatch, Inc. d/b/a Net Nanny - Utah |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
 Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara County | Other locations not yet known to plaintiff. |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  6-18-2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)  CIVIL COVER SHEET  Page 2 of 2