1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Margret M. Caruso (Bar No. 243473)
2    margretcaruso@quinnemanuel.com
     Bridget A. Hauler (Bar No. 240592)
3    bridgethauler@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
5  Facsimile:   (213) 443-3100

6  Attorneys for Google Inc.

7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | CYBERsitter, LLC, a California limited    | CASE NO. CV12-5293-RSWL (AJWx)
     liability company,

12                                            | **GOOGLE INC.'S MOTION TO
                    Plaintiff,                | TRANSFER PURSUANT TO RULE
13                                            | 12(B)(3), OR IN THE
              vs.                             | ALTERNATIVE TO DISMISS
14                                            | PLAINTIFF'S STATE LAW
   Google Inc., a Delaware corporation;       | CLAIMS AGAINST GOOGLE
15 ContentWatch, Inc., a Utah corporation,    | PURSUANT TO RULE 12(B)(6)**
   d/b/a Net Nanny; and DOES 1-10,
16 inclusive,                                 | **Declarations of Sarah Buer and
                                              | Bridget A. Hauler filed concurrently
17                 Defendants.                | herewith**

18                                            | Date:    Oct. 10, 2012
                                              | Time:    10:00 a.m.
19                                            | Crtrm.: 21

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 10, 2012 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Ronald S.W. Lew, in Courtroom 21 of the United States District Court of the Central District of California, Eastern Division, located at 312 N. Spring St., Los Angeles, CA 90012, defendant Google Inc. ("Google") will and hereby does move the Court to transfer the case in its entirety to federal court in Santa Clara County, California because the case was brought in an improper venue or, in the alternative, to dismiss plaintiff's Counts IV, VI, VIII, IX and X against Google for failure to state a claim.

The Motion seeks transfer of the case in its entirety on the grounds that plaintiff brought the case in the improper venue, or in the alternative, dismissal with prejudice of plaintiff's Counts IV, VI, VIII, IX and X against Google because plaintiff fails to state facts sufficient to state a claim.

This motion is made following a conference with plaintiff pursuant to Local Rule 7-3, on July 27, 2012.

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(3), 28 U.S.C. § 1406, and 12(b)(6) and is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support thereof; the Declarations of Sarah Buer and Bridget A. Hauler; all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

DATED: September 10, 2012      QUINN EMANUEL URQUHART & SULLIVAN, LLP


By /s/ Margret M. Caruso
    Margret M. Caruso
    Attorneys for Google Inc.

1

# **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3

4   MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

5   PRELIMINARY STATEMENT .................................................................................1

6   FACTUAL BACKGROUND.......................................................................................2

7        A.    The Parties' Exclusive Forum Selection Agreement.............................2

8        B.    CYBERsitter's Allegations Concerning Its Marks and Google's
9             AdWords Program ......................................................................................3

   ARGUMENT ...............................................................................................................4

10  I.    THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES
11        TRANSFER OF CYBERSITTER'S CLAIMS AGAINST GOOGLE. ...........4

12       A.    The AdWords Contract Identifies Santa Clara County As The
            Exclusive Forum For Litigation....................................................5
13
     B.    CYBERsitter Is Bound By The Forum Selection Clause. .....................5
14
     C.    CYBERsitter's Claims Against Google Fall Squarely Within The
15              Forum Selection Clause. .................................................................6

16       D.    The Forum Selection Clause Is Presumptively Valid And Should
17              Be Enforced.......................................................................................8

18       E.    The Entire Case Should Be Transferred To Federal Court In
            Santa Clara County, California......................................................10

19  II.   THE COMMUNICATIONS DECENCY ACT PROVIDES GOOGLE
20        WITH A COMPLETE DEFENSE TO ALL OF PLAINTIFF'S
      CAUSES OF ACTION SOUNDING IN STATE LAW. ...............................11

21       A.    Google is Entitled to Immunity Under the CDA. ................................12

22       B.    Google's Immunity Under the CDA is a Complete Defense to
23              Plaintiff's State Law Claims .........................................................13

   III.  CYBERSITTER FAILS TO STATE A CLAIM FOR UNJUST
24        ENRICHMENT UNDER CALIFORNIA LAW ...........................................14

25  CONCLUSION...........................................................................................................16

26

27

28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) ....................................................................... 4, 5, 10

*Baggett v. Hewlett-Packard Co.*,
  582 F.Supp.2d 1261 (C.D.Cal. 2007) .................................................................. 15

*Barrett v. Rosenthal*,
  40 Cal. 4th 33, 146 P. 3d 510 (2006) .................................................................. 11

*Berry v. Soul Circus, Inc.*,
  189 F.Supp.2d 290 (D. Md. 2002) ........................................................................ 6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ............................................................................. 12

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ......................................................................................... 8, 9

*Cfirstclass Corp. v. Silverjet PLC*,
  560 F.Supp.2d 324 (S.D.N.Y. 2008) ..................................................................... 6

