FAYER GIPSON LLP
Gregory A. Fayer (State Bar. No. 232303)
GFayer@fayergipson.com
Elliot B. Gipson (State Bar No. 234020)
egipson@fayergipson.com
Minh Z. Kuo (State Bar No. 287489)
MKuo@fayergipson.com
2029 Century Park East, Suite 3535
Los Angeles, California 90067
Telephone: 310.557.3558
Facsimile:  310.557.3589

Attorneys for Plaintiff
CYBERsitter, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company,<br><br>       Plaintiff,<br><br>  v.<br><br>Google Inc., a Delaware corporation; ContentWatch, Inc., a Utah corporation, d/b/a Net Nanny; and DOES 1-10, inclusive,<br><br>       Defendants. | CASE NO. CV12-5293-RSWL (AJWx)<br><br>**CYBERSITTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GOOGLE'S MOTION TO TRANSFER PURSUANT TO RULE 12(B)(3), OR IN THE ALTERNATIVE, TO DISMISS CYBERSITTER'S STATE LAW CLAIMS AGAINST GOOGLE PURSUANT TO RULE 12(B)(6)**<br><br>Judge:   Hon. Ronald S. W. Lew<br>Ctrm:   21<br><br>Hearing Date:   October 23, 2012<br>Hearing Time:   10:00 a.m.<br><br>Action Filed:   June 18, 2012<br>Trial Date:   TBD<br><br>[filed concurrently with Declarations of Gregory Fayer and Brian Milburn; Objections to Evidence] |

FAYER GIPSON LLP

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................... 3

      A.   The Parties ..................................................................................... 3

      B.   CYBERsitter's' Claims Against Google ..................................... 4

      C.   Google's Click-Through Agreement with CYBERsitter ............ 4

III.    ARGUMENT ............................................................................................ 6

      A.   The Court Should Deny Google's Motion to Transfer ............... 6

            1.   Legal Standards ................................................................ 6

            2.   CYBERsitter's Claims are Not Subject to the Forum
                Selection Clause ............................................................... 7

            3.   Google Did Not Reasonably Communicate Its Interpretation
                of the Forum Selection Clause to CYBERsitter ........... 13

      B.   The Court Should Deny Google's Motion to Dismiss
      CYBERsitter's State Law Claims Based on CDA Immunity ................. 15

            1.   Legal Standards .............................................................. 15

            2.   Google Is an Information Content Provider and Does Not
                Enjoy CDA Immunity Under Ninth Circuit Precedent ............... 16

            3.   Google Does Not Enjoy CDA Immunity For Its Own
                Independent Tortious Conduct ....................................... 20

      C.   The Court Should Deny Google's Motion to Dismiss
      CYBERsitter's Claim for Unjust Enrichment ........................................ 22

            1.   Google Failed to Meet and Confer in Violation of Local
                Rule 7-3 .......................................................................... 22

             2.   CYBERsitter's Claim for Unjust Enrichment is Proper ............ 23

IV.     CONCLUSION ...................................................................................... 25

FAYER GIPSON LLP

i

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006).....18, 19, 21

*Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86 (2d Cir. 2009)...............................................................................6, 13

*Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*, 2:10-CV-02991-JHN, 2010 WL 5154136 (C.D. Cal. Aug. 12, 2010).......................................8

*Barnes v. Yahoo!,* 570 F.3d 1096 (9th Cir. 2009) ........................................21

*Batzel v. Smith,* 333 F.3d 1018 (9th Cir.2003) ................................................17

*Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290 (D. Md. 2002).............................9

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991...............................................................................................14

*Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324 (S.D.N.Y. 2008) ....................9

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983).......8

*Concorde Equity II, LLC v. Miller*, 732 F.Supp.2d 990 (N.D. Cal. 2010)...................23

*Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) ........................................11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008)...............................................................16, 17, 18, 20, 21

*Flowbee Int'l, Inc. v. Google, Inc.*, No. 38 Civ. 09-199 (S.D. Texas February 8, 2010) ...............................................................................................10

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) .........................16, 17

*Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810 (C.D. Cal. 2005)....................8

*Ghazali v. Moran,* 46 F.3d 52 (9th Cir. 1995)............................................22

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009), ...........................19

*Hishon v. King & Spalding*, 467 U.S. 69, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)....25

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987)...............12

*Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean Garden Products Inc.*, 320 F. App'x 548 (9th Cir. 2009) ...............................................................8

*Jurin v. Google Inc.*, 695 F. Supp. 2d 1117 (E.D. Cal. 2010)....................................20

*Kentucky Cent. Life Ins. Co. v. LeDuc*, 814 F. Supp. 832 (N.D. Cal. 1992)...............15

*Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206 (9th Cir.1999)..11

FAYER GIPSON LLP

*Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993) ............................................................8

*Light v. Taylor*, 317 Fed. Appx. 82 (2d Cir. 2009) ........................................................7

*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509 (9th Cir. 1988) .......8, 9, 11

*Mazur v. eBay Inc.,* No. C 07-03967 MHP, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ............................................................................................................................21

*Monet v. Chase Home Finance, LLC,* No. C 10-0135 RS, 2010 WL 2486376 (N.D. Cal. June 16, 2010).....................................................................................................23

*Mosier v. HSBC Bank USA, N.A.*, CV 10-3669 PSG E, 2010 WL 5422550 (C.D. Cal. Dec. 28, 2010) ...............................................................................................................8

*Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133 (9th Cir. 2004). ............................7, 12

*Nagrampa v. Mailcoups, Inc.,* 469 F.3d 1257 (9th Cir. 2006) .....................................13

*Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137 (N.D. Cal. 2007).........15

*Nextrade, Inc. v. Hyosung (Am.), Inc.*, 122 F. App'x 892 (9th Cir. 2005) ....................8

*O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98 (D. Conn. 1998) ......................13

*Phillips v. Audio Active Ltd.,* 494 F.3d 378 (2d Cir. 2007) ...........................................7

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) ...............................10

*Rosetta Stone v. Google, Inc.,* No. 1:09cv736 (E.D. Virginia Sept. 21, 2009) ...........10

*Smith v. Lucent Technologies, Inc.*, Civ. A. 02-0481, 2004 WL 515769 (E.D. La. Mar. 16, 2004)......................................................................................................................7

*Starbuck v. City & County of San Francisco*, 556 F.2d 450 (9th Cir. 1977) ...............19

*Suk Jae Chang v. Wozo LLC*, CIV.A. 11-10245-DJC, 2012 WL 1067643 (D. Mass. Mar. 28, 2012)...............................................................................................................16

*Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987) ......................15

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) 24

*Swift v. Zynga Game Network, Inc.,* C 09-05443 SBA, 2010 WL 4569889 (N.D. Cal. Nov. 3, 2010)................................................................................................................16

*Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688 (8th Cir. 1997) .................8

*Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829 (9th Cir. 1986) .........23

*Universal Comm'ns Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413 (1st Cir. 2007).................21

*Varsity Gold, Inc. v. Lunenfeld*, 2008 WL 5243517 (D. Md. Dec. 12, 2008)................9

*Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ......................................6

1

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ..............................15

2

3

**Federal Statutes**

4

47 U.S.C. § 230(c) .........................................................................................................16

5

47 U.S.C. § 230(c)(1).....................................................................................................21

6

47 U.S.C. § 230(f)(3) .....................................................................................................16

