QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Margret M. Caruso (Bar No. 243473)
  margretcaruso@quinnemanuel.com
  Bridget A. Hauler (Bar No. 240592)
  bridgethauler@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Google Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Google Inc., a Delaware corporation; ContentWatch, Inc., a Utah corporation, d/b/a Net Nanny; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | CASE NO. CV12-5293-RSWL (AJWx)<br><br>**GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT TO RULE 12(B)(3), OR IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S STATE LAW CLAIMS AGAINST GOOGLE PURSUANT TO RULE 12(B)(6)**<br><br>**Supplemental Declaration of Sarah Buer filed concurrently herewith**<br><br>Date:　　Oct. 23, 2012<br>Time:　 10:00 a.m.<br>Crtrm.: 21 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................... 2

I.    THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES
      TRANSFER OF CYBERSITTER'S CLAIMS AGAINST GOOGLE. ........... 2

      A.   28 U.S.C. § 1406(a) Mandates Either Dismissal Or Transfer of
           CYBERsitter's Claims .................................................................. 2

      B.   CYBERsitter's Claims Are Subject To The Forum Selection
           Clause Under Ninth Circuit Law ................................................... 5

      C.   CYBERsitter Cannot Present Parol Evidence To Rebut The Plain
           Language Of The Forum Selection Clause ..................................... 9

II.   CYBERSITTER CANNOT SHOW THAT THE
      COMMUNICATIONS DECENCY ACT'S IMMUNITY DOES NOT
      APPLY TO ITS STATE LAW CLAIMS ............................................... 11

      A.   Google Is Not an Information Content Provider Within the
           Meaning of the CDA ................................................................... 11

      B.   CYBERsitter Has Not Alleged Independent Tortious Conduct by
           Google ........................................................................................ 16

III.  CYBERSITTER'S UNJUST ENRICHMENT CLAIM SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM ............................... 18

      A.   CYBERsitter Fails To State A Claim For Unjust Enrichment
           Under California Law ................................................................. 18

      B.   Denying Google's Request To Dismiss Plaintiff's Unjust
           Enrichment Claim For Failure To Meet and Confer Would
           Result In Inefficiency ................................................................. 20

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
437 F. Supp. 2d 273 (D.N.J. 2006) ............................................................... 15

*Altvater Gessler-J.A. Baczewski Int'l (USA), Inc. v. Sobieski Destylarnia, S.A.*,
572 F.3d 86 (2d Cir. 2009) ............................................................................. 10

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ...................................................................... 2, 3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 16

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) ........................................................... 14

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*,
2010 WL 5154136 (C.D. Cal. Aug. 12, 2010) ............................................ 5, 8

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ....................................................................... 12

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ........................................................... 11, 12, 13

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ........................................................................................ 10

*Cedars-Sinai Medical Center v. Global Excel Management, Inc.*,
2009 WL 7322253 (C.D. Cal. Dec. 30, 2009) ................................................. 7

*Clarendon Nat. Ins. Co. v. Ins. Co. of the West*,
442 F. Supp. 2d 914 (E.D. Cal. 2006) ............................................................. 6

*Doe 1, Doe 2 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) ..................................................................... 7, 9

*Doe v. MySpace, Inc.*,
629 F. Supp. 2d 663 (E.D. Tex. 2009) ........................................................... 14

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ....................................................................... 13

*Flake v. Medline Indus., Inc.*,
882 F. Supp. 947 (E.D. Cal. 1995) ......................................................... 2, 3, 8

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*,
2011 WL 2414567 (E.D. Cal. June 8, 2011) .................................................. 20

*Gambra v. Int'l Lease Fin. Corp.,*
   377 F. Supp. 2d 810 (C.D. Cal. 2005) ................................................................. 5

*Goddard v. Google, Inc.,*
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ....................... 11, 12, 13, 14, 15, 16

*Hart v. Gaione,*
   2006 WL 1431480 (C.D. Cal. May 18, 2006) ..................................... 21

*Hearns v. San Bernardino Police Department,*
   530 F.3d 1124 (9th Cir. 2008) ......................................................... 20

*Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean Garden Prods., Inc.,*
   2007 U.S. Dist. LEXIS 40015 (S.D. Cal. May 31, 2007) ....................... 5

*Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean Garden Prods., Inc.,*
   320 Fed.Appx. 548 (9th Cir. 2009) ................................................. 5

*Jurin v. Google Inc.,*
   695 F. Supp. 2d 1117 (E.D. Cal. 2010), *modified on other grounds by*
   768 F.Supp.2d 1064 (E.D. Cal. 2011) .............................. 11, 12, 15, 16

*Langdon v. Google Inc.,*
   474 F. Supp. 2d 622 (D. Del. 2007) .............................................. 16

*Lectrodryer v. SeoulBank,*
   77 Cal. App. 4th 723 (2000) ........................................................ 18

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
   858 F.2d 509 (9th Cir. 1988) ........................................ 4, 5, 6, 7, 8, 9

*Mattel, Inc. v. MGA Entertainment, Inc.,*
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................................... 20

*McBride v. Boughton,*
   123 Cal. App. 4th 379 (2004) ...................................................... 19

*Mosier v. HSBC Bank USA, N.A.,*
   2010 WL 5422550 (C.D. Cal. Dec. 28, 2010) ............................... 5, 7, 8

*Murphy v. Schneider Nat'l, Inc.,*
   362 F.3d 1133 ............................................................................ 10

*Nextrade, Inc. v. Hyosung (America), Inc.,*
   122 Fed.Appx. 892, 893 (9th Cir. 2005) ........................................ 5, 8

*Oracle Corp. v. SAP AG,*
   2008 WL 5234260 (N.D. Cal. Dec.15, 2008) ................................... 19

*Parker v. Google Inc.,*
   422 F. Supp. 2d 492 (E.D. Pa. 2006) *aff'd*, 242 Fed.Appx. 833 (3d Cir. 2007) .. 16

*Polar Bear Productions, Inc. v. Timex Corp.,*
   384 F.3d 700 (9th Cir. 2004) ...................................................... 19

