FAYER GIPSON LLP
Gregory A. Fayer (State Bar. No. 232303)
GFayer@fayergipson.com
Elliot B. Gipson (State Bar No. 234020)
egipson@fayergipson.com
Minh Z. Kuo (State Bar No. 287489)
MKuo@fayergipson.com
2029 Century Park East, Suite 3535
Los Angeles, California 90067
Telephone: 310.557.3558
Facsimile: 310.557.3589

Attorneys for Plaintiff
CYBERsitter, LLC

FILED
CLERK, U.S. DISTRICT COURT
OCT 16 2012
CENTRAL DISTRICT OF CALIFORNIA
BY           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>Google Inc., a Delaware corporation; ContentWatch, Inc., a Utah corporation, d/b/a Net Nanny; and DOES 1-10, inclusive,<br><br>    Defendants. | CASE NO. CV12-5293-RSWL (AJWx)<br><br>**CYBERSITTER'S SUR-REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GOOGLE'S MOTION TO TRANSFER PURSUANT TO RULE 12(B)(3), OR IN THE ALTERNATIVE, TO DISMISS CYBERSITTER'S STATE LAW CLAIMS AGAINST GOOGLE PURSUANT TO RULE 12(B)(6)**<br><br>Judge: Hon. Ronald S. W. Lew<br>Ctrm: 21<br><br>Hearing Date: October 23, 2012<br>Hearing Time: 10:00 a.m.<br><br>Action Filed: June 18, 2012<br>Trial Date: TBD<br><br>[filed concurrently with Evidentiary Objections] |

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff CYBERsitter, Inc. ("Plaintiff" or "CYBERsitter") submits this sur-reply memorandum in opposition to Defendant Google, Inc.'s ("Defendant" or "Google") motion to transfer pursuant to Rule 12(b)(3), or in the alternative, to dismiss CYBERsitter's state law claims pursuant to Rule 12(b)(6) ("Motion").

## I. ARGUMENT

### A. Google's Newly Submitted "Policies" Do Not Render the Claims at Issue Subject to the Forum Selection Clause

Because Google cannot point to a single case that applies a forum selection clause to claims which *do not* relate to the substance of the underlying agreement,[1] Google has improperly introduced new evidence on reply of purported *additional terms* to Google's AdWords user agreement (the "Agreement") – "policies" which do not appear anywhere in the Agreement and which Google failed to include, or even mention, in its Motion papers – in an unavailing attempt to argue that the Agreement somehow relates to the claims at issue in this lawsuit. Reply 8:15-9:10. It does not.

As a preliminary matter, Google's new evidence of its purported "trademark policies" and "editorial guidelines" are submitted without proper foundation or authentication and therefore, should not be considered. *See* Evidentiary Objections to Supp. Decl. of Sarah Buer; Fed. R. Evid. §§ 401, 602, 901. Moreover, Google provides incorrect information about how they can be accessed, fails to provide any information as to when the policies were put in place or made available to users, and fails to allege whether they were in place at the time that CYBERsitter clicked through

---

[1] The cases cited by Google stand merely for the proposition that a forum selection clause may apply to tort claims which do relate to the substance of the agreement in which it appears, entirely consistent with CYBERsitter's position. Even Google's attempts to distinguish the cases cited by CYBERsitter demonstrate the Ninth Circuit rule that a court can only apply a forum selection clause to non-contract claims which relate to the substance or subject matter of the contract in which it appears. Reply, 5:1-6:4, 7:23-8:14 (citing cases which applied a forum selection clause to tort claims which "'closely related' to a defendant's 'rights and duties' under the agreements….related in some way to rights and duties enumerated in the exclusive dealership contract… directly related to interpretation of the distributor agreement…").

its consent to the Agreement. *See* Supp. Fayer Decl. ¶¶ 2-7; Supp. Buer Decl. ¶¶ 2-3 (stating only that the policies were on Google's site on October 9, 2012).

Regardless, such policies cannot salvage Google's forum selection argument, because these "policies" – even if incorporated, in part, into the Agreement (which is unclear at this stage) – do not make the Agreement any more related to the claims at issue than in Google's first attempt to construe the Agreement in its Motion.

To begin with, the Ninth Circuit has stated that "a general monitoring policy," such as Google cites here, does not constitute a contract term such that contractual liability can be imposed thereon. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107-08 (9th Cir. 2009"). Because such policies are not properly considered terms of the Agreement, Google's attempt to use them to expand the scope of the Agreement fails.