*CoStar Realty Info., Inc. v. Field*,
  612 F.Supp.2d 660 (D. Md. 2009) ........................................................................ 9

*Docksider, Ltd. v. Sea Tech., Ltd.*,
  875 F.2d 762 (9th Cir. 1989) ................................................................................ 5

*Falk v. General Motors Corp.*,
  496 F.Supp.2d 1088 (N.D.Cal. 2007) ................................................................. 15

*Feldman v. Google Inc.*,
  513 F.Supp.2d 229 (E.D. Pa. 2007) ...................................................................... 9

*First Nationwide Savings v. Perry*,
  11 Cal. App. 4th 1657, 15 Cal. Rptr. 2d 173 (1992) ........................................... 16

*Flake v. Medline Indus., Inc.*,
  882 F. Supp. 947 (E.D. Cal. 1995) .................................................................. 5, 10

*Flowbee Int'l, Inc. v. Google Inc.*,
  No. 38 Civ. 09-199 at 8-13 (S.D. Texas February 8, 2010) ............................. 7, 9

*Forrest v. Verizon Commc'ns, Inc.*,
  805 A.2d 1007 (D.D.C. 2002) .............................................................................. 9

*Ghirardo v. Antonioli*,
  14 Cal.4th 39, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996) .................................. 15

*Goddard v. Google,*
    640 F.Supp.2d 1193 (N.D. Cal. 2009)..............................................12, 13

*Goddard v. Google,*
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008 Case No. 08-2738 JF) ...............14

*Jurin v. Google,*
    695 F.Supp.2d 1117 (E.D. Cal. 2010),
    *modified on other grounds by* 768 F.Supp.2d
    1064 (E.D. Cal. 2011)..............................................12, 13, 14

*Kohanim v. Kerzner Intern, Ltd.,*
    2011 WL 91004 (C.D. Cal. Jan. 5, 2011)..............................................4

*Koresko v. RealNetworks, Inc.,*
    291 F.Supp.2d 1157 (E.D. Cal. 2003) ..............................................9

*Langdon v. Google Inc.,*
    474 F.Supp.2d 622 (D. Del. 2007) ..............................................12

*Lectrodryer v. SeoulBank,*
    77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000) ..............................................16

*M/S Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972) ..............................................8, 10

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
    858 F.2d 509 (9th Cir. 1988) ..............................................6, 8

*Melchior v. New Line Productions, Inc.,*
    106 Cal.App.4th 779, 131 Cal.Rptr.2d 347 (2003) ..............................................15

*Omnicell, Inc. v. Medacist Solutions Group, LLC,*
    272 F.R.D. 469 (N.D. Cal. 2011) ..............................................10

*Parker v. Google Inc.,*
    422 F.Supp.2d 492 (E.D. Pa. 2006)..............................................12

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,*
    741 F.2d 273 (9th Cir. 1984)..............................................8

*Perfect 10, Inc v. CCBILL, LLC,*
    481 F.3d 751 (9th Cir. 2007)..............................................11, 14

*Sixty-Two First Street, LLC, v. CapitalSource Finance LLC,*
    2011 WL 2182915 (N.D. Cal. June 6, 2011) ..............................................8

*Trustees of Const. Indus. and Laborers Health and Welfare Trust v. C&W
    Enterprises, Inc. d/b/a T & J Demolition,* 298 Fed. Appx. 566, 567 (9th Cir.
    2008)..............................................6

*U.S. v. Drew,*
    259 F.R.D. 449 (C.D. Cal. 2009)..............................................9

*Varsity Gold, Inc. v. Cron,*
   No. 5:08-CV-81,  2008 WL 4831418 (E.D.N.C. Nov. 5, 2008) ........................... 7

*Varsity Gold, Inc. v. Lunenfeld,*
   2008 WL 5243517 (D. Md. Dec. 12, 2008) ......................................................... 6

*Zeran v. America Online, Inc.,*
   129 F.3d 327 (4th Cir. 1997) .............................................................................. 11

### **Statutes**

47 U.S.C. § 230(b) ............................................................................................................ 13

47 U.S.C. § 230(c)(1) ............................................................................................... 11, 14

47 U.S.C. § 230(e)(2) ...................................................................................................... 14

47 U.S.C. § 230(e)(3) ...................................................................................................... 11

47 U.S.C. § 230(f)(2) ................................................................................................ 11, 12

47 U.S.C. § 230(f)(3) ...................................................................................................... 12

18 U.S.C. § 1406 ............................................................................................................... 8

28 U.S.C. § 1406(a) ............................................................................................... 1, 10, 16

Cal. Bus. & Prof. Code § 14200 ...................................................................................... 14

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 13

Cal. Bus. & Prof. Code § 17500 ...................................................................................... 13

Fed. R. Civ. P. 12(b)(3) .......................................................................................... 1, 5, 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 16

-iv-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

None of the claims CYBERsitter LLC ("CYBERsitter") alleges against Defendant Google Inc. ("Google") belong before this Court. Pursuant to an agreement binding upon both CYBERsitter and Google,[1] all claims relating to Google's advertising programs must be litigated exclusively in Santa Clara County, California.[2] Accordingly, the entire case should be transferred for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).