7

**Federal Rules**

8

C.D. Cal. L.R. 7-3 ..........................................................................................................22

9

F.R.C.P. Rule 8 ..............................................................................................................24

10

11

**State Cases**

12

*Carnival Cruise Lines, Inc. v. Superior Court,* 234 Cal.App.3d 1019 (1991) .............13

13

*First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657 (1992) ..............................23

14

*GHK Assoc. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856 (1990) ..............................24

15

*Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985) ...............................................24

16

*Hernandez v. Lopez*, 180 Cal. App. 4th 932 (2009) ......................................................23

17

*Hirsch v. Bank of Am.,* 107 Cal. App. 4th 708 (2003)...................................................23

18

*Hunt v. Superior Court*, 81 Cal. App. 4th 901 (2000).....................................................13

19

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003).........................24

20

*Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723 (2000) .................................................25

21

*Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779 (2003) .................................23

22

*Neal v. State Farm Ins. Companies,* 188 Cal. App. 2d 690 (1961)................................12

23

*Nibbi Brothers, Inc. v. Home Federal Savings & Loan Ass'n*, 205 Cal. App. 3d 1415
(1988) ..........................................................................................................................23

24

**State Statutes**

25

Cal. Bus. & Prof. Code § 17203 ....................................................................................24

26

Cal. Civ. Code § 1550....................................................................................................15

27

Cal. Civ. Code § 2224....................................................................................................24

28

FAYER GIPSON LLP

iv

1

### **Treatises**

2   11 Richard A. Lord, Williston on Contracts § 32.12 (4th ed. Supp. 2009)...................12

3   Restatement (Second) of Contracts § 202 (1981).........................................................11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAYER GIPSON LLP

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff CYBERsitter, Inc. ("Plaintiff" or "CYBERsitter") hereby submits this memorandum of points and authorities in opposition to Defendant Google, Inc.'s ("Defendant" or "Google") motion to transfer pursuant to Rule 12(b)(3), or in the alternative, to dismiss CYBERsitter's state law claims against Google pursuant to Rule 12(b)(6) (the "Motion").

## I.     INTRODUCTION

Google's Motion improperly seeks to deny Plaintiff its choice of forum based on a forum selection clause in a click-through agreement that has nothing whatsoever to do with the claims at issue in this case.  The agreement on its face governs the parties' rights and obligations solely with respect to *CYBERsitter's own advertising* through its Google AdWords account.  CYBERsitter's advertisements are simply not at issue in this lawsuit, and neither the agreement nor CYBERsitter's advertisements are raised – or even mentioned – anywhere in the Complaint.  Whether the parties had an independent contractual relationship has absolutely no bearing on this suit.

What *is* at issue is Google's unauthorized sale of CYBERsitter's marks to co-defendant Content Watch, Inc. ("CWI") for use in false and misleading Google "sponsored links" advertisements.  Under the law of Ninth Circuit, a forum selection clause may not encompass a non-contract claim unless its resolution requires some interpretation of the agreement.  There is no such cause of action at issue here.

A reasonable reading of the forum selection clause in the context of the agreement further undermines Google's argument.  *Every provision* of the agreement relates to CYBERsitter's *own* advertising, while not a single provision makes reference to third party advertising – including the forum selection clause at issue.  Google's attempt to stretch the forum selection clause in this unrelated agreement to encompass the claims in this lawsuit flies in the face of Ninth Circuit authority, the plain terms of the agreement and common sense.  In short, the contract on which Google relies is utterly irrelevant to this lawsuit and provides no basis for transfer.

FAYER GIPSON LLP

1    Alternatively, Google seeks to dismiss CYBERsitter's claims prior to discovery

2    based on asserted immunity under the Communications Decency Act ("CDA").  In so

3    doing, Google invites the Court to ignore the allegations in CYBERsitter's pleading

4    and to read the CDA's narrow exception as providing sweeping immunity for broad

5    classes of tortious conduct.  First, under the factual allegations in the Complaint,

6    Google is an "information content provider" under the CDA and, as such, is not

7    eligible for CDA immunity.  The Complaint clearly alleges that Google materially

8    contributed to the unlawfulness of the ads at issue, including by suggesting and selling

9    CYBERsitter's marks for use in the false advertisements.   Those allegations, if true,

10   preclude CDA immunity and are controlling at this preliminary stage of the case.

11   Second, even if Google were not sufficiently alleged to be an "information content

12   provider" for CDA purposes, Google cannot enjoy immunity for its own tortious

13   conduct where the allegations on their face do not simply treat Google as a publisher

14   of third party content, but instead seek to hold it liable for its own tortious conduct.

15   CDA immunity is simply not available under the facts that Plaintiff has alleged.

16   Google's Motion disputes the facts alleged in Plaintiff's Complaint, arguing, for

17   instance, that "because CWI – not Google – created the content about which

18   CYBERsitter complains, the Court should dismiss each of these state law claims as to

19   Google."  Mot. at 14. ***But Google's attempt to dispute the factual allegations in the***

20   ***Complaint at this stage is improper***.  Because Google has brought a 12(b)(6) motion

21   to dismiss, Plaintiff's factual allegations are controlling and all inferences must be

22   drawn in Plaintiff's favor.  As explained in detail below, CYBERsitter's Complaint

23   avers facts independently sufficient to sustain its state law claims for direct and

24   contributory infringement, unfair competition and unjust enrichment based on

25   Google's own direct conduct.  Those allegations are more than sufficient to withstand

26   Google's motion to dismiss, which is necessarily limited to a facial challenge of

27   Plaintiff's allegations.  Once the parties have had an opportunity to conduct discovery,

28   Google will have an opportunity to move for summary judgment if it chooses to do so.

FAYER GIPSON LLP

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

But at this stage of the proceedings, it would be error to dismiss CYBERsitter's state causes of actions where the allegations in the Complaint, on their face, plead that Google has engaged in conduct giving rise to liability as a primary tortfeasor.

Google's motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND

### A.   The Parties

Defendant CYBERsitter is a family-owned software company based in Santa Barbara, California engaged in the business of software development and sales. Complaint ¶ 12.  CYBERsitter developed, markets and sells the Internet content filtering program known as "CYBERsitter."  *Id.*  The CYBERsitter program, which went to market in or about 1995, was among the first commercially available Internet content filtering programs and has been continuously marketed and sold to the public since that time.  *Id.* ¶ 13.

Defendant Content Watch, Inc. ("CWI") is the maker of a program called "Net Nanny," an Internet content filtering program which has, over the years, become one of the CYBERsitter program's primary market competitors. *Id.* ¶ 27.