-iii-

*Rosetta Stone Ltd. v. Google Inc.*,
  732 F. Supp. 2d 628 (E.D. Va. 2010), *rev'd on other grounds*,
  676 F.3d 144 (4th Cir. 2012) ........................................................ 11, 15, 16

*U.S. v. Hathaway*,
  242 F.2d 897 (9th Cir. 1957) ........................................................................ 6

*Vicuna v. Alexia Foods Inc.*,
  2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ........................................... 18

*Wilkerson v. Butler*,
  229 F.R.D. 166 (E.D. Cal. 2005) ............................................................... 20

*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................................... 3

## **Statutes**

15 U.S.C. § 1116(a) ...................................................................................... 19

15 U.S.C. § 1117(a) ...................................................................................... 19

28 U.S.C. § 1404(a) ........................................................................................ 3

28 U.S.C. § 1406(a) ......................................................................... 1, 2, 3, 22

47 U.S.C. § 230(b) ....................................................................................... 11

Fed. R. Civ. P. 1 ........................................................................................... 21

Fed. R. Civ. P. 12(b)(3) ................................................................. 1, 2, 4, 22

Fed. R. Civ. P. 12(b)(6) .......................................................................... 2, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), this case is before the wrong court.  Accordingly, the Court must either dismiss or transfer this action to the appropriate venue.

Plaintiff CYBERsitter does not contest that it is a signatory to Google's AdWords contract, which contains a mandatory forum selection clause designating the state and federal courts of Santa Clara County, California as the exclusive venue for "ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S)."   (Buer Decl., Exh. 1, ¶ 9).[1]   Nor does CYBERsitter dispute that its claims relate to the Google Programs.   Instead, CYBERsitter advocates a meaning of that clause that would render the language "RELATING TO … THE GOOGLE PROGRAM(S)" superfluous.   Such an interpretation is contrary to Ninth Circuit law, which liberally applies forum selection clauses to tort claims.   CYBERsitter offers no legitimate reason to disregard Ninth Circuit precedent and ignore the parties' agreement to litigate in Santa Clara County.

Even if this action were before the appropriate court, plaintiff's state law claims fail because Google is entitled to immunity under the Communications Decency Act ("CDA") as a provider of an interactive computer service.  Plaintiff argues that Google is not entitled to CDA immunity because Google is *also* a content provider.  However, plaintiff has not pled any facts to support this assertion.  In addition, plaintiff ignores relevant authority—including every decision that has

---

[1]   While Google disagrees with the challenges to Ms. Buer's declaration, we will not burden the Court with further briefing/submissions concerning it given that CYBERsitter concedes the most significant point: that it did in fact agree to the contract.  Opp., 5:1-5; *see also* Declaration of Brian Milburn ("Milburn Decl.") at ¶ 6.

addressed this issue for Google, which have *uniformly* concluded that Google is eligible for CDA immunity—and relies upon inapposite cases.  Plaintiff's state law claims are plainly barred by the CDA.

Finally, plaintiff's unjust enrichment claim fails for the additional reason that the majority of California federal courts do not recognize unjust enrichment as a valid cause of action.  Plaintiff's unjust enrichment claim cannot survive where the relief sought via its unjust enrichment claim is merely duplicative of relief already available to CYBERsitter under its other claims.

Google respectfully requests that the Court grant its motion to transfer this action pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, dismiss plaintiff's state law claims pursuant to Rule 12(b)(6) for failure to state a claim.

## Argument

## I. THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES TRANSFER OF CYBERSITTER'S CLAIMS AGAINST GOOGLE.

### A. 28 U.S.C. § 1406(a) Mandates Either Dismissal Or Transfer of CYBERsitter's Claims

Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) apply when a forum selection clause dictates that suit should have been brought elsewhere.  *See Flake v. Medline Indus., Inc.*, 882 F.Supp. 947, 951 (E.D. Cal. 1995) (transferring action subject to enforceable forum selection clause where plaintiff indicated that if the case could not be heard in California, plaintiff would seek transfer rather than dismissal).  Where a valid forum selection clause designates another court as the exclusive venue for litigation, dismissal of the action under Federal Rule of Civil Procedure 12(b)(3) is proper.  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324-325, 327 (9th Cir. 1996) (affirming trial court's dismissal of plaintiff's complaint where an enforceable forum selection clause in the parties' loan agreement required actions arising from the agreement to be brought in Mexico).  If

1   a court finds that it is in the interests of justice, the court may in the alternative
2   transfer the case to a district or division in which it could have been brought.  28
3   U.S.C. § 1406(a); *see also Flake*, 882 F.Supp. at 952.

4        Plaintiff cites *Williams v. Bowman*, 157 F.Supp.2d 1103 (N.D. Cal. 2001), to
5   argue that "plaintiff's choice of forum is afforded substantial weight."  Opp., 6:15-
6   16.   However, the *Williams* court was considering whether to transfer a case
7   pursuant to the permissive standard of 28 U.S.C. § 1404(a), whereas here § 1406(a)
8   *mandates* either dismissal, "or if it be in the interest of justice," transfer because the
9   parties agreed to litigate their claims exclusively in another forum.  *Compare* 28
10  U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in the interest
11  of justice, a district court *may* transfer any civil action to any other district or
12  division where it might have been brought.") (emphasis added) *with* 28 U.S.C. §
13  1406(a) ("The district court of a district in which is filed a case laying venue in the
14  wrong division or district *shall* dismiss, or if it be in the interest of justice, transfer
15  such case to any district or division in which it could have been brought.")
16  (emphasis added).   Nevertheless, even under the more permissive standard of §
17  1404(a), the *Williams* court granted defendants' motion to transfer.  *Williams*, 157
18  F.Supp.2d at 1110.