But even if Google's "policies" were interpreted as somehow binding upon the parties via the Agreement – and it is far from clear whether Google even argues that this is the case – it would not expand its scope. Indeed, the language in the Agreement that references these policies clearly provides that CYBERsitter's "***Program use*** is subject to all applicable Google and Partner policies, including without limitation the Editorial Guidelines." Buer Decl., ¶ 3, Ex. B. By the plain terms of the contract, the phrase "Program use" circumscribes the parameters of CYBERsitter's policy compliance as pertaining to CYBERsitter's own advertising use of Google's programs. Likewise, the potentially vast pool of "Google and Partner policies" are not incorporated wholesale and without limitation into the Agreement. Rather, the relevance of such policies to the Agreement is expressly limited to the "***applicable*** Google and Partner policies" – that is, the policies applicable to CYBERsitter's "***Program use***." *Id.* ("Program use is subject to all applicable Google and Partner policies…."). This is consistent with the fact that, as explained in Plaintiff's opposition, *every other term of the Agreement pertains to CYBERsitter's own advertising*. Thus, far from militating in favor of transfer, the very language on which Google relies reinforces CYBERsitter's reading of the contract as limited to

1  CYBERsitter's own participation in the advertising program.

2  Google's "trademark policies" argument thus fails under the *Manetti-Farrow*
3  test. *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir. 1988)
4  (whether a forum selection clause applies depends on "whether resolution of the
5  claims relate to interpretation of the contract."). The "trademark policies" do not in
6  any way affect CYBERsitter's claims against Google. Google does not claim, nor can
7  it, that CYBERsitter's alleged adoption of the "trademark policies" has any bearing
8  whatsoever on Google's liability for the claims CYBERsitter has made against it here.
9  Under Ninth Circuit law, this is all that matters – as applicability of the forum
10 selection clause hinges on whether the claims at issue require interpretation of the
11 contract. *Manetti-Farrow, Inc.,* 858 F.2d at 514. Here, they do not, and Google's
12 newly-asserted "trademark policies" do not change this fact.

13 To use Google's analogy, if there is any "sandbox" which these "rules" govern,
14 it is one that is defined by the Agreement and includes nothing more and nothing less
15 than CYBERsitter's rights and responsibilities as to its own advertising. If this Court
16 were to follow the tortured logic of Google's "rules of the sandbox" analogy,
17 Google's "sandbox" would know no practical bounds and the forum selection clause
18 would apply to any claim that touched upon any of Google's or its "Partners'"
19 policies, regardless of whether it related to the subject matter of the contract. And
20 Google's universe of policies is vast, covering virtually every conceivable online
21 activity. In fact, the "trademark policies" that Google imputes to the Agreement are
22 not even directly linked to the Agreement. Suppl. Decl. Fayer ¶ 7. Contrary to the
23 evidence submitted by Google, the "trademarks policies" are one page out of dozens
24 of separate policy pages at least *two* degrees removed from the initial link. *Id.* ¶¶ 2-7.

25 If Google's position is correct, any conceivable claim against Google would be
26 bound by the forum clause. This would lead to an absurd and "fundamental[ly]
27 unfair" result. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct.
28 1522, 1528, 113 L. Ed. 2d 622 (1991). And it is certainly one that Google did not

FAYER GIPSON LLP

3
PLAINTIFF'S SUR-REPLY IN OPPOSITION TO GOOGLE'S MOTION TO TRANSFER

reasonably communicate to CYBERsitter. *See Corna v. Am. Hawaii Cruises, Inc.*, 794 F. Supp. 1005, 1008 (D. Haw. 1992).[2] It was not reasonable to expect Plaintiff to understand that in clicking through the Agreement, a vague reference to dozens of undefined "Google and Partner policies" would render the forum selection clause to cover virtually every conceivable claim CYBERsitter might have against Google.

### B. Google May Not Obtain Dismissal for Improper Venue

Google mentions in its Reply that a court may dismiss a case pursuant to Rule 12(b)(3) for improper venue. Reply 2:18- 3:3. However, Google failed to make such a request in its Notice or Motion papers. *Id.* 2:14-3:3. Google cannot, therefore, obtain a dismissal which it did not properly request. *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("We decline to consider this issue here because "arguments not raised by a party in its opening brief are deemed waived."); *United States v. Ortiz-Merida*, 224 F. App'x 583, 585 (9th Cir. 2007) ("As a general rule, 'issues raised for the first time in the reply brief are waived.'").

## II. CONCLUSION

Google's belated attempt to rely on the alleged incorporation of dozens of "Google and Partner policies" has no effect on the scope of its Agreement with CYBERsitter. The forum selection clause in the Agreement does not apply to the claims at issue in this suit, and the Court should deny Google's Motion in its entirety.

---

[2] Google's assertion that CYBERsitter applies an incorrect Second Circuit standard to its analysis of the forum selection clause's enforceability is at best, misinformed, and at worst, intentionally misleading. Reply, 3:19-21. While CYBERsitter cites to a Second Circuit case *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009), this case merely provides a summary of the elements that the Ninth Circuit has found are necessary to enforce a forum selection clause. *See Corna*, 794 F. Supp. at 1008 (applying "reasonable communication" test) (citing *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir.1987)); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1291 (9th Cir. 2006) (notice required for enforceability of forum selection clause); *Manetti-Farrow, Inc.*, 858 F.2d at 513 (same elements).

| | |
|---|---|
| DATED: October 16, 2012 | FAYER GIPSON LLP<br>GREGORY A. FAYER<br>ELLIOT B. GIPSON<br>MINH Z. KUO<br><br>By_____/s/_____<br>GREGORY A. FAYER<br>Attorneys for Plaintiff CYBERsitter, LLC |