Given that this action should be transferred, the Court need not address the substantive deficiencies of CYBERsitter's claims against Google. But even if CYBERsitter's claims were properly before this Court, each of the state law claims against Google would have to be dismissed because they are barred by the Communications Decency Act ("CDA"). The CDA protects service providers such as Google from liability for claims precisely like those alleged here, predicated upon publication of content created by third parties. Because CYBERsitter cannot overcome this pleading deficiency with amendment, even if Google's motion to transfer for improper venue were denied, Counts IV, VI, VIII, IX and X against Google would still have to be dismissed, and with prejudice.

---

[1]  CYBERsitter opened its AdWords account with Google in the name of its "d/b/a" Solid Oaks Software, and is without question bound by the agreement governing that account. *See* Part I.B, *infra*.

[2]  Defendant ContentWatch, Inc. ("CWI")—a Utah company who is a resident of neither this district nor Santa Clara County—will not be prejudiced by the transfer Google seeks in this Motion. CWI also advertises using AdWords, and has therefore agreed to the same forum selection clause that binds CYBERsitter. Finally, as the claims against both defendants are based on largely the same factual allegations, justice would be served by having the claims tried before the same court.

**Factual Background**

**A.     The Parties' Exclusive Forum Selection Agreement**

Since August 2006, CYBERsitter, through its d/b/a, Solid Oak Software, has participated in Google's AdWords advertising program to display targeted "Sponsored Links" on Google's website.  (*See* Exhibits 1-2 to the Declaration of Sarah Buer, dated September 7, 2012 and filed concurrently herewith; *see also* Exhibit 1 to the Declaration of Bridget A. Hauler, dated September 10, 2012 and filed concurrently herewith).   As a necessary condition of participating in the AdWords program, CYBERsitter agreed to certain terms and conditions (the "AdWords Contract") by clicking "yes" in an interactive window.  (Buer Decl., ¶¶ 7-9, Exh. 1).

The AdWords Contract contains a clear and conspicuous exclusive forum selection and choice-of-law clause, which provides in relevant part:

> **9      Miscellaneous.**  THE AGREEMENT MUST BE CONSTRUED AS IF BOTH PARTIES JOINTLY WROTE IT AND GOVERNED BY CALIFORNIA LAW EXCEPT FOR ITS CONFLICTS OF LAWS PRINCIPLES.  **ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA,** AND GOOGLE AND CUSTOMER CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

(Buer Decl., Exh. 1, ¶ 9 (underlining and bold added, all caps in original)).  As used in the AdWords Contract, the Google "Program(s)" means any of "Google's advertising programs." *Id.* (introductory paragraph).  Nothing in the AdWords Contract limits application of the exclusive venue clause to claims arising from or related to CYBERsitter's participation in the AdWords program, or to CYBERsitter's agreement with Google.  (Buer Decl., Exh. 1).  To the contrary, the language specifically encompasses a broader set of claims—those "relating to . . . the Google Programs." *Id.*

**B.**   <u>**CYBERsitter's Allegations Concerning Its Marks and Google's**</u>
<u>**AdWords Program**</u>

CYBERsitter's factual allegations against Google are based upon the operation of Google's AdWords program.  All of the operative factual allegations relating to Google in the Complaint concern either (1) Google AdWords advertisers' alleged use of trademarked terms as "keywords" to trigger the display of targeted "Sponsored Links" on Google's website or (2) the alleged use of CYBERsitter's trademark in a competitor advertiser's "Sponsored Link" [sic] displayed through Google's AdWords program.  *See, e.g.,* Compl. at ¶¶ 2, 18-25, 27-32; *see also id*., ¶¶ 35-40, 43-48, 50-54, 57-62, 65-70, 72-76, 78-80, 82-85, 87-93, 96-99, 101-104.

CYBERsitter alleges that it markets and sells an Internet content filtering software program known as "CYBERsitter" and that it sells the CYBERsitter software exclusively online.  Compl. ¶¶ 12, 14.  CYBERsitter alleges that it owns trademark rights in the "CYBERsitter" mark.  *Id.* ¶ 16.  CYBERsitter further alleges that defendant CWI markets and sells competing Internet content filtering software, including the software Net Nanny.  *Id.* ¶ 9.  Both CYBERsitter and CWI are participating advertisers in Google's Adwords program.  (Buer Decl. ¶ 9; Compl. ¶ 27).

Google, one of the world's largest providers of Internet search engine services, offers an advertising program called AdWords through which participating advertisers' ads may be displayed on Google.com in response to users' searches.  Compl. ¶¶ 8, 20.  In response to Google users' searches, Google sometimes displays paid advertising results in addition to the other so-called "natural" results.  *Id.* ¶ 18.  These ads appear visually distinct from the "natural" search results in that the paid results are grouped separately from the other results and labeled as "Ads."  *Id.* ¶¶ 18-19.