Defendant Google is one of the world's largest providers of Internet search engine services.  *Id.* ¶ 17.  Google's primary source of revenue comes from sponsors through paid advertisements that Google displays on its search engine and other websites for which Google provides sponsored ads.  In response to Google keyword searches, Google displays paid advertising results called "sponsored links" in conjunction with the other search results.  *Id.* ¶ 18.  The Google "sponsored links" are displayed in a format virtually identical to that of the non-paid results.  *Id.*  The only apparent distinction between the paid ads and the natural search results is that the paid ads are highlighted in yellow and there is a small banner above them indicating that the sponsored links are "Ads" related to the keyword search.  *Id.*

In or about 2000, Google launched a paid advertising program known as the "AdWords" program.  The AdWords program allows sponsors to purchase certain

keywords that will trigger the sponsor's advertisement whenever a user conducts searches using the keywords.  *Id.* ¶ 20. Google's AdWords program permits and encourages third-party trademarks to be "auctioned" off to the highest bidder for use in Google's paid advertising program, even over the objections of the trademark owner. *Id.* ¶ 24.  *Google itself suggests trademarks and other keywords to its advertisers to use as triggers for the paid ads*.  *Id.*  The highest bidders then pay Google on a "cost-per-click" basis, whereby Google receives a fee whenever a Google user clicks on the sponsored link.  *Id.*

As part of the AdWords program, Google has engaged in the unauthorized sale of CYBERsitter's marks to CWI for use in advertisements for the Net Nanny program.  *Id.* ¶ 27.  The CWI-sponsored advertisements have been displayed by Google to users whenever a user searched for the term "CYBERSITTER" or similar terms on the Google search engine, often as the first search result on the page.  *Id.* Google and CWI's ads are false, misleading, confusing, and unauthorized.  *Id.*

## B.   CYBERsitter's' Claims Against Google

In this action, CYBERsitter brings claims against Google for (i) direct and contributory trademark infringement under federal and state law, (ii) false advertising claims under federal and state law, (iii) unfair competition, and (iv) unjust enrichment. *Id.* ¶ 1.  These claims stem from CWI-sponsored advertisements through the AdWords program in which Google and CWI have misappropriated the "CYBERSITTER" trademark and made false, confusing and misleading use of that mark.  *Id.* ¶ 2.

None of the claims brought by CYBERsitter against Google in the present action relate to or arise from any agreement between itself and Google.  In fact, the Complaint does not reference any such agreement.  Nor do CYBERsitter's claims relate  to or arise from advertising sponsored by CYBERsitter through Google.

## C.   Google's Click-Through Agreement with CYBERsitter

In the early 2000s, plaintiff CYBERsitter signed up online for a Google AdWords account in order to advertise its CYBERsitter and SnoopStick programs.

FAYER GIPSON LLP

Declaration of Brian Milburn ("Milburn Decl.") ¶ 5.  In 2006,  in connection with the CYBERsitter AdWords account, CYBERsitter's president, Brian Milburn, was presented with a click-through agreement entitled "Google Inc. Advertising Program Terms" ("Agreement").  *Id.* ¶ 6; Declaration of Sarah Buer ("Buer Decl."), Ex. 1.  Mr. Milburn clicked through the Agreement, as required to proceed with the account.  *Id.*

The opening paragraph of the Agreement reads as follows:

These Google Inc. Advertising Program Terms ("Terms") are entered into by, as applicable, the customer signing these Terms….or that accepts these terms electronically ("Customer") and Google Inc. ("Google").  **These Terms govern Customer's participation in Google's advertising program(s) ("Program")**…These Terms…are collectively referred to as the "Agreement."

*Id.*, Ex. 1 (emphasis added).The remainder of the Agreement is directed exclusively at CYBERsitter's advertising through Google:

- Section 1, entitled "Policies," imposes certain Google policies upon CYBERsitter's advertising.

- Section 2, entitled "Program," describes CYBERsitter's responsibilities for its advertising content through Google.  This is the only section that describes the term "Program."  It is limited solely to the conditions upon CYBERsitter-sponsored advertising and does not address third-party sponsored advertising content.

- Section 3, entitled "Cancellation," governs how Google or CYBERsitter could cancel CYBERsitter's advertising.

- Section 4, entitled "Prohibited Uses," imposes certain prohibitions on CYBERsitter's advertising on the Google network.

- Section 5, entitled "Disclaimer," disclaims any warranties by Google relating to CYBERsitter's advertising.

- Section 6, entitled "Agency," acknowledges that CYBERsitter is authorized to advertise on Google and owns the rights to its ads.

- Section 7, entitled "Payment," establishes the terms of payment by CYBERsitter for its advertising on the Google network.

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

- Section 8, entitled "Indemnification," requires CYBERsitter to indemnify Google from any claim arising out of CYBERsitter's advertising.

Section 9, entitled "Miscellaneous," contains the forum selection clause at issue:  "ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA…"

Nowhere in the click-through Agreement are there any references to third party-sponsored advertisements through Google.  Nor is there any mention of Google's advertising  programs outside the context of CYBERsitter-sponsored advertising through its AdWords account.

## III.   ARGUMENT

### A.   The Court Should Deny Google's Motion to Transfer

#### 1.   Legal Standards

"The general rule is that a plaintiff's choice of forum is afforded substantial weight."  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  It "will not be disregarded unless the contract evinces agreement by the parties that his claims cannot be heard there.  The court must examine ***the substance of a plaintiff's claims as they relate to the precise language of the specific clause at issue***."  *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 90 (2d Cir. 2009) (citations omitted, emphasis added).

The burden of persuasion on a motion to transfer based on a forum selection clause is on the party seeking enforcement of the clause. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc.*, 572 F.3d at 89.  In order to meet that burden, Google must prove that: "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc.*, 572 F.3d at 89 (citing *Phillips v.*

FAYER GIPSON LLP

1   *Audio Active Ltd.,* 494 F.3d 378, 383-84 (2d Cir. 2007)).

2          In the present action, Google fails to meet its burden, because the claims at

3   issue are not subject to the Agreement's forum selection clause and, in any event,

4   Google's present interpretation of the clause was not reasonably communicated to

5   CYBERsitter.

6          Not only does Google have the burden of persuasion on these issues, but all

7   facts must be viewed in a light most favorable to CYBERsitter.  *Murphy v. Schneider*

8   *Nat'l, Inc.,* 362 F.3d 1133, 1138 (9th Cir. 2004) (holding that "in the context of a Rule

9   12(b)(3) motion based upon a forum selection clause, the trial court must draw all

10  reasonable inferences in favor of the non-moving party and resolve all factual

11  conflicts in favor of the non-moving party…" and noting the "virtually unanimous

12  authority" of the other federal courts on this issue).

13          2.   CYBERsitter's Claims are Not Subject to the Forum Selection

14                Clause

15          "Before a Court can consider a forum selection clause, it first must decide

16  whether the clause applies to the type of claim asserted in the lawsuit." *Smith v.*

17  *Lucent Technologies, Inc.*, Civ. A. 02-0481, 2004 WL 515769, at *7 (E.D. La. Mar.

18  16, 2004) (internal quotation marks omitted).  "Forum selection clauses are enforced

19  only when they encompass the claim at issue." *Light v. Taylor*, 317 Fed. Appx. 82, 83

20  (2d Cir. 2009).

21          a)   **The Resolution of the Claims at Issue Does Not Relate to**

22                **Interpretation of the Agreement**

23          Google argues that the forum selection clause in the Agreement encompasses

24  the claims in this action, despite the fact that the claims have nothing to do with the

25  parties' contractual relationship or the substance of the Agreement.  But this is not the

26  law.