19       Plaintiff also argues that the Court should adopt the Second Circuit standard
20  regarding the burden of proof and test for application and enforcement of a forum
21  selection clause.   Opp., 6:22-7:1.   However, CYBERsitter's reliance on Second
22  Circuit law is misplaced and invites legal error.  In this Circuit, a forum selection
23  clause is "prima facie valid and should not be set aside unless the party challenging
24  enforcement of such a provision can show it is unreasonable under the
25  circumstances."   *Argueta*, 87 F.3d at 325 (internal quotation marks omitted); *see
26  also Flake*, 882 F.Supp. at 949 ("a forum selection clause should control absent
27  strong countervailing factors") (internal cite omitted).  The party seeking to establish
28  the unreasonableness of a forum selection clause bears the "heavy burden of

1   showing that trial in the chosen forum would be so difficult and inconvenient that
2   the party would effectively be denied a meaningful day in court." *Argueta*, 87 F.3d
3   at 325 (internal quotation marks omitted).  As detailed in Google's opening brief,
4   CYBERsitter cannot meet this heavy burden.  Mot., 8:1-10:7.

5         Plaintiff also contends that in the context of a Rule 12(b)(3) motion based
6   upon a forum selection clause, the court must view all facts "in a light most
7   favorable to CYBERsitter."  Opp., 7:6-12.  However, this is a non-issue as there are
8   no contested facts in the instant case.  Plaintiff does not contest that the AdWords
9   contract identifies Santa Clara County, California as the exclusive forum for
10  qualifying litigation.  Furthermore, plaintiff admits that it agreed to the terms of
11  Google's AdWords contract, including the mandatory forum selection clause.  Opp.,
12  5:1-5; *see also* Milburn Decl. at ¶ 6.  The only issue in the instant case is a legal
13  issue: whether the forum selection clause stating that it applies to "ALL CLAIMS
14  ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE
15  PROGRAM(S)" does, in fact, have its plain meaning and apply to all claims relating
16  to the Google AdWords program.  (Buer Decl., Exh. 1, ¶ 9 (all caps in original)).
17  Plaintiff cannot invent a factual dispute by essentially striking the relevant language
18  of the forum selection clause.  Plaintiff suggests that the Court should limit the
19  agreement to claims arising out of or relating to the agreement, but that reads right
20  out of the agreement the words "OR THE GOOGLE PROGRAM(S)."  No rule of
21  contract interpretation permits a party to ignore the plain language of the contract at
22  issue.  *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.
23  1988) (holding that plaintiff could not submit parol evidence to show that it did not
24  intend the forum selection clause to apply to tort claims because "[t]raditional
25  contract law provides that extrinsic evidence is inadmissible to interpret an
26  unambiguous contract") (internal cites omitted).

27
28

## B.     CYBERsitter's Claims Are Subject To The Forum Selection Clause Under Ninth Circuit Law

CYBERsitter contends that Ninth Circuit precedent dictates that the Court not enforce the forum selection clause against CYBERsitter's claims because resolution of CYBERsitter's claims does not relate to interpretation of the contract.   Opp., 7:21-8:15.   First, the cases cited by plaintiff concerned forum selection clauses that on their face applied only to claims arising from or related to the contract.   *See, e.g., Manetti-Farrow*, 858 F.2d at 513-514 (forum selection clause mandating Florence, Italy as the forum for resolving disputes regarding "interpretation" or "fulfillment" of the contract); *see also Nextrade, Inc. v. Hyosung (America), Inc.*, 122 Fed.Appx. 892, 893 (9th Cir. 2005) (the forum selection clause applied to "any disputes regarding the agreement"); *Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean Garden Prods., Inc.,* 2007 U.S. Dist. LEXIS 40015 at *3-4 (S.D. Cal. May 31, 2007), *aff'd in part and reversed in part by*, *remanded by Ingenieria Alimentaria Del Matatipac, S.A. de C.V. v. Ocean Garden Prods., Inc.*, 320 Fed.Appx. 548 (9th Cir. 2009) (the first forum selection clause applied to "all matters concerning the construction and performance of this agreement" and the second to "all the effects and purposes of interpreting and complying with this contract"); *Mosier v. HSBC Bank USA, N.A.*, 2010 WL 5422550 at *2 (C.D. Cal. Dec. 28, 2010) (the forum selection clause applied to "any action, suit or proceedings" brought "with respect to this Agreement"); *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, 2010 WL 5154136 at *1 (C.D. Cal. Aug. 12, 2010) (the forum selection clause applied to "any claim or dispute arising out of" the agreement); *Gambra v. Int'l Lease Fin. Corp.*, 377 F.Supp.2d 810, 821 (C.D. Cal. 2005) (the forum selection clause applied to "any suit, action or proceeding arising out or related to the lease"). Therefore, in those cases, covering tort claims only if they somehow also depended on interpretation of the agreement was a simple matter of interpreting the plain language of those specific venue selection clauses.   They do not mandate ignoring

the plain language of the broader venue selection provision here, which states explicitly that it applies to "ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT **OR THE GOOGLE PROGRAM(S)**."  (Buer Decl., Exh. 1, ¶ 9).

CYBERsitter cites not a single case that applied *Manetti* to narrow the plain language of a forum selection clause like the one here that expressly covers all claims relating to a specific subject matter area.  Nor does CYBERsitter cite a single case that held that an exclusive forum selection clause should be read in a way that would render an entire clause superfluous.  It could not.  A "fundamental rule" of contract interpretation is that "a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties."  *U.S. v. Hathaway*, 242 F.2d 897, 900 (9th Cir. 1957) (internal cite omitted); *see also  Clarendon Nat. Ins. Co. v. Ins. Co. of the West*, 442 F.Supp.2d 914, 926 (E.D. Cal. 2006) (a contract should be construed "so as to give effect to all terms and not render them surplussage") (internal cites omitted).   CYBERsitter fails to offer any interpretation of "**ALL** CLAIMS ARISING OUT OF OR RELATING TO … **THE GOOGLE PROGRAM(S)**" that is not identical to its interpretation of "**ALL** CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT."  *See* Opp., 11:27-12:7.  To avoid rendering the operative clause superlative, it must be given its plain meaning—i.e., all claims that have anything to do with Google's programs, including AdWords.