Google's AdWords program permits advertisers to bid on third-party trademarks as keywords that may trigger display of their ads.  *Id.* ¶ 24.  AdWords

advertisers may also use third-party marks in their paid advertisements where the advertiser (a) is a reseller of the trademarked product or service, (b) makes component parts for the trademarked product or service, (c) offers compatible parts for the trademarked product or service, or (d) provides information or reviews about the trademarked product or service. *Id.* ¶ 25.

CYBERsitter alleges that "earlier this year" Google and CWI "were running" paid advertisements for the Net Nanny program "as part of Google's AdWords platform" that "incorporate[d] and utilize[d] the CYBERSITTER trademark." *Id.* ¶ 27. CYBERsitter alleges that the CWI advertisements "were displayed whenever a user would search for the term 'CYBERSITTER' or similar terms on Google's search engine" and that they "were often displayed as the first result in a user's search for the term 'CYBERSITTER.'" *Id.* CYBERsitter nowhere alleges that Google created the content of the ads to which it objects. Nor does it allege any claims against Google that do not relate to the AdWords program or ads that appear through it.

## **Argument**

## I.   **THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES TRANSFER OF CYBERSITTER'S CLAIMS AGAINST GOOGLE.**

Where a valid forum selection clause designates another court as the exclusive venue for litigation, dismissal of the action under Federal Rule of Civil Procedure 12(b)(3) is proper. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324-325 (9th Cir. 1996) (affirming trial court's dismissal of plaintiff's complaint where an enforceable forum selection clause in the parties' loan agreement required actions arising from the agreement to be brought in Mexico); *see also Kohanim v. Kerzner Intern, Ltd.*, 2011 WL 91004 at *3 (C.D. Cal. Jan. 5, 2011) (dismissing complaint because plaintiff signed a written agreement containing a valid forum selection clause requiring that the dispute be heard exclusively in the Bahamas). If a court finds that it is in the interests of justice, the court may in the alternative

transfer the case to a district or division in which it could have been brought.  *See Flake v. Medline Indus., Inc.*, 882 F.Supp. 947, 952 (E.D. Cal. 1995) (transferring action subject to enforceable forum selection clause where plaintiff indicated that if the case could not be heard in California, plaintiff would seek transfer rather than dismissal).

Here, as shown below, the venue provision in the parties' AdWords Contract is mandatory and binding upon CYBERsitter; it encompasses the claims at issue here; and is valid and enforceable.  Accordingly, the entire case should be dismissed or transferred for improper venue.

### A.   The AdWords Contract Identifies Santa Clara County As The Exclusive Forum For Litigation.

The forum selection clause at issue states "ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA." (Buer Decl., Exh. 1, ¶ 9.).  The exclusive, "shall be" language makes the clause mandatory, not optional, in determining the appropriate venue.  *See, e.g., Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989) (affirming Fed. R. Civ. P. 12(b)(3) dismissal and finding that parties' use of the word "shall" shows their intent to make the forum selection clause mandatory rather than permissive).

### B.   CYBERsitter Is Bound By The Forum Selection Clause.

Solid Oak Software accepted the terms and conditions of the Google AdWords contract on August 29, 2006.  (*See* Buer Decl., Exhs. 1-2).[3]  Solid Oak Software is the d/b/a of CYBERsitter LLC.  (*See* Hauler Decl., Exh. 1).  "The

---

[3]   Analysis under Rule 12(b)(3) permits a district court "to consider facts outside of the pleadings, and is consistent with the Supreme Court standard for resolving forum selection clause cases." *Argueta*, 87 F.3d at 324.

designation 'd/b/a' is merely descriptive of a corporation that does business under some other name and does not create a distinct corporate entity." *See Trustees of Const. Indus. and Laborers Health and Welfare Trust v. C&W Enterprises, Inc. d/b/a T & J Demolition*, 298 Fed. Appx. 566, 567 (9th Cir. 2008) (upholding trial court's ruling that a corporation was bound by labor agreement despite the corporation's president signing the agreement with the d/b/a designation). CYBERsitter is bound by the contract signed by its d/b/a Solid Oak Software. Thus, as a Google AdWords account holder, CYBERsitter LLC is bound by the mandatory forum selection clause in the Google AdWords contract. (*See* Buer Decl., Exh. 1, ¶ 9).