27          In the Ninth Circuit, the test for determining whether a forum selection clause

28  applies to claims other than for breach of the contract turns on "***whether resolution of***

FAYER GIPSON LLP

7

*the claims relate to interpretation of the contract*." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); *Nextrade, Inc. v. Hyosung (Am.), Inc.*, 122 F. App'x 892, 894 (9th Cir. 2005) ("In determining whether a forum selection clause applies to non-contract claims, the Ninth Circuit has adopted the approach which upholds the forum selection clause *where the claims alleged in the complaint relate to the interpretation of the contract*"; citing *Manetti-Farrow*, internal quotations omitted); *Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean Garden Products Inc.*, 320 F. App'x 548, 549 (9th Cir. 2009) (reversing dismissal of claims which do not relate to interpretation of the contract). This Court has followed the *Manetti-Farrow* test without exception, as it should here.[1]  *See, e.g., Mosier v. HSBC Bank USA, N.A.*, CV 10-3669 PSG E, 2010 WL 5422550 (C.D. Cal. Dec. 28, 2010); *Bagdasarian Productions, LLC v. Twentieth Century Fox Film Corp.*, 2:10-CV-02991-JHN, 2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) *appeal dismissed*, 673 F.3d 1267 (9th Cir. 2012); *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 823 (C.D. Cal. 2005).

In the instant case, CYBERsitter pleads claims against Google based Google's sale of CYBERsitter's marks to CWI for use in false, misleading and confusing advertisements.  These claims are *completely unrelated* to CYBERsitter's own advertising, which is the sole subject matter of the Agreement.  *See* Buer Decl., Ex. 1 ("These Terms govern Customer's participation in Google's advertising program(s) ('Program')…").  Indeed, CYBERsitter's Agreement with Google is not mentioned anywhere in the Complaint.  *Id.*  *None of the claims at issue hinge on, or even remotely relate to, any terms in the Agreement.*

---

[1] The *Manetti-Farrow* test also accords with that of its sister circuits.  *See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) (a forum selection clause will only extend to non-contract claims when such claims "ultimately depend on the existence of a contractual relationship" between the parties); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). (test is whether the claims "involve the same operative facts as would a parallel claim for breach of contract."); *accord Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

FAYER GIPSON LLP

1      Because the claims at issue constitute neither a contract nor tort action arising

2   out of CYBERsitter's contractual relationship with Google, Google cannot point to a

3   single fact demonstrating that "resolution of the claims" could in any way "relate to

4   interpretation of the contract."  *Manetti-Farrow, Inc.,* 858 F.2d at 514.

5   CYBERsitter's claims based on the false and misleading CWI-sponsored

6   advertisements are entirely independent of its contractual relationship with Google.

7   Even if CYBERsitter had never advertised with Google, and thus never entered into a

8   contractual relationship with it, it could still bring this lawsuit.  Under the clear law of

9   this Circuit, the Agreement's forum selection clause cannot apply.

10      In fact, all but one of the cases cited by Google (a district court case from

11  another circuit, discussed below) accords with the Ninth Circuit rule and stands

12  merely for the proposition that forum selection clauses may apply only to ***tort claims***

13  ***which relate to the substance of the contract***.  *See* Motion, 6:16-7:4 (citing to *Varsity*

14  *Gold, Inc. v. Lunenfeld*, 2008 WL 5243517 at *3, n.5 (D. Md. Dec. 12, 2008);

15  *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir. 1988);

16  *Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008); *Berry v.*

17  *Soul Circus, Inc.*, 189 F.Supp.2d 290, 294 (D. Md. 2002) ).  For example, courts have

18  found that tort claims such as tortious inference or employment tort actions are

19  encompassed by the forum selection clauses in the business or employment contracts

20  at issue.  *Id*.  But the present case does not involve such related tort claims.

21      Here, Google proposes a far more expansive application of the forum selection

22  clause than its cited case law supports – encompassing claims which have nothing to

23  do with the substance of the Agreement or the contractual relationship arising from it.

24  It urges this Court to deny a plaintiff its chosen forum based on a contractual

25  relationship upon which plaintiff brings neither contract nor tort claims.  However,

26  Google cannot point to a single intra-circuit case which upholds such a broad reading

27  of a forum selection clause.

28      The only decision Google cites that deviates from the rule set forth above is a

FAYER GIPSON LLP

9

non-binding decision of a Texas district court, *Flowbee Int'l, Inc. v. Google, Inc.* is misplaced, No. 38 Civ. 09-199 at 8-13 (S.D. Texas February 8, 2010).  There, the Texas court applied the law of the Fifth Circuit in granting Google's motion to transfer based on the same forum selection clause at issue.  But it does not constitute the governing authority on this issue.  *See* Decl. Hauler, Ex. 2.  In fact, in Footnote 1 of its Order, the *Flowbee Int'l* court specifically disregarded the Ninth Circuit's *Manetti-Farrow* decision as "bound by different case law."  *Id.*, Ex. 2, pg. 11-12.

In the same footnote, the *Flowbee Int'l* court noted the contrary decision of a Virginia district court, *Rosetta Stone v. Google, Inc.,* No. 1:09cv736 (E.D. Virginia Sept. 21, 2009), which Google neglects to mention in its Motion.  *Id.*, Ex. 2, pg. 11-12; Declaration of Gregory A. Fayer ("Fayer Decl."), Ex. B.  In *Rosetta Stone*, plaintiff brought trademark infringement claims against Google based on the unauthorized sale of its marks to third parties for use in misleading and confusing advertisements. *Rosetta Stone v. Google, Inc.,* No. 1:09cv736 (E.D. Virginia Sept. 21, 2009).  The court denied Google's motion to dismiss based on improper venue on the very ***same*** forum selection clause at issue here and in *Flowbee Int'l*.  Fayer Decl., Ex. B; *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 150 (4th Cir. 2012).  The *Flowbee Int'l* court justified its disregard of the *Rosetta Stone* ruling by reasoning that it was not obliged to follow the law of a different circuit:  "In *Rosetta Stone*, the court specifically noted that it was not bound by Fifth Circuit law.  (D.E. 26, Ex. 3, p. 24.)  This Court is." Hauler Decl., Ex. 2, pg. 11-12.

Like the court in *Rosetta Stone*, this Court is not bound by the law of the Fifth Circuit.  It is, however, unlike the court in *Flowbee Int'l*, bound by the law of the Ninth Circuit.  In accord with the decision in *Rosetta Stone*, and applying the Ninth Circuit's *Manetti-Farrow* test, this Court should deny Google's motion to transfer.  Because CYBERsitter's claims do not relate to the substance of the Agreement – and their resolution does not require its interpretation – the forum selection clause at issue does not apply to the present action.

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

**b)** **The Language of the Forum Selection Clause Does Not Encompass the Claims At Issue**

Not only does the *Manetti-Farrow* test mandate denial of Google's motion, but so does the plain language of the clause taken in the context of the Agreement.

In analyzing the applicability of forum selection clauses, federal principles of contract interpretation apply.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009); *Manetti-Farrow, Inc.,* 858 F.2d at 513.  "Under federal law, a written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations."  *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999); *Shakey's Inc. v. Covalt,* 704 F.2d 426, 434 (9th Cir.1983); Restatement (Second) of Contracts § 202 (1981) ("A writing is interpreted as a whole").