In the alternative, CYBERsitter argues that the AdWords forum selection clause should be interpreted to *add* restrictive language that does not appear in the clause—namely qualifying "THE GOOGLE PROGRAM(S)" by inserting "CYBERsitter's participation in" before that general subject matter.  Opp., 11:27-12:7.  However, like its attempt to *delete* language from the forum selection clause, its attempt to *add* language is equally improper.  Both efforts ignore the plain language of the clause and are contrary to the very Ninth Circuit precedent

CYBERsitter cites.  "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."  *Doe 1, Doe 2 v. AOL LLC*, 552 F.3d 1077, 1079, 1081 (9th Cir. 2009) (rejecting defendant's attempt to interpret the "courts of Virginia" to include federal courts located in Virginia where the plain language of the clause—courts "of" Virginia—demonstrates the parties chose Virginia state courts as the only fora for any disputes) (internal cite omitted).  "Whenever possible, the plain language of the contract should be considered first."  *Id.* at 1081 (internal cite omitted).   Nevertheless, CYBERsitter advocates an interpretation of the plain language of the forum selection clause that requires either rendering terms superfluous or adding language that is simply not there.

In addition, courts determining "whether resolution of the claims relate to interpretation of the contract" have liberally found tort claims to be covered. *Cedars-Sinai Medical Center v. Global Excel Management, Inc.*, 2009 WL 7322253 (C.D. Cal. Dec. 30, 2009) is instructive.  "Forum selection clauses can be seen as occupying a spectrum of varying degrees of coverage."  *Cedars-Sinai*, 2009 WL 7322253 at *5.  Whereas the forum selection clause in *Manetti* was a relatively narrow clause, written only to apply to claims "arising under" the contract, the forum selection clause at issue in *Cedars-Sinai* had "significantly broad scope" applying to "'all disputes' without any prepositional qualification." *Id.* at *5-6. The *Cedars-Sinai* court held that language easily covered the various contract and tort claims at issue.  *Cedars-Sinai*, 2009 WL 7322253 at *1, 4.

The very Ninth Circuit and Central District cases CYBERsitter cites take a similarly liberal approach to applying forum selection clauses to tort claims.  The *Mosier* court found that plaintiff's tort claims were subject to the forum selection clause even though the resolution of the action did "not hinge upon competing interpretations of the [agreements at issue]" where the plaintiff's tort claims were "closely related" to the defendant's "rights and duties" under the agreements.

1    *Mosier*, 2010 WL 542250 at *3; *see also Manetti*, 858 F.2d at 514 (forum selection

2 clause governing disputes regarding "interpretation" or "fulfillment" of the contract

3 applied to plaintiff's tort claims because the tort claims each "relate[d] in some way

4 to rights and duties enumerated in the exclusive dealership contract"); *Nextrade*, 122

5 Fed.Appx. at 894 (forum selection clause governing "any disputes regarding the

6 agreement" applied to plaintiff's wrongful termination claim because the

7 employment agreement at issue in the claim was "directly related to interpretation of

8 the exclusive distributorship agreement" containing the forum selection clause);

9 *Bagdasarian*, 2010 WL 5154136 at *3 (plaintiff's tort claims required interpretation

10 of the agreement to determine if they each fell outside of it so the forum selection

11 clause applied).  This liberal application is consistent with the "federal standards

12 indicat[ing] that a forum selection clause should control absent strong countervailing

13 factors."  *Flake*, 882 F.Supp. at 949 (citing *M/S Bremen v. Zapata Off-Shore Co.*,

14 407 U.S. 1 (1971).

15       Finally, contrary to CYBERsitter's assertion that none of its claims "even

16 remotely relate to [] any terms in the Agreement" (Opp., 8:22-23 (italics and bolding

17 omitted)), issues in this case do relate directly to the Terms of Use Agreement.

18 CYBERsitter agreed to be subject to Google's Editorial Guidelines, which include

19 Google's trademark policies.  Those policies provide, among other things, that

20 advertisers are responsible for the keywords they select, and that, as a result, Google

21 can only take action in a case of an advertiser's use of a third party trademark where

22 the trademark owner has filed a complaint with Google.  (Buer Decl., Exh. 1, ¶ 1;

23 *see also* Exhibits A and B to the Supplemental Declaration of Sarah Buer ("Supp.

24 Buer Decl."), dated October 8, 2012 and filed concurrently herewith).

25 CYBERsitter's Complaint against Google thus seeks to impose liability on Google

26 for Google abiding by the very policies that CYBERsitter agreed to be bound by.

27 For example, although the Editorial Guidelines make clear that Google can only be

28 aware of and investigate an advertiser's use of a third party's trademark upon the

1   lodging of a complaint form with Google by the trademark owner, CYBERsitter

2   now contends that Google had notice sufficient for secondary liability to attach even

3   though CYBERsitter never lodged any such complaint with Google.  Simply put, the

4   Terms of Use Agreement established the "rules of the sandbox," and provided that if

5   there was a dispute about what happened "in the sandbox," it specified where that

6   dispute would be heard.  CYBERsitter agreed to those rules, and is now disputing

7   whether those rules are correct under the law.  Thus, even if the forum selection

8   clause were as narrow as CYBERsitter claims, CYBERsitter's allegations do, in

9   fact, relate to its agreement with Google because they relate to the "rules of the

10  sandbox."