## C. CYBERsitter's Claims Against Google Fall Squarely Within The Forum Selection Clause.

The forum selection clause here is extremely broad. Unlike narrow clauses limited to claims "arising from" a breach of the parties' contract, the clause here goes much further, encompassing "ALL CLAIMS . . . RELATING TO . . . THE GOOGLE PROGRAM(S)." Courts routinely find such provisions applicable even in cases that do not involve breach of the contract containing the venue clause. *See, e.g., Varsity Gold, Inc. v. Lunenfeld*, 2008 WL 5243517 at *3, n.5 (D. Md. Dec. 12, 2008) (collecting cases) ("Nearly every circuit to have considered the issue has concluded that facially contractual forum selection clauses apply to related tort claims."); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (finding forum selection clause applied to plaintiff's tort causes of action); *Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) (finding plaintiff's claims for tortious interference with advantageous business relationship, tortious interference with contract, and unjust enrichment fell within forum selection clause); *Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290, 294 (D. Md. 2002) (finding parties' forum selection clause applied to plaintiff's tort claims of invasion of privacy, appropriation of name and likeness, violation of Maryland Consumer

Protection Act, unjust enrichment, and false light); *Varsity Gold, Inc. v. Cron*, No. 5:08-CV-81, 2008 WL 4831418, at **1-2 (E.D.N.C. Nov. 5, 2008) (finding parties' forum-selection clause applied to plaintiff's tort claims, including request for injunctive relief).

By its plain language, the AdWords Contract's exclusive venue selection provision covers all claims "relating to. . . the Google Program(s)," which it defines as Google's "advertising program(s)." (Buer Decl., Exh. 1, ¶¶ 9, introductory paragraph).  A Texas federal court considering the same AdWords forum selection clause found that the clause covered all claims relating to Google's advertising program, not just those relating specifically to the contract; thus, where all of plaintiff's claims were premised on Google's advertising program, all of the claims against Google were subject to the forum selection clause.  *See Flowbee Int'l, Inc. v. Google Inc.*, No. 38 Civ. 09-199 at 8-13 (S.D. Texas February 8, 2010).[4]  The *Flowbee* court found that the claims need not be dependent upon the contractual relationship between the parties in order to fall within the purview of the forum selection clause.  *Id.* at 8-11.  The court further held that the forum selection clause applied to events relating to Google's advertising program that occurred before the parties entered into the contract.  *Id.* at 12-13.

CYBERsitter's Complaint is undeniably related to Google's advertising program AdWords.  The basis of each of CYBERsitter's claims is its contention that an allegedly misleading advertisement for a competitor's software allegedly appeared in response to a keyword search for CYBERsitter pursuant to Google's advertising program, AdWords.  *See, e.g.,* Compl., ¶¶ 18-32.  Accordingly, CYBERsitter's claims against Google can be litigated only in Santa Clara County, California.

---

[4]  For the Court's convenience we have attached a copy of the *Flowbee* decision as Exhibit 2 to the Hauler Declaration, filed with this brief.

D.      **The Forum Selection Clause Is Presumptively Valid And Should Be Enforced.**

As shown above, the forum selection clause binds CYBERsitter and applies to the claims at issue in this case.  The only remaining question is whether the clause is valid.  It is.  "Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'"  *Manetti*, 858 F.2d at 514 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  Plaintiffs have a "heavy burden" in demonstrating why courts should not enforce forum selection clauses to which they voluntarily agreed.  *M/S Bremen*, 407 U.S. at 17.  "Absent some evidence submitted by the party opposing enforcement of [a forum selection] clause to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties."  *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984) (internal cites omitted).  CYBERsitter cannot meet this burden.

CYBERsitter did not agree to the forum selection clause as a result of fraud, undue influence, or overweening bargaining power.  CYBERsitter is a sophisticated company that describes itself as "one of the most recognizable names in Internet content filtering, perhaps the most recognizable."  Compl. ¶ 15.  *See*, *e.g.*, *Sixty-Two First Street, LLC, v. CapitalSource Finance LLC*, 2011 WL 2182915 at *2 (N.D. Cal. June 6, 2011) (considering sophistication of the parties in enforcing a forum selection clause and dismissing the case pursuant to Rule 12(b)(3) and 18 U.S.C. § 1406).  Further, CYBERsitter cannot prove invalidity based on its inability to negotiate the terms of the agreement.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (upholding validity of forum selection clause in a form contract that required an elderly Washington State resident injured in Panama to

1  litigate in Florida, where she had no contacts).  Indeed, "clickwrap" agreements

2  such as the AdWords Contract "have been routinely upheld by circuit and district

3  courts."  *See U.S. v. Drew,* 259 F.R.D. 449, 462 n. 22 (C.D. Cal. 2009); *see also,*

4  *e.g., Koresko v. RealNetworks, Inc.,* 291 F.Supp.2d 1157, 1163 (E.D. Cal. 2003)

5  (upholding a forum selection clause in a licensing agreement for an online service in

6  favor of King County, Washington, forcing the California plaintiff to travel to

7  Washington to litigate his claim); *CoStar Realty Info., Inc. v. Field*, 612 F.Supp.2d

8  660, 669-70 (D. Md. 2009) (enforcing a forum selection clause found in a click

9  through online user agreement); *Feldman v. Google Inc.*, 513 F.Supp.2d 229, 236-

10 38 (E.D. Pa. 2007) (finding Google's AdWords Contract gave reasonable notice of

11 the terms of the agreement, user had ample time to review the terms, and the user

12 indicated his assent to the terms by clicking the box on Google's website); *Forrest*

13 *v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010-1011 (D.D.C. 2002) (enforcing a

14 forum-selection clause contained in an online User Agreement because "[a] contract

15 is no less a contract simply because it is entered into via a computer."); *Flowbee*

16 *Int'l, Inc. v. Google Inc.*, No. 38 Civ. 09-199 at 14 (S.D. Texas February 8, 2010)

17 (attached to Hauler Decl. as Exh. 2).