In the instant case, the scope and subject matter of the Agreement as a whole are clearly defined in its opening paragraph, which states that the Agreement "governs [CYBERsitter's] participation in Google's advertising program(s) ('Program')".  Buer Decl., Ex. 1.  Accordingly, every section of the Agreement pertains to ***CYBERsitter's*** advertising through Google.  *Id.*

Read in the context of the Agreement in its entirety, the forum selection clause – like every other clause in the Agreement – relates to ***CYBERsitter's*** advertising through Google, ***not*** to any third party advertisements.  Indeed, the phrase "Google Program(s)" in the forum selection clause, on which Google relies to argue the clause's application to the instant claims, is referenced solely in Section 2 of the Agreement; this section describes in detail CYBERsitter's responsibilities for its advertising through Google and does not address or contemplate third party advertisements.  Indeed, such third party advertisements are not addressed or contemplated in any other part of the Agreement.

The only reasonable interpretation of the forum selection clause is that it applies solely to claims arising out of CYBERsitter's advertising through Google's programs.

11

FAYER GIPSON LLP

*See Shakey's Inc. v. Covalt,* 704 F.2d 426, 434 (9th Cir.1983) ("Preference must be given to reasonable interpretations as opposed to those that are unreasonable..."). In contrast, Google's interpretation is unreasonable, only possible by improperly ignoring the context of the Agreement and viewing the clause in total isolation; even Google admits that its interpretation of the forum selection clause is "extremely broad," implausibly making it the only clause in the Agreement referring to subject matter beyond CYBERsitter-sponsored advertising. *See* Mot. at 6.

However, in the event that the Court finds that both parties' readings of the forum selection clause are reasonable, the clause must be deemed ambiguous. *See* 11 Richard A. Lord, Williston on Contracts § 32.12 (4th ed. Supp. 2009) ("If a contract is capable of more than one reasonable interpretation, it is ambiguous."). But even in this event, any such ambiguity must be resolved in Plaintiff's favor and Google's Motion must be denied. *See Murphy,* 362 F.3d at 1138 (in resolving motions to dismiss, courts must resolve all factual conflicts and draw all reasonable inferences in favor of plaintiff). Furthermore, under federal contract principles, any ambiguity in a forum selection clause must be construed against Google, the drafter of the provision. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77-78 (9th Cir. 1987). This rule applies with particular force to contracts of adhesion such as the Agreement here, a standardized contract that provides no opportunity for the consenting party to negotiate. *Neal v. State Farm Ins. Companies,* 188 Cal. App. 2d 690, 695 (1961) ("The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party applies with peculiar force in the case of the contract of adhesion."); 11 Richard A. Lord, Williston on Contracts, § 32.12 (4th ed. 1991) ("any contract of adhesion, a contract entered into without any meaningful negotiation ... is particularly susceptible to the rule that ambiguities will be construed against the drafter.").

For each of these reasons, the forum selection clause must be read to apply only to claims related to CYBERsitter-sponsored advertising, and does not encompass the

FAYER GIPSON LLP

12

claims at issue. Google's motion to transfer thus fails.

### 3. Google Did Not Reasonably Communicate Its Interpretation of the Forum Selection Clause to CYBERsitter

In addition to establishing that the forum selection clause covers the claims in this lawsuit, Google also has the burden of proving that the forum selection clause was clearly communicated to CYBERsitter. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc.*, 572 F.3d at 89; *Phillips*, 494 F.3d at 383-84.

Even if Google had intended for the forum selection clause to encompass third-party advertisements not referenced in the Agreement, it did not reasonably communicate this intention to CYBERsitter. A forum selection clause will not be enforced if it fails to put the plaintiff on notice that it consented to having specific types of claims heard in a particular forum. *See, e.g., Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1291 (9th Cir. 2006) ("The forum selection clause is unenforceable if the court determines that the plaintiff did not have sufficient notice of it. Absent such notice, the requisite mutual consent to that contractual term is lacking and no valid contract with respect to such clause thus exists.") (citing *Carnival Cruise Lines, Inc. v. Superior Court,* 234 Cal.App.3d 1019, 1026-27 (1991)). This rule applies with particular force in contracts of adhesion such as the one at issue. *Hunt v. Superior Court*, 81 Cal. App. 4th 901, 908 (2000) (finding forum selection clause in an adhesion contract did not provide adequate notice to subscriber); *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 103 (D. Conn. 1998) ("the validity of a forum selection clause in an adhesion contract depends on whether the existence of the clause was reasonably communicated to the plaintiff.").

Brian Milburn, the principal and owner of CYBERsitter, did not understand the forum selection clause to encompass claims relating to third party ads when he clicked through the Agreement in connection with CYBERsitter's AdWords account. Milburn Decl. ¶¶ 7-10. Neither did he come to this understanding when he later re-read the Agreement. *Id.* ¶ 9. Rather, Mr. Milburn reasonably understood the clause to

13

FAYER GIPSON LLP

pertain to claims relating to CYBERsitter's advertising through its Google AdWords account, as this was the sole subject matter of the Agreement and the basis of his contractual relationship with Google.  *Id.* ¶¶ 7- 9.  That the Agreement was presented to him in the course of operating CYBERsitter's advertising account reinforced his reasonable belief that it pertained only to the parties' rights, responsibilities and obligations relating to CYBERsitter's advertising account.  *Id.* ¶ 7-8.  Third party advertisements through Google were never specifically raised or addressed ***anywhere*** in the click-through Agreement.  For this reason, Mr. Milburn did not understand that third party advertisements were covered by the Agreement in general, or that claims relating to them would be encompassed by the forum selection clause.  *Id.*  Indeed, Mr. Milburn did not learn of Google's intention that the forum selection clause should encompass CYBERsitter's claims relating to third party advertisements until he learned of Google's Motion.  *Id.* ¶ 10.

In the present case, CYBERsitter had no ability to negotiate any term in the Agreement.  Conversely, Google had the absolute power to craft the forum selection clause to convey whatever Google wanted it to convey.  If Google had wanted the forum selection clause to mean that "any cause of action CYBERsitter may have against Google relating to third party-sponsored advertising through Google must be brought in Santa Clara County, California," it should have – and easily could have – drafted the clause this way.  This would have reasonably communicated its intentions to CYBERsitter.  But Google chose not to do so.  It would be "fundamental[ly] unfair" to now allow Google the benefit of its self-serving, post-hoc interpretation of the forum selection clause when it had every ability to construct a clear and specific clause when it drafted the Agreement.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) ("It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness.").  It would also be fundamentally unfair – and contrary to basic contract principles of mutual consent – to bind CYBERsitter to a

forum to which it reasonably did not believe it had consented. *See* Cal. Civ. Code § 1550; *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) ("Mutual assent is determined from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understandings.").

Because Google did not reasonably communicate its interpretation of the forum selection clause to CYBERsitter, it fails to meet its burden on its motion to transfer.

**B.      The Court Should Deny Google's Motion to Dismiss CYBERsitter's State Law Claims Based on CDA Immunity**

1.   <u>Legal Standards</u>

The Court's decision regarding the applicability of the CDA to the present Complaint must be decided solely based upon the factual allegations in the Complaint. A Rule 12(b)(6) motion to dismiss is not an opportunity for the Court weigh the evidence; its sole function is to decide whether the facts alleged in the pleading, if true, would be sufficient to constitute a valid cause of action.  Therefore, courts "must presume that the plaintiff's allegations are true and grant the motion [to dismiss] only if it appears 'beyond doubt' that the plaintiff can prove no set of facts entitling it to relief." *Kentucky Cent. Life Ins. Co. v. LeDuc*, 814 F. Supp. 832, 835 (N.D. Cal. 1992) (quoting *Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987)).  Motions to dismiss are "viewed with disfavor under this liberal standard" unless it appears to "a *certainty* that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Id.* (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (emphasis added).