11      **C.**      **CYBERsitter Cannot Present Parol Evidence To Rebut The Plain**

12              **Language Of The Forum Selection Clause**

13          CYBERsitter seeks to introduce parol evidence to show that it did not intend

14  the forum selection clause to apply to claims arising from or related to Google's

15  AdWords Program.  However, "[t]raditional contract law provides that extrinsic

16  evidence is inadmissible to interpret an unambiguous contract."  *Manetti*, 858 F.2d

17  at 514 (internal cites omitted).  The AdWords contract forum selection clause is

18  unambiguous on its face: "ALL CLAIMS ARISING OUT OF OR RELATING TO

19  THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED

20  EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA

21  COUNTY, CALIFORNIA."  (Buer Decl., Exh. 1, ¶ 9.).  To interpret this phrase to

22  apply only to claims arising out of or relating to the Google AdWords contract

23  renders the "OR THE GOOGLE PROGRAM(S)" part of the disjunctive

24  superfluous.  Where the plain meaning of the clause is that CYBERsitter's claims

25  fall within the scope of the forum selection clause, CYBERsitter's proffered

26  extrinsic evidence should be excluded.  *Manetti*, 858 F.2d at 514; *see also Doe 1,*

27  *Doe 2*, 552 F.3d at 1081 ("That the parties dispute a contract's meaning does not

28

1   render the contract ambiguous; a contract is ambiguous if reasonable people could

2   find its terms susceptible to more than one interpretation.") (internal cite omitted).

3       CYBERsitter's own authority states that courts "must examine the substance

4   of a plaintiff's claims as they relate to **the precise language of the specific clause**

5   **at issue**." *Altvater Gessler-J.A. Baczewski Int'l (USA), Inc. v. Sobieski Destylarnia,*

6   *S.A.*, 572 F.3d 86, 90 (2d Cir. 2009) (citations omitted, emphasis added).   Yet

7   CYBERsitter devotes more than four pages of argument and an entire declaration to

8   trying to avoid the plain language of the forum selection clause at issue.  Opp., 11:1-

9   15:6; *see also* Milburn Decl.  CYBERsitter even goes so far as to say that a plainly

10  written clause in all capital letters was not clearly communicated to it, a

11  sophisticated business.   Opp. 13:2-15:6.   Courts routinely reject such arguments

12  when made by far less sophisticated plaintiffs, such as an elderly Washington state

13  woman who purchased a cruise ticket containing a non-negotiable clause specifying

14  Florida as the exclusive forum, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585,

15  587, 595 (1991), and a truck driver who had not completed schooling beyond tenth

16  grade, who was told that the terms of the contract were non-negotiable and that he

17  could not continue working for defendant unless he signed the contract, *Murphy v.*

18  *Schneider Nat'l, Inc.* 362 F.3d 1133, 1136, 1141.   CYBERsitter is far more

19  sophisticated than the plaintiffs in these cases.   According to CYBERsitter's own

20  allegations, it is "one of the most recognizable names in Internet content filtering,

21  perhaps the most recognizable."   Complaint, ¶ 15.  "To decline enforcement of a

22  forum selection merely on the showing of non-negotiability and power difference"

23  would "disrupt the settled expectations of the parties." *Murphy*, 362 F.3d at 1141.

24

25

26

27

28

II.   **CYBERSITTER CANNOT SHOW THAT THE COMMUNICATIONS DECENCY ACT'S IMMUNITY DOES NOT APPLY TO ITS STATE LAW CLAIMS**

A.   **Google Is Not an Information Content Provider Within the Meaning of the CDA**

The Ninth Circuit recognizes "§ 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service.' and a relatively restrictive definition of "information content provider'" *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). CYBERsitter does not dispute that Google is a provider of an interactive computer service under the CDA. *See* 47 U.S.C § 230(b). Instead, CYBERsitter argues that the CDA's immunity does not apply because Google is *also* a content provider. CYBERsitter has not pled any facts supporting this assertion; its allegations are to the contrary.

The Court need not look beyond the face of CYBERsitter's own allegations to hold that Google cannot be shoehorned into the "content provider" exception. CYBERsitter does not cite any allegation that Google created an infringing advertisement. Indeed, CYBERsitter alleged that defendant ContentWatch, Inc. ("CWI") created the advertisements at issue. *See*, *e.g.*, Complaint, ¶ 20 (alleging that Google's "AdWords program allows *sponsors* to purchase certain keywords that will trigger *the sponsor's* advertisement whenever a user conducts searches using the keywords") (emphasis added). Unable to identify *any* content, let alone infringing content, that Google created, CYBERsitter fails in its attempt to place Google as a "content provider" within the meaning of the CDA—an attempt uniformly rejected by every court to consider such an argument. *See*, *e.g.*, *Rosetta Stone Ltd. v. Google Inc.*, 732 F.Supp.2d 628, 633 (E.D. Va. 2010), *rev'd on other grounds,* 676 F.3d 144 (4th Cir. 2012); *Jurin v. Google Inc.*, 695 F.Supp.2d 1117, 1123 (E.D. Cal. 2010), *modified on other grounds by* 768 F.Supp.2d 1064 (E.D. Cal. 2011); *Goddard v. Google, Inc.*, 640 F Supp. 2d 1193, 1198-99 (N.D. Cal. 2009).

CYBERsitter argues that "the Complaint clearly avers that Google co-authored the false and misleading advertisements with CWI by 'suggest[ing]' and 'offer[ing] for purchase' CYBERsitter's marks."  Opp., 17:11-13 (emphasis omitted).  *Goddard* addressed this precise issue, holding that "[l]ike the menus in *Carafano*, Google's Keyword Tool is a neutral tool.  It does nothing more than provide options that advertisers may adopt or reject at their discretion."  640 F.Supp.2d at 1198; *accord Jurin*, 695 F.Supp.2d at 1123 (E.D. Cal. 2010), ("Defendant's keyword suggestion tool hardly amounts to the participation necessary to disqualify it of CDA immunity.  Rather it is a 'neutral tool,' that does nothing more than provide options that advertisers could adopt or reject at their discretion, thus entitling the operator to [CDA] immunity.") (citing *Goddard*, 640 F.Supp.2d at 1197-1198).