18 　　　CYBERsitter, as a California entity asserting claims under federal and

19 California law in federal court in California, cannot meet its substantial burden of

20 proving that litigating in the contractually-selected forum of Santa Clara County,

21 California would be so inconvenient as to deprive it of its day in court.  *See, e.g.,*

22 *Carnival,* 499 U.S. at 595 (upholding validity of forum selection clause in a form

23 contract that required an elderly Washington State resident injured in Panama to

24 litigate in Florida, where she had no contact).  Moreover, CYBERsitter could have

25 foreseen any inconvenience when it agreed to a contract with a mandatory venue

26 provision.  *See e.g., Koresko,* 291 F .Supp. 2d at 1163 ("[d]efendant provided [the]

27 [p]laintiff an opportunity to deny the terms of the contract including the forum

28 selection clause before purchasing its product").

1   Application of California law, as specified in the AdWords contract, is not
2   fundamentally unfair as six of the ten causes of action already sound in California
3   law and CYBERsitter already opted to bring the case in federal court in California.
4   Enforcement of the forum selection clause in this case does not contravene any
5   strong public policy of California.  Because CYBERsitter cannot satisfy its heavy
6   burden, the Court should enforce the forum selection clause.  *See Argueta*, 87 F.3d
7   at 325; *see also M/S. Bremen*, 407 U.S. at 17.

8   **E.   The Entire Case Should Be Transferred To Federal Court In Santa**
9   **Clara County, California.**

10   Pursuant to 28 U.S.C. § 1406(a), once a court determines that venue is
11   improper, the court must either dismiss the action or, if it is in the interests of
12   justice, transfer the case to a district or division in which it could have been brought.
13   *See Flake,* 882 F.Supp. at 952 (finding transfer to be appropriate where plaintiff
14   indicated a preference for transfer over dismissal); *see also* 28 U.S.C. § 1406(a).
15   "Whether to dismiss for improper venue, or alternatively to transfer venue to a
16   proper court, is a matter within the sound discretion of the district court."  *Omnicell,*
17   *Inc. v. Medacist Solutions Group, LLC*, 272 F.R.D. 469, 472 (N.D. Cal. 2011)
18   (dismissing action for declaratory relief subject to enforceable forum selection
19   clause where defendant had already initiated action for breach in correct venue)
20   (internal cites omitted).  "Normally transfer will be in the interest of justice because
21   normally dismissal of an action that could have been brought elsewhere is time
22   consuming and justice-defeating."   *Flake*, 882 F.Supp. at 952 (internal quotes
23   omitted).

24   In the event this Court exercises its discretion to transfer the case against
25   Google, Google respectfully submits that the entire action should be transferred.
26   While defendant CWI is not a signatory to the agreement between Google and
27   CYBERsitter, transfer of the entire action would not prejudice CWI because CWI, a
28   Utah company, is not a resident of either this district or Santa Clara County.

1   Compl., ¶ 9.   Furthermore, CWI is also an AdWords advertiser and, as such, has
2   agreed to be bound by the same forum selection clause.   Compl., ¶ 27.   Finally, as
3   the allegations against Google and CWI are based on the same factual allegations,
4   justice would be served by having the claims tried before the same Court.

5   **II.     THE COMMUNICATIONS DECENCY ACT PROVIDES GOOGLE**
6   **WITH A COMPLETE DEFENSE TO ALL OF PLAINTIFF'S CAUSES**
7   **OF ACTION SOUNDING IN STATE LAW.**

8       The federal Communications Decency Act of 1996 (hereafter "CDA")
9   provides complete immunity to each "provider or user of an interactive computer
10   service" from liability premised on "information provided by another information
11   content provider," under federal or state law.   47 U.S.C. §§ 230(c)(1), (e)(3); *Perfect*
12   *10, Inc v. CCBill LLC,* 481 F. 3d 751, 767 (9th Cir. 2007).   The immunity provision
13   of the CDA, section 230, has been interpreted by the Ninth Circuit to confer broad-
14   based immunity to providers of "interactive computer services" in order to
15   accomplish Congress's stated intent of fostering the free dissemination of
16   information via the Internet.   *See Perfect 10,* 481 F. 3d at 767.   The CDA defines an
17   "interactive computer service" as:

18          any information service, system, or access software provider that
19          provides or enables computer access by multiple users to a computer
            server, including specifically a service or system that provides access to
20          the Internet and such systems operated or services offered by libraries
21          or educational institutions.