When application of the law is dependent upon the determination of specific facts – such as whether CDA immunity is applicable in a particular instance – dismissal is not appropriate at the pleading stage.  For this reason, other district courts have taken a cautious approach when analyzing the appropriateness of dismissing a lawsuit based upon a determination of CDA immunity in response to a Rule 12(b)(6) motion.  *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, C 09-05443 SBA, 2010 WL

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

1  4569889 (N.D. Cal. Nov. 3, 2010) ("Applying *Roommates.Com* here, the Court

2  cannot determine at this juncture, based on the pleadings, whether Zynga is entitled to

3  immunity under the CDA.  Rather, the FAC alleges facts, which, if proven, could

4  support the conclusion that Zynga is responsible, in whole or in part, for creating or

5  developing the special offers at issue.");  *Suk Jae Chang v. Wozo LLC*, CIV.A. 11-

6  10245-DJC, 2012 WL 1067643 (D. Mass. Mar. 28, 2012) (citations omitted) ("As

7  discussed above, [Defendant] and [Plaintiff] dispute whether the content of the

8  internet advertisements at the heart of this case were developed solely by Wozo and

9  Tatto or whether the content was developed at least in part by Adknowledge. This is a

10  dispute of fact that cannot be resolved at this juncture.").

2.  Google Is an Information Content Provider and Does Not Enjoy
    CDA Immunity Under Ninth Circuit Precedent

13      The CDA provides a narrow exemption to liability arising from certain third

14  party acts in certain limited circumstances.  It does not provide blanket immunity for

15  the actions of "interactive computer services," nor does it immunize any party from

16  the consequences of its own direct tortious conduct.  The CDA simply states: "No

17  provider ... of an interactive computer service shall be treated as the publisher or

18  speaker of any information provided by another information content provider." 47

19  U.S.C. § 230(c).  This grant of immunity applies *only if* the entity is *not* also an

20  "information content provider," defined in the CDA as "any person or entity that is

21  responsible, in whole *or in part*, for the creation or development of information

22  provided through the Internet or any other interactive computer service." 47 U.S.C. §

23  230(f)(3) (emphasis added).

24       "A website operator can be both a service provider and a content provider.  As

25  to content that it…is responsible, in whole *or in part* for creating or developing, the

26  website is also a content provider." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785,

27  802 (N.D. Cal. 2011) (emphasis added; citing *Fair Hous. Council of San Fernando*

28  *Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)).  Moreover, it

16

does not matter whether the content originated with Google or CWI, or that CWI, too, created the content.  "As the Ninth Circuit has clearly stated, the party responsible for putting information online may be subject to liability, even if the information originated with a user." *Fraley,* 830 F. Supp. 2d at 802 (citing *Batzel v. Smith,* 333 F.3d 1018, 1033 (9th Cir.2003)); *see also Roommates.Com, LLC*, 521 F.3d at 1165 ("[T]he fact that users are information content providers does not preclude Roommate from *also* being an information content provider by helping 'develop' at least 'in part' the information in the profiles.").

Based on the facts alleged in the Complaint, Google is an "information content provider" in collaborating with CWI in creating the "sponsored links" at issue. Contrary to Google's assertions that it did not author the content at issue, ***the Complaint clearly avers that Google co-authored the false and misleading advertisements with CWI*** by "suggest[ing]" and "offer[ing] for purchase" CYBERsitter's marks for their unauthorized use as keywords in the CWI-sponsored advertisements.  Motion 13; Complaint ¶¶ 20-27.  The Complaint alleges that Google has "willfully participated in, facilitated and encouraged" the unlawful use of CYBERsitter's marks in the false, infringing advertisements. *Id.* ¶ 2.

Google attempts to dispute those facts, arguing, for example, that "because CWI – not Google – created the content about which CYBERsitter complains, the Court should dismiss each of these state law claims as to Google."  Mot. at 14. However, in the present posture the allegations in the Complaint are controlling and Google's attempt to raise a factual dispute in its motion to dismiss is misplaced. Under the facts alleged, Google acted as a direct infringer and is liable as a primary tortfeasor. *Fraley*, 830 F. Supp. 2d at 802 (in deciding motions to dismiss courts must not accept a plaintiff's factual allegations as true and construe them in "the light most favorable to" the plaintiff).

Any remaining doubt is removed by the Ninth Circuit's decision in *Roommates.Com*, which is controlling on this issue.  There, the Court reversed the

FAYER GIPSON LLP

district court's grant of summary judgment to defendant, and held that an online roommate matching service was not entitled to CDA immunity even though the information that it posted was provided entirely by third parties.  The Court explained that an "interactive computer service" acts as an "information content provider" when it "***materially contribut[es] to [the content's] alleged unlawfulness***." *Roommates.Com*, 521 F.3d at 1167-68 (emphasis added).  The Ninth Circuit drew a clear distinction between a website's activities as a "passive conduit" or "neutral tool" for users, as opposed to its acts that "contribute to illegal activity."  The Court stated:

> A dating website that requires users to enter their sex, race, religion and marital status…and that provides means for users to search along the same lines, retains its CDA immunity insofar as it does not contribute to any alleged illegality…However, a website operator who edits in a manner that contributes to the alleged illegality…to transform an innocent message into a libelous one…is directly involved in the alleged illegality and thus not immune.

*Id.* at 1169.  The Court held that defendant's posting of a questionnaire which elicited illegal responses constituted a material contribution to the illegality and CDA immunity was therefore unavailable: "The CDA does not grant immunity for ***inducing third parties to express illegal preferences***.  Roommate's own acts – posting the questionnaire and requiring answers to it – are entirely its doing and thus section 230 of the CDA does not apply to them.  Roommate is entitled to no immunity." *Id.* at 1165; *accord 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 295 (D.N.J. 2006) (holding that *a pay-for-priority search engine which sold advertisers the right to use plaintiff's trademarks as keywords* was not entitled to CDA immunity "because the alleged fraud is *the use of the trademark name in the bidding process*, and not solely the information from third parties that appears on the search results page") .

In the instant case, Google has not only materially contributed to the unlawfulness of the CWI-sponsored advertisements, but has offered for sale the essential component of their unlawfulness – the right to use CYBERsitter's marks in the false and misleading advertisements on Google's site.  Like the defendants in Roommates.Com, LLC, Google ***induced*** CWI, and other users, to make unauthorized

FAYER GIPSON LLP

1    and illegal use of CYBERsitter's marks by suggesting and offering them for sale.  In

2    fact, as to CYBERsitter's marks, Google is alleged to have violated its own policies

3    discouraging the improper use of third party trademarks.  *Id.* ¶ 24-32.   Therefore,

4    Google cannot be characterized as having acted as a "neutral tool," because its

5    participation, in itself, constitutes an illegal act in violation of federal and state

6    trademark laws.  *See* Complaint ¶¶ 33-93.   Moreover, the only controlling precedent

7    relevant to the facts of this case is the *Roommates.Com* case discussed above.  Neither

8    the Ninth Circuit nor the Central District has ruled on the issue of whether Google's

9    participation in third party advertising through the AdWords program makes it an

10   "information content provider" under the CDA under the present  circumstances.