CYBERsitter also claims that its allegation that "Google has 'willfully participated in, facilitated and encouraged' the unlawful use of CYBERsitter's marks in the false, infringing advertisements" bars dismissal. Opp., 17:15-17.  Once again, *Goddard* rejected an analogous argument, holding that the plaintiff's allegations that Google "not only encourages illegal conduct, [but] collaborates in the development of the illegal content and, effectively, requires its advertiser customers to engage in it" were "mere 'labels and conclusions' amounting to a 'formulaic recitation of the elements' of CDA developer liability, and as such, they 'will not do'."  *Id.* at 1196 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Goddard* and *Jurin* illustrate the settled principle that providing neutral tools to a third-party, even "to carry out what may be unlawful or illicit," does not make Google an "information content provider" under the CDA.  *See also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 n.6 (9th Cir. 2009) (citing *Roommates*, 521 F.3d at 1169).  Thus, even if a particular tool "'facilitates the expression of information,' it generally will be considered 'neutral' so long as users ultimately determine what

content to post." *Goddard*, 640 F.Supp.2d at 1197-98 (citing *Roommates.com LLC*, 521 F.3d at 1172); *Carafano*, 339 F.3d at 1124).  Accordingly, it does not matter whether Google provides the *option* of using CYBERsitter's trademark in third party advertisements, as long as it is the third-party advertisers, *not Google*, that ultimately decide which keyword to use.  *Goddard*, 640 F.Supp.2d at 1198-99; *Carafano*, 339 F.3d at 1124-25.  CYBERsitter simply ignores this authority.

CYBERsitter's argument hinges primarily on *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008), which it describes as "controlling."  Although it is binding precedent, *Roommates.com* is inapposite.  Roommates.com was held to be a co-creator of the accused content because it had *designed* a questionnaire that *required* users to answer potentially discriminatory questions with *prescribed* choices *as a condition* for accessing its service, such as the user's and his or her prospective roommate's sex, sexual orientation and whether they would bring children to a household.  521 F.3d at 1161.  Courts have consistently rejected plaintiffs' reliance on *Roommates.com* to rebut arguments that Google is a content provider and thus not entitled to immunity under the CDA.  For example, the *Goddard* court explained:

> The insufficiency of Plaintiff's theory becomes even more apparent in the context of her attempted analogy to the facts of *Roommates* . . . Recognizing the narrowness of the *Roommates* holding, Plaintiff alleges that Google effectively "requires" advertisers to engage in illegal conduct.  Yet Plaintiff's use of the word "requires" is inconsistent with the facts that Plaintiff herself alleges. . . . "that Google's mathematical algorithm 'suggests'' the use of the word 'free' in relation to 'ringtone' as a means of attracting more visitors to [the MSSPs'] sites, and that MSSPs whose offerings are not actually free are literally powerless to resist."  This reasoning fails to disclose a "requirement" of any kind, nor does it suggest the type of "direct and palpable" involvement that otherwise is required to avoid CDA immunity. . . . Even accepting Plaintiff's factual allegations as true, the allegations do not come close to suggesting involvement at such a level, or, indeed, that Google's AdWords program was anything other than "a framework that could be utilized for proper or improper purposes."

1  640 F. Supp. 2d at 1199 (citations omitted); *see also Doe v. MySpace, Inc.*, 629 F.

2  Supp. 2d 663, 665 (E.D. Tex. 2009) (finding *Roommates.com* inapposite because,

3  whereas "[t]he Ninth Circuit repeatedly stated throughout its en banc opinion that

4  the Roommates.com website *required* its users to provide certain information as a

5  condition of its use . . ., users of MySpace.com are not required to provide any

6  additional information to their profiles") (emphasis in original); *Atlantic Recording*

7  *Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009)

8  (explaining that *Roommates.com* "was based solely on the fact that . . .

9  Roommates.com . . ., in violation of federal and California state housing law,

10 *required* potential subscribers" to engage in discriminatory conduct; "[K]ey to the

11 Ninth Circuit's decision was the fact that Roommates.com was actively participating

12 in creating the objectionable content, by providing the questions and by requiring

13 users to answer them.") (emphasis in original).

14      As *Goddard* held, unlike the plaintiff in *Roommates.com*, Google does not

15 provide predetermined *content* choices from which advertisers are required to

16 choose potentially unlawful options.  CYBERsitter does not–and cannot–allege to

17 the contrary.   Rather, it alleges that advertisers *may* choose a third party trademark

18 from Google's list of *potential* keywords to purchase.  *See*, *e.g.*, Complaint, ¶ 24

19 ("Google's AdWords program *permits* third-party trademarks to be 'auctioned off'

20 to the highest bidder for use in Google's paid advertising program. . . .") (emphasis

21 added).  In other words, in stark contrast to *Roommates.com*, advertisers' use of

22 trademarks as keywords is purely optional.  Accordingly, *Roommates.com* does not

23 diminish Google's entitlement to immunity under the CDA.

24      Not only does CYBERsitter fail to cite any relevant authority, it cannot

25 meaningfully distinguish the precedent Google cited in its moving papers.

26 CYBERsitter's assertion that *Goddard* is inapposite because it did not involve use of

27 trademarks as keywords, Opp., 19:20-25, identifies a distinction without a

28 difference.  Both here and in *Goddard,* the plaintiff challenged Google's practice of

"suggesting" particular keywords for advertisers to purchase that the plaintiff alleged resulted in unlawful advertisements.  Because the challenged practice is the same, the outcome here should be the same as in *Goddard—i.e.,* dismissal on the grounds of CDA immunity without leave to amend.  640 F.Supp.2d at 1202.

CYBERsitter's attempt to distinguish *Jurin v. Google Inc.* on the grounds that the plaintiff in that case "did not challenge Google's practice of auctioning off third party trademarks for use in advertisements," Opp., 20:5-6, likewise fails.  First, the *Jurin* plaintiff *did* challenge the bidding process used in Google's AdWords program.  *See* 695 F. Supp. at 1119-20 (summarizing plaintiff's allegations regarding the bidding aspect, including that "The higher a web designer bids, the higher the 'Sponsored Link' placement when those bid upon keywords are searched for.").  Second, CYBERsitter's Complaint does not challenge the *means* by which Google provides advertisers the opportunity to purchase advertising space.  Instead, it takes issue with the fact that third parties, such as defendant CWI, may "purchase" the right to use the plaintiff's trademark as a keyword.  But *how* an advertiser obtains advertising space from Google—*i.e.*, via an auction, a "suggestion" tool or otherwise—is irrelevant to CYBERsitter's claims.[2]

Like its flawed reliance on *Roomates.com*, CYBERsitter's reliance on *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 295 (D.N.J. 2006), is misplaced.  As the court in *Rosetta Stone, Ltd. v. Google Inc.* explained, that decision is distinguishable for at least two reasons:  "First, the [*800-JR Cigar*] court denied CDA immunity because the defendant, unlike Google, did not qualify as an interactive computer service provider.  Second, the court did not deal with a

---

[2]  CYBERsitter's description of the change in Google's policies regarding the use of third party trademarks as "egregious" misconduct is a red herring.  The current practices are either legal or they are not.  Whether Google utilized other practices earlier is irrelevant to the question of liability.

situation, like here, where third party advertisers are responsible for selecting the keyword triggers." 732 F.Supp.2d at 633 (citations omitted).