22   47 U.S.C § 230(f)(2).   Section 230 "creates federal immunity to any cause of action
23   that would make service providers liable for information originating with a third
24   party user of the service."   *Zeran v. America Online, Inc.* 129 F. 3d 327, 330 (4th
25   Cir. 1997) (cited with approval in *Barrett v. Rosenthal*, 40 Cal. 4th 33, 44, 146 P. 3d
26   510 (2006)).   Per the Ninth Circuit, the only causes of action excluded from Section
27   230's immunity provision are those sounding in federal intellectual property law.
28   *See Perfect 10*, 481 F.3d at 768 (upholding dismissal of plaintiff's state unfair

competition, false advertising and right of publicity claims because of defendants' CDA immunity).    Under the CDA, an interactive computer service provider qualifies for immunity "so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).   An unprotected "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).   Thus, "so long as a third party provides the essential published content, an interactive service provider receives full immunity."   *Carafano*, 339 F.3d at 1124.

## A.    Google is Entitled to Immunity Under the CDA.

Google plainly satisfies the CDA's definition of a protected interactive computer service as an "information service . . . that provides or enables computer access by multiple users . . . ."   47 U.S.C. § 230(f)(2).   CYBERsitter describes Google as "one of the world's leading Internet search engines, which "operates by providing users who enter certain 'keywords' with a catalogue of web pages and links responsive to their keyword searches."   Compl., ¶ 17.   Numerous courts have found that Google qualifies for immunity under the CDA.   *See, e.g., Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1201-1202 (N.D. Cal. 2009) (finding Google qualifies for CDA immunity and dismissing claims); *Parker v. Google Inc.,* 422 F.Supp.2d 492, 501 (E.D. Pa. 2006) (finding "no doubt that Google qualifies as a protected 'interactive computer service.'"), *aff'd by* 242 Fed. Appx. 833, 838 (3rd Cir. 2007) (affirming that Google is immune under CDA); *Langdon v. Google Inc.,* 474 F.Supp.2d 622, 631 (D. Del. 2007) (dismissing claims against Google as immune under CDA); *Jurin v. Google*, 695 F.Supp.2d 1117, 1123 (E.D. Cal. 2010), (dismissing state law claims because of Google's immunity under CDA), *modified on other grounds by* 768 F.Supp.2d 1064 (E.D. Cal. 2011).

The content of the ads at issue in CYBERsitter's complaint were not authored by Google.  *See* Compl., ¶ 20 (alleging that Google's "AdWords program allows sponsors to purchase certain keywords that will trigger *the sponsor's* advertisement whenever a user conducts searches using the keywords") (emphasis added); *Jurin*, 695 F.Supp.2d at 1123 (". . . Defendant does not provide the content of the "Sponsored Link" advertisements.") (citing *Goddard*, 640 F.Supp.2d at 1197-98). CYBERsitter does not allege otherwise.  Compl. ¶¶ 17-32.  As other courts have found repeatedly[5], Google does not become a content provider merely by identifying potential keyword choices to competing advertisers; rather, Google is an "information service provider" under the CDA:

> The purpose of the CDA is to encourage open, robust, and creative use of the internet. See 47 U.S.C § 230(b).  Ultimately, Defendant [Google]'s Adwords program simply allows competitors to post their digital fliers where they might be most readily received in the cyber-marketplace.  Accordingly, Defendant meets the definition of a protected interactive computer service and is therefore immunized from liability[.]

*Jurin*, 695 F.Supp.2d at 1123.  Google is therefore entitled to immunity under the CDA.

## B.   Google's Immunity Under the CDA is a Complete Defense to Plaintiff's State Law Claims

CYBERsitter's unfair competition claim under Cal. Bus. & Prof. Code § 17200 et seq. (Count IX), unjust enrichment claim (Count X), and false advertising claim under Cal. Bus. & Prof. Code § 17500 et seq. (Count VIII) are

---

[5]  *See, e.g., Jurin*, 695 F.Supp.2d at 1123 ("Defendant's keyword suggestion tool hardly amounts to the participation necessary to disqualify it of CDA immunity. Rather it is a 'neutral tool,' that does nothing more than provide options that advertisers could adopt or reject at their discretion, thus entitling the operator to [CDA] immunity.") (citing *Goddard*, 640 F.Supp.2d at 1197-1198).

each based on allegations about an advertisement allegedly created by defendant CWI, not Google.  These claims indisputably arise from published content provided by a third party, not Google.  Because Google is an interactive service provider protected by the CDA, and because CWI—not Google—created the content about which CYBERsitter complains, the Court should dismiss each of these state law claims as to Google.  47 U.S.C. § 230(c)(1); *see also Jurin*, 695 F.Supp.2d at 1123 (dismissing state law claims based on Google's CDA immunity); *Goddard v. Google Inc.*, 2008 WL 5245490 at *5 (N.D. Cal. Dec. 17, 2008 Case No. 08-2738 JF) (*Goddard II*) (dismissing unfair competition claims based on Google's CDA immunity).