11          The two out-of-district cases upon which Google relies are distinguishable and

12   have no binding authority on this Court.  *See Starbuck v. City & County of San*

13   *Francisco*, 556 F.2d 450, 457 (9th Cir. 1977) ("The doctrine of stare decisis does not

14   compel one district court judge to follow the decision of another.  Thus a decision of

15   one district court is not binding upon a different district court.").   In *Goddard v.*

16   *Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009), the district court found that

17   Google acted as a "neutral tool" when it suggested the phrase "free ringtone" to users.

18   But it acknowledged the rule set out in *Roommates.Com* that a website cannot enjoy

19   CDA immunity if it "contribute[s] materially to [the] alleged unlawfulness." *Goddard*,

20   640 F. Supp. 2d at 1196.  Unlike in the present case, the suggestion "free ringtone"

21   could not, on its own, be characterized as illegal or unlawful.  *Id.* at 1197.  Here,

22   Google's unauthorized sale of the right to use CYBERsitter's marks in false and

23   misleading ads, as alleged, constitutes a violation of federal and state trademark laws

24   – and is evidenced by Google's violation of its own policies governing use of third

25   party trademarks.  *See* Complaint, ¶¶ 33-93.  *Goddard* is therefore consistent with a

26   determination that, in the present action, Google's material contribution to the

27   unlawfulness of the ads makes it an information content provider for the purposes of

28   the CDA.

FAYER GIPSON LLP

19

1    Likewise, the allegations in *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117 (E.D.
2    Cal. 2010), are wholly distinguishable.  *Jurin* simply involved a challenge to the
3    keyword aspect of the AdWords program (where an ad is displayed in conjunction
4    with a certain keyword), which is not at issue here and which has long held to be
5    permissible.  *Id.* at 1120.  It did not challenge Google's practice of auctioning off third
6    party trademarks for use in advertisements and certainly did not involve the egregious
7    direct conduct at issue here in which Google's conduct is alleged to have violated its
8    own policies governing the use of third party trademarks.  *See* Complaint ¶¶ 21-25,
9    29.  *Jurin* is also particularly troubling in that it completely ignores the Ninth Circuit's
10   decision in *Roommates.Com*, failing to even make mention of the decision.

11   In any event, it would be error to dismiss Plaintiff's allegations at the pleading
12   stage, before CYBERsitter has even been afforded the opportunity to take discovery to
13   ascertain the nature and extent of Google's participation in the development of the
14   infringing ads.  After discovery, Google will have the opportunity to move for
15   summary judgment if it believes it has sufficient evidence to show CDA immunity.
16   *See generally*, *Roommates.Com*, 521 F.3d 1157 (vacating the district court's grant of
17   summary judgment on plaintiff's state law claims based on CDA immunity).  At the
18   pleading stage, however, the allegations in the Complaint are controlling.  Accepting
19   those allegations as true – as the Court must – Google is not entitled to CDA
20   immunity, and its Motion to dismiss must be denied.

21           3.    Google Does Not Enjoy CDA Immunity For Its Own Independent
22                 Tortious Conduct

23   Even if the Court finds that Google's participation in the "creation or
24   development" (47 U.S.C. § 230(f)(3)) of the CWI-sponsored advertisements is
25   insufficient to make it an "information content provider," Google's motion to dismiss
26   fails for the additional reason that the CDA does not shield Google from liability for
27   its own independent tortious acts.  Accordingly, CYBERsitter's state law claims for
28   direct and contributory trademark infringement, unfair competition, and unjust

FAYER GIPSON LLP

20

FAYER GIPSON LLP

1    enrichment should not be dismissed on the basis of CDA immunity.

2        The CDA limits the liability of interactive computer service providers *solely as*

3    *to state law causes of action arising from the content of communications created and*

4    *posted on the Internet by third parties. Universal Comm'ns Sys., Inc. v. Lycos, Inc.,*

5    478 F.3d 413, 418 (1st Cir. 2007); *see also* 47 U.S.C. § 230(c)(1) (providing

6    immunity only for claims which treat the interactive computer service "as the

7    publisher or speaker" of a third-party's speech); *Barnes v. Yahoo!,* 570 F.3d 1096,

8    1107 (9th Cir. 2009) (denying CDA immunity from promissory estoppel claim, where

9    it did not treat defendant as a "publisher or speaker of third-party content, but rather as

10   a counterparty to a contract").  The CDA cannot be asserted as a shield to avoid

11   liability for an entity's own tortious conduct.  *See, e.g., Roommates.Com*, 521 F.3d

12   1157, 1165 ("Roommate's own acts…are entirely its doing and thus section 230 of the

13   CDA does not apply to them."); *800-JR Cigar, Inc.,* 437 F. Supp. 2d at 295 ("It is not

14   the purpose of the Act to shield entities from claims of fraud and abuse arising from

15   their own pay-for-priority advertising business, rather than from the actions of third

16   parties."); *Mazur v. eBay Inc.,* No. C 07-03967 MHP, 2008 WL 618988, at *9, 12

17   (N.D. Cal. Mar. 4, 2008) (denying defendant CDA immunity from claims based on

18   statements defendant eBay itself made regarding the safety of its auctions).

19       Here, CYBERsitter's state law claims for trademark infringement, unfair

20   competition and unjust enrichment do not depend solely upon the *content* of any

21   posting on Google's search results and do not rely on treating Google as the

22   "publisher or speaker" of the content.  Rather, each cause of action can stand alone

23   based on Google's ***unauthorized sale*** of CYBERsitter's marks for improper use,

24   which is Google's own act, and is neither attributable to a third party nor necessarily

25   constitutive of publication on the part of Google.[2]  Google's act of offering for

---

26   [2] *See* Complaint ¶ 57 (re state trademark infringement: "The Google Defendants
27   have used the CYBERSITTER mark… in commerce…by ***selling the right to use the
     CYBERSITTER*** marks to third parties as part of Google's paid advertising programs,
28   including in the AdWords platform…"); *id.* ¶ 72 (re state contributory trademark
     infringement: "With full knowledge of CYBERsitter's rights, the Google Defendants

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

1   purchase CYBERsitter's marks serves as an independent basis for each of

2   CYBERsitter's aforementioned claims.  Put another way, the wrongful act upon which

3   the claims rely is Google's act alone, and it does not involve Google acting as a

4   "speaker or publisher" of a third-party user's content; indeed, it does not involve

5   Google acting as a speaker or publisher in any way.  Because these claims allege

6   Google as a primary tortfeasor and are not contingent on the "content" of either

7   Google or any third party's speech, they cannot fall under the rubric of CDA

8   immunity.  *See* 47 U.S.C. § 230(c)(1).

9        **C.    The Court Should Deny Google's Motion to Dismiss CYBERsitter's**

10            **Claim for Unjust Enrichment**

11               1.    Google Failed to Meet and Confer in Violation of Local Rule 7-3

12       As an initial matter, Google failed to meet and confer on its request to dismiss

13   Plaintiff's claim for unjust enrichment for failure to state a claim.  Because this

14   request was brought in violation of Central District Local Rule 7-3, it should be

15   denied.[3]  *See* L.R. 7-3; *see also Ghazali v. Moran,* 46 F.3d 52, 53 (9th Cir. 1995)

16   _____

17   have knowingly facilitated and materially contributed to third party infringements of
     CYBERsitter's trademark rights…by ***selling the right to use the CYBERSITTER***

18   ***marks*** to third parties, including the CWI Defendants, as part of the Google
     Defendants' paid advertising programs, including in the AdWords platform"); *id.* ¶ 96

19   (re unfair competition: "The unlawful conduct in which Defendants have engaged and
     continue to engage includes ***violations of Plaintiff's trademark rights under federal***

20   ***law and California state law***"); *id.* ¶ 102 (re unjust enrichment: "Defendants have
     unjustly retained the benefits of their ***use and exploitation of Plaintiff's trademarks***
     and of Plaintiff's goodwill at Plaintiff's expense.") (emphasis added).