Finally, CYBERsitter's attempt to characterize the CDA immunity question as one better delayed until after discovery (Opp., 20:11-20) disregards the policy behind "the CDA's 'robust' protections, which would 'be eroded by further litigation.'" *Goddard*, 640 F. Supp. 2d at 1202. Appropriately, courts routinely dismiss claims barred by the CDA at the pleading stage. *See*, *e.g.*, *id.*; *Parker v. Google Inc.*, 422 F.Supp.2d 492 (E.D. Pa. 2006) *aff'd*, 242 Fed.Appx. 833 (3d Cir. 2007); *Langdon v. Google Inc.*, 474 F.Supp.2d 622 (D. Del. 2007); *Jurin*, 695 F. Supp. at 1123; *Rosetta Stone*, 732 F. Supp. 2d at 633. In all events, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009). Here, the application of CDA immunity is a purely legal question that can be decided on the pleadings. Accordingly, CYBERsitter's demand that Google suffer the substantial expense of discovery is without merit.

## B.   CYBERsitter Has Not Alleged Independent Tortious Conduct by Google

CYBERsitter's back-up argument that even if CDA immunity applies, Google may still be held liable for "its own independent tortious acts" (Opp., 20:23-28) also fails. CYBERsitter cannot point to any viable allegations of tortious conduct actionable under state law that would otherwise be barred by Google's CDA immunity—as opposed to CYBERsitter's Lanham Act claims, which Google does not attempt to dismiss on CDA grounds.

CYBERsitter claims that "each cause of action can stand alone based on Google's ***unauthorized sale*** of CYBERsitter's marks for improper use, which is Google's own act . . . ." Opp., 21:22-25 (emphasis in the original). But this assertion is contrary to the actual allegations of the Complaint. CYBERsitter does

not—and cannot—allege that Google "sold" its trademarks, *i.e.*, wrongfully deprived CYBERsitter of the right to market goods under its mark.  Instead, the Complaint alleges that Google "used the CYBERSITTER mark… in commerce…by *selling the right to use* the CYBERSITTER marks to third parties as part of Google's paid advertising programs."  Complaint ¶ 57 (emphasis added).  In other words, CYBERsitter alleges that Google enables CWI's infringement of its marks by making them available as potential search terms.  This is simply another way of alleging that Google has violated state laws concerning trademark infringement and unfair competition.  As explained above in Section II.A, the CDA absolutely bars such claims against Google.

CYBERsitter also argues that providing potential advertisers with the option to utilize third party trademarks as potential search terms is "the wrongful act [that] is Google's act alone, and it does not involve Google acting as a 'speaker or publisher' of a third-party user's content."  Opp., 22:2-4.  Once again, CYBERsitter ignores its own allegations.  The harm alleged in the Complaint is that defendant CWI is using the plaintiff's trademarks as search terms through Google's AdWords program, which leads consumers to purchase CWI's competing product.  *See*, *e.g.*, Complaint, ¶ 2.  Thus, according to its own Complaint, CYBERsitter is harmed only when CWI purchases and uses the plaintiff's marks.  Google's alleged offering of the *option* of purchasing CYBERsitter's marks as search terms causes no harm.  In fact, this practice does not affect CYBERsitter at all.  Accordingly, it is not independently actionable.  Indeed, if CYBERsitter's theory of independent tortious conduct in these circumstances had any merit, it would swallow CDA immunity because *all* interactive computer service providers offer third parties the opportunity to engage in the conduct that is the subject of a plaintiff's complaint.

## III.   CYBERSITTER'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.   CYBERsitter Fails To State A Claim For Unjust Enrichment Under California Law

The majority view is that unjust enrichment is not a valid cause of action under California law.  *See, e.g., Vicuna v. Alexia Foods Inc.*, 2012 WL 1497507, *3 (N.D. Cal. Apr. 27, 2012) ("*Generally*, federal courts in California have ruled that unjust enrichment is not an independent cause of action because it is duplicative of relief already available under various legal doctrines.") (emphasis added; citations omitted).  The Opposition does not provide the Court with a valid reason to side with the minority of decisions that permitted such a "claim" to proceed.  On this ground alone, the unjust enrichment claim should be dismissed.

Even if an unjust enrichment claim were theoretically viable, CYBERsitter failed to allege factual elements sufficient to state such a claim—*i.e.,* receipt of a benefit and its unjust retention at the expense of another.  *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).  CYBERsitter asserts that it satisfied this pleading requirement by conclusorily alleging "Google's (1) receipt of a benefit—revenues from its CWI-sponsored advertisements—and (2) unjust retention of the revenues at CYBERsitter's expense—through Google's [alleged] unauthorized, confusing and misleading use of CYBERsitter's marks." Opp. 25:8-11.  But as a matter of law, the facts of these allegations, if proven, would not support a finding of unjust enrichment.  Google's revenues from its AdWords programs could not have been at the plaintiff's expense because any financial benefit Google received was payment for advertising space.  CYBERsitter does not offer advertising space; it makes software, and it does not allege otherwise.  As such, there is no basis for CYBERsitter to be entitled to payments Google received for advertising.