CYBERsitter's state law trademark claims against Google (Counts IV and VI) should also be dismissed.  The Ninth Circuit has held that the CDA's requirement the immunity provision be construed in a manner that would not "limit or expand any law pertaining to intellectual property," 47 U.S.C. § 230(e)(2), exempts from immunity only *federal* intellectual property claims because the 50 states' intellectual property laws lack uniformity and vary significantly in scope.  *Perfect 10*, 481 F.3d at 767-768.  Any contrary interpretation would "permit[] the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity [which] would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes."  *Id.* at 768.  Accordingly, CYBERsitter's trademark infringement claim under Cal. Bus. & Prof. Code § 14200 et seq. (Count IV) and contributory trademark infringement claim pursuant to Cal. Bus. & Prof. Code § 14200 et seq. (Count VI) against Google also should be dismissed under the CDA.

## III.   CYBERSITTER FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT UNDER CALIFORNIA LAW

Even if CYBERsitter's unjust enrichment claim could survive CDA immunity, the claim fails to state a claim for which relief can be granted.  It is

1   questionable whether an independent cause of action for unjust enrichment even
2   exists under California law. *Baggett v. Hewlett–Packard Co.,* 582 F.Supp.2d 1261,
3   1270 (C.D.Cal. 2007) (applying California law and dismissing plaintiff's unjust
4   enrichment claim with prejudice where it was duplicative of recovery available
5   under other remaining claims) (citing *Falk v. General Motors Corp.,* 496 F.Supp.2d
6   1088, 1099 (N.D.Cal. 2007)).  "For example, the court in *Melchior v. New Line
7   Productions, Inc.,* 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (2003), held that
8   the phrase 'unjust enrichment' 'does not describe a theory of recovery, but an effect:
9   the result of a failure to make restitution under circumstances where it is equitable to
10  do so.' " *Baggett*, 582 F.Supp.2d at 1270.  "In contrast, the court in *Ghirardo v.
11  Antonioli,* 14 Cal.4th 39, 50, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996), held that
12  plaintiffs may state a claim for unjust enrichment particularly where their claim
13  seeks restitution where other remedies are inadequate." *Baggett*, 582 F.Supp.2d at
14  1270.

15      The *Baggett* court dismissed plaintiff's unjust enrichment claim with
16  prejudice finding that plaintiff could "pursue his remedies through [his other
17  remaining] claims," and that the unjust enrichment claim would "add nothing to
18  [plaintiff's] available relief." *Baggett*, 582 F.Supp.2d at 1271; *see also Falk*, 496
19  F.Supp.2d at 1099-1100 (applying California law and dismissing plaintiff's unjust
20  enrichment claim with prejudice because the sole remedies available under unjust
21  enrichment would be available under plaintiff's other remaining claims, thus there
22  would be "no occasion for resort to unjust enrichment.").  The Court here should
23  similarly dismiss CYBERsitter's unjust enrichment claim with prejudice.  The relief
24  sought for CYBERsitter's unjust enrichment claim—restitution damages and
25  injunctive relief—are duplicative of relief sought for CYBERsitter's other nine
26  claims. *Compare* Compl., ¶¶ 103-104 *with* Compl., ¶¶ 39-40, 53-54, 61-62, 75-76,
27  84-85, 92-93, 98-99.

28

1        Alternatively, if this Court recognizes unjust enrichment as a stand alone

2    cause of action, CYBERsitter has not adequately alleged it.  The elements of any

3    viable claim for unjust enrichment are: (1) receipt of a benefit; and (2) unjust

4    retention of the benefit at the expense of another.  *Lectrodryer v. SeoulBank*, 77

5    Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000); *First Nationwide Savings v.*

6    *Perry,* 11 Cal.App.4th 1657, 1662-1663, 15 Cal.Rptr.2d 173 (1992) ("The fact that

7    one person benefits another is not, by itself, sufficient to require restitution.  The

8    person receiving the benefit is required to make restitution only if the circumstances

9    are such that, as between the two individuals, it is *unjust* for the person to retain

10   it.").  CYBERsitter's conclusory pleading does not identify the specific benefit

11   allegedly received by Google or the unjust retention of that benefit by Google.

12       Thus regardless of whether unjust enrichment is recognized as a valid cause

13   of action here, CYBERsitter's claim for unjust enrichment fails.

14   <u>**Conclusion**</u>

15       For the foregoing reasons, Google respectfully requests that the Court dismiss

16   or transfer the entire case pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C.

17   § 1406(a), or, in the alternative, dismiss with prejudice plaintiff's Counts IV, VI,

18   VIII, IX and X against Google pursuant to Fed. R. Civ. P. 12(b)(6).

19

20   DATED: September 10, 2012    QUINN EMANUEL URQUHART &

21       SULLIVAN, LLP

22

23       By /s/ Margret M. Caruso

24       Margret M. Caruso

25       Attorneys for Google Inc.

26

27

28