21       [3] Counsel met and conferred regarding Google's contemplated motion on July
     27, 2012.  Fayer Decl. ¶ 2.  At the conference, Google's counsel raised two and only

22   two grounds for its contemplated motion.  *Id.*  It did not raise or discuss any request to
     dismiss the unjust enrichment cause of action for failure to state a claim.  *Id.*  After the

23   conference, counsel for CYBERsitter sent an email confirming the bases for Google's
     motion as follows:

24       Following up on our phone conversation of earlier today, I just wanted to
         confirm that Google is contemplating bringing a motion to dismiss on

25       two grounds: (1) that venue is lacking due to a forum selection clause in a
         purported click-through agreement between CYBERsitter and Google,

26       and (2) that the state law claims should be dismissed pursuant to the
         Communications Decency Act.  Please let me know right away if there

27       are any other bases that we did not discuss.

28   *Id.* ¶ 3, Ex. A (7/27/2012 email from G. Fayer to B. Hauler).  Counsel for Google did
     not respond to this email or otherwise inform CYBERsitter of its additional ground for

1  ("Failure to follow a district court's local rules is a proper ground for dismissal.");

2  *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986)

3  (the power to sanction parties for violations of local rules – including sanction of

4  dismissal – falls within a district court's "inherent power to control [its] dockets.").

5  2.    CYBERsitter's Claim for Unjust Enrichment is Proper

6       On the substance of the unjust enrichment claim, Google is also wrong.  "There

7  is a split of authority in California as to whether a claim of unjust enrichment is

8  recognized as an independent cause of action." *Concorde Equity II, LLC v. Miller*, 732

9  F.Supp.2d 990, 1001 (N.D. Cal. 2010).  However, California courts agree that "unjust

10  enrichment" is, in effect, "the result of a failure to make restitution under

11  circumstances where it is equitable to do so." *Melchior v. New Line Prod., Inc*., 106

12  Cal. App. 4th 779, 793 (2003).  While courts "diverge on the proper way to

13  conceptualize unjust enrichment…[u]nder both views, the effect of unjust enrichment

14  is remedied with some form of restitution."  *Monet v. Chase Home Finance, LLC,* No.

15  C 10-0135 RS, 2010 WL 2486376, at *2-5 (N.D. Cal. June 16, 2010).

16       As such, California courts have adopted a policy in which a court should not

17  "focus unduly on labels" when it recognizes potential liability in an action for unjust

18  enrichment.  *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009) (criticizing trial

19  court's dismissal of unjust enrichment claim); *see also Concorde Equity,* 732 F. Supp.

20  2d at 1001 (recognizing California's split of authority but still upholding unjust

21  enrichment claim); *see also, e.g., Nibbi Brothers, Inc. v. Home Federal Savings &*

22  *Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988) (recognizing that fraudulent

23  inducement "may give rise to a valid cause of action for unjust enrichment"); *Hirsch*

24  *v. Bank of Am.,* 107 Cal. App. 4th 708, 722 (2003) ("Appellants have stated a valid

25  cause of action for unjust enrichment"); *First Nationwide Savings v. Perry*, 11 Cal.

26  App. 4th 1657, 1670-1671 (1992).

27

28  its motion prior to filing its Motion.  *Id.* ¶ 4.

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

Here, unlike in the cases relied upon by Google, it is unclear whether there is another cause of action that would provide precisely the same relief as Plaintiff requests in its unjust enrichment claim.  Google certainly fails to identify any with specificity, but instead rests on the conclusory assertion that "[t]he relief sought for CYBERsitter's unjust enrichment claim – restitution damages and injunctive relief – are duplicative of relief sought for CYBERsitter's other nine claims."[4]  Google's invitation to apply its preferred case authority to the exclusion of the contrary authority here would work a potential injustice and would engage in the very undue focus on labels against which the California courts have warned.

Moreover, a cause of action for unjust enrichment can properly be alleged even if a remedy at law exists.  Section 2224 of the California Civil Code provides that unjust enrichment creates a constructive trust for the benefit of the person who has been wronged.  Cal. Civ. Code § 2224.  Furthermore, "in California, as in most jurisdictions, an action in equity to establish a constructive trust does not depend on the absence of an adequate legal remedy….There is abundant historical precedent for the court's holding."  *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 134-35 (1985); *see also GHK Assoc. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 878 (1990).

In addition, contrary to Google's assertions, CYBERsitter's cause of action for unjust enrichment is properly alleged and satisfies the liberal notice pleading requirements for a "short and plain statement of the claim" sufficient to provide notice to the opposing party.  F.R.C.P. Rule 8; *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions…[and] was adopted to focus litigation on the merits of a claim").  "Given the Federal Rules simplified standard for

---

[4] Google's reference to "restitution damages and injunctive relief" appears to be a reference to remedies under Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); Motion, 15:24-25.  However, the restitution remedy provided pursuant to the UCL is notoriously limited, and by no means co-extensive with common law unjust enrichment.  *Id.* § 17203; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144-52 (2003) (detailed discussion of limited nature of UCL remedies, reversing court of appeal's award of "nonrestitutionary disgorgement" of profits).

PLAINTIFF'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

FAYER GIPSON LLP

1  pleading, a court may dismiss a complaint only if it is clear that no relief could be

2  granted under any set of facts that could be proved consistent with the allegations."

3  *Swierkiewicz*, 534 U.S. 506 at 514 (citing *Hishon v. King & Spalding*, 467 U.S. 69,

4  73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)).

5       As Google concedes, the elements of an unjust enrichment claim are: (1) receipt

6  of a benefit; and (2) unjust retention of the benefit at the expense of another.

7  *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000).   In

8  its Complaint, CYBERsitter alleges Google's (1) receipt of a benefit – revenues from

9  its CWI-sponsored advertisements – and (2) unjust retention of the revenues at

10  CYBERsitter's expense – through Google's unauthorized, confusing and misleading

11  use of CYBERsitter's marks.  Complaint, ¶¶ 12-32, 100-104.   This is all that the law

12  requires it to do.

13       CYBERsitter's cause of action for unjust enrichment is proper and should not

14  be dismissed.

15  **IV.   CONCLUSION**

16       For the reasons stated herein, CYBERsitter respectfully requests that the Court

17  deny Google's motion to transfer, as well as its alternative motion to dismiss

18  CYBERsitter's state law claims.

19

20  DATED:  October 2, 2012          FAYER GIPSON LLP
                                     GREGORY A. FAYER
21                                   ELLIOT B. GIPSON
                                     MINH Z. KUO
22

23                                   By_____/s/_____
                                            GREGORY A. FAYER
24                                   Attorneys for Plaintiff CYBERsitter, LLC

25

26

27

28