The facts alleged by CYBERsitter are simply not analogous to those in which a claim of unjust enrichment was upheld.  To the extent that California law permits

1   unjust enrichment claims, "restitution may be awarded either (1) in lieu of breach of

2   contract damages, where an asserted contract is found to be unenforceable or

3   ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud,

4   duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in

5   tort." *Oracle Corp. v. SAP AG*, 2008 WL 5234260, *8 (N.D. Cal. Dec.15, 2008)

6   (citing *McBride v. Boughton*, 123 Cal.App.4th 379, 388 (2004)).    Here,

7   CYBERsitter does not allege that it should recover funds from Google on the

8   grounds that its contract with Google (*i.e.*, the "Google Inc. Advertising Program

9   Terms") is unenforceable or ineffective.   Nor does it allege that Google "obtained a

10  benefit from the plaintiff by fraud, duress, conversion, or similar conduct."   Indeed,

11  CYBERsitter contends its claims have nothing at all to do with this contract.   Opp,

12  11:1-15:6.   Instead, CYBERsitter chose to assert tort claims against Google.   *See*,

13  *e.g.*, *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 720 (9th Cir. 2004)

14  ("[T]rademark infringement generally sounds in tort.") (citations omitted).

15  Accordingly, CYBERsitter does not allege facts allowing it to take advantage of the

16  rare category of cases permitting an independent claim for unjust enrichment.

17      CYBERsitter also claims that the remedies that it seeks under the unjust

18  enrichment claim are not surplusage because "it is unclear whether there is another

19  cause of action that would provide precisely the same relief as Plaintiff requests in

20  its unjust enrichment claim."   Opp., 24:1-3.   CYBERsitter's argument is again

21  inconsistent with its own Complaint.   CYBERsitter does not contest that injunctive

22  relief is available under its Lanham Act claim.   15 USC § 1116(a).   Nor does it

23  contest that the accounting it seeks would encompass any relief provided by

24  restitution.   *See* Complaint, 25:16-18 (seeking an accounting of "Defendants' profits

25  derived by Defendants from the sale of goods or services associated with the acts of

26  infringement and false advertising complained of herein.").   An accounting is also a

27  remedy provided for by the Lanham Act.   15 U.S.C. § 1117(a).   Therefore, the

28

1  remedies CYBERsitter seeks under its Lanham Act claims are at least as broad as

2  those available under an unjust enrichment claim.

3        CYBERsitter also argues that "a cause of action for unjust enrichment can

4  properly be alleged even if a remedy at law exists," citing statutes providing for

5  establishment of a constructive trust.  Opp., 24:10-17.  Yet again, this expedient

6  argument has no basis in CYBERsitter's Complaint, which does not request that a

7  constructive trust be established for CYBERsitter's benefit.  Nor does CYBERsitter

8  explain how a constructive trust remedy would be substantively different from the

9  restitution and accounting remedies that it already seeks.

10        Under these circumstances, Google respectfully requests the Court dismiss

11  CYBERsitter's unjust enrichment claim as meaningless surplusage.  *See*, *e.g.*,

12  *Mattel, Inc. v. MGA Entertainment, Inc*., 782 F. Supp. 2d 911, 1014 (C.D. Cal.

13  2011) ("[S]tand alone claims for unjust enrichment are simply redundant of relief

14  already available under other existing law, and . . . have the potential to cause

15  needless confusion to the fact-finder and the Court."); *Foster Poultry Farms v.*

16  *Alkar-Rapidpak-MP Equipment, Inc*., 2011 WL 2414567, *6 (E.D. Cal. June 8,

17  2011) (dismissing unjust enrichment claim and concluding that "unjust enrichment

18  is not an independent cause of action because it is duplicative of relief already

19  available under various legal doctrines."); *see also Hearns v. San Bernardino Police*

20  *Department*, 530 F.3d 1124, 1132-33 (9th Cir. 2008) (the district court may strike

21  surplusage from a complaint); *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal.

22  2005) (the court may strike "'redundant' matter [that] consists of allegations that

23  constitute a needless repetition of other averments....").

24  **B.**    **Denying Google's Request To Dismiss Plaintiff's Unjust**

25         **Enrichment Claim For Failure To Meet and Confer Would Result**

26         **In Inefficiency**

27        Plaintiff argues that Google's motion to dismiss CYBERsitter's unjust

28  enrichment claim should be denied without consideration because the parties did not

discuss this ground in their July 27, 2012 meet and confer.  Opp., 22:12-15.  This unjustified sanction would needlessly create judicial inefficiency.  CYBERsitter's attempt to elevate form over substance should be rejected.  First, Google met and conferred in good faith regarding its anticipated motion six weeks before filing its motion.  Any failure to discuss this particular ground for dismissal was inadvertent.  Second, CYBERsitter was not prejudiced by the oversight.  It had ample time to respond to Google's motion, as is evident from its full briefing of the unjust enrichment issue.  Opp., 22:9-25:14.  Third, CYBERsitter does not argue that if the parties had met and conferred, it could or would have narrowed the issue briefed or amended its Complaint to avoid the motion.  Thus, sanctioning Google by failing to consider this argument would merely result in delay and inefficiency because the parties would brief exactly the same issue later—after engaging in wasteful and futile discovery.  This would contravene the Federal Rules of Civil Procedure, which "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Google therefore respectfully requests that the Court consider the parties' fully-briefed argument regarding CYBERsitter's unjust enrichment claim.  *See Hart v. Gaione*, 2006 WL 1431480 at *2-3 (C.D. Cal. May 18, 2006) (ruling on merits of motion where defense counsel attempted in good faith to comply with Local Rule 7-3 before filing a motion to dismiss).

## <u>Conclusion</u>

For the foregoing reasons and those detailed in Google's Motion, Google respectfully requests that the Court dismiss or transfer the entire case pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or, in the alternative, dismiss with prejudice plaintiff's Counts IV, VI, VIII, IX and X against Google pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: October 9, 2012          QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                By /s/ Margret M. Caruso
                                   Margret M. Caruso
                                   Attorneys for Google Inc.