1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CYBERsitter, LLC, a California limited liability company | ) ) ) ) | CV 12-5293 RSWL(AJWx) |
| Plaintiff, | ) ) ) | **ORDER re: Defendant's Motion to Transfer, or in the Alternative to Dismiss Plaintiff's State Law Claims [13]** |
| v. | ) ) | |
| Google Inc., a Delaware corporation; ContentWatch, Inc., a Utah corporation, d/b/a Net Nanny; and DOES 1-10, inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Currently before the Court is Defendant Google Inc.'s ("Defendant") Motion to Transfer Pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the Alternative to Dismiss Plaintiff's State Law Claims Pursuant to Rule 12(b)(6) [13].  The Court having reviewed all papers submitted pertaining to this Motion and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court hereby **DENIES IN PART and GRANTS IN PART**

1  Defendant's Motion.

2  **I. BACKGROUND**

3      This Action stems from a Complaint filed against
4  Defendant and ContentWatch, Inc. ("ContentWatch";
5  collectively "Defendants") by CYBERsitter, LLC
6  ("Plaintiff"), a corporation that developed, markets,
7  and sells an Internet content-filtering program known
8  as "CYBERsitter."  The CYBERsitter program, which went
9  to market in 1995, has been continuously marketed and
10 sold to the public since that time.  Compl. ¶ 13.
11 Plaintiff is the owner of trademark rights in the
12 CYBERsitter mark.  Id. at ¶ 16.

13     ContentWatch is a Utah corporation d/b/a "Net
14 Nanny."  It markets and sells an Internet content-
15 filtering software program also known as "Net Nanny."
16 Id. at ¶ 9.

17     Defendant is one of the world's largest providers
18 of Internet search engine services.  A portion of
19 Defendant's revenue comes from displaying sponsors'
20 paid advertisements on its search engine and other
21 Websites for which Defendant provides sponsored ads.
22 Id. at ¶ 18.  In response to keyword searches on
23 Defendant's search engine, sponsors' paid advertising
24 results called "sponsored links" are displayed with
25 other search results.  Id.

26     In or about 2000, Defendant launched a paid
27 advertising program known as the "AdWords" program,
28 which allows sponsors to purchase certain keywords that

trigger the sponsor's advertisement whenever a user conducts online searches through Defendant's search engine using those keywords.  <u>Id.</u> at ¶ 20.  In the early 2000s, Plaintiff, d/b/a Solid Oak Software, signed up online for an AdWords account in order to advertise the CYBERsitter program on Defendant's AdWords platform.  Milburn Decl. ¶ 5.  In connection with the AdWords account, CYBERsitter's president, Brian Milburn, was presented with a clickwrap agreement[1] in 2006 entitled "Google Inc. Advertising Program Terms" ("Agreement").  <u>Id.</u> at ¶ 6.  In relevant part, the opening paragraph of the Agreement reads:

> These Google Inc. Advertising Program Terms
> ("**Terms**") are entered into by, as applicable,
> the customer signing these Terms . . . or that
> accepts these Terms electronically ("**Customer**")
> and Google Inc. ("**Google**").  These Terms govern
> Customer's participation in Google's
> advertising program(s) ("**Program**") . . . .
> These Terms . . . are collectively referred to
> as the "**Agreement.**"

Opp'n 5:7-9 (bold in original).

In addition, the Agreement includes "miscellaneous" terms that, *inter alia*, provide:

---

[1] Clickwrap agreements are online agreements that "require a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." <u>U.S. v. Drew</u>, 259 F.R.D. 449, 462 n.2 (C.D. Cal. 2009).

1    ALL CLAIMS ARISING OUT OF OR RELATING TO THIS
2    AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE
3    LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE
4    COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA,
5    AND GOOGLE AND CUSTOMER CONSENT TO PERSONAL
6    JURISDICTION IN THOSE COURTS.
7 Mot. 2:14-18 (caps in original).
8    According to Mr. Milburn, he has not run any paid
9 advertising for the CYBERsitter program though
10 Defendant's AdWords program since December 2010.
11 Milburn Decl. ¶ 6.
12    Plaintiff alleges that "[e]arlier this year," Mr.
13 Milburn learned that Defendants, as part of the Google
14 AdWords platform, were running paid advertisements for
15 ContentWatch's Net Nanny program, which included the
16 CYBERsitter trademark in them.  Compl. ¶ 27.
17 Additionally, when an Internet user would search on the
18 Google search engine for "CYBERsitter," or similar
19 terms, ContentWatch's advertisements with the
20 CYBERsitter trademark would be displayed, often as the
21 first result in the user's search.  Id.  CYBERsitter
22 has never authorized Defendant, Net Nanny, or any other
23 party to use the CYBERsitter mark in connection with
24 ContentWatch's advertisements.  Id. at ¶ 27.
25    As a result, on June 18, 2012, Plaintiff filed a
26 Complaint against both Defendants, charging them with
27 trademark infringement, false advertising, unfair
28 competition, and unjust enrichment.  The Complaint

specifically alleges that Defendant Google has violated
various federal and California laws by (1) selling the
right to use Plaintiff's CYBERsitter trademark to
ContentWatch, which in turn illegally uses the
trademark in its online advertisements through
Defendant's advertising program, and (2) permitting and
encouraging ContentWatch's use of "CYBERsitter" in its
online advertisements through Defendant's advertising
program.  Defendant subsequently filed the present
Motion, arguing that the Action should be transferred
in its entirety pursuant to the forum selection clause
contained in Plaintiff's AdWords Agreement with
Defendant or, in the alternative, that Plaintiff's
state law claims against Defendant should be dismissed
pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II. Transfer of the Case Pursuant to Rule 12(b)(3)**

**A.   Legal Standard**

   1.   FRCP 12(b)(3)

   A motion to dismiss premised on the failure of a
plaintiff to initiate an action in the venue mandated
by a forum selection clause is treated as a motion to
dismiss under Federal Rule of Civil Procedure 12(b)(3).
Arqueta v. Banco Mexicano, 87 F.3d 320, 324 (9th Cir.
1996).  Furthermore, 28 U.S.C. §1406(a) states that
"the district court of a district in which is filed a
case laying venue in the wrong division or district
shall dismiss, or if it be in the interest of justice,
transfer such case to any district or division in which

it could have been brought."  Generally a transfer will
be in the interest of justice because the dismissal of
any case that could have been brought somewhere else is
time-consuming and justice defeating. Miller v.
Hambrick, 905 F.2d 259, 262 (9th Cir. 1990).

When a party seeks enforcement of a forum selection
clause under Rule 12(b)(3), a district court is not
required to accept the pleadings as true and may
consider facts outside of the pleadings. Id.  See also
Nextrade, Inc. V. Hyosung (Am.), Inc., 122 Fed. Apx.
892, 893 (9th Cir. 2005); AF Holdings LLC v. Doe, No.
12cv1523-AJB (KSC), 2012 WL 4339072 (S.D. Cal. Sept.
20, 2012).  Furthermore, a court must draw all
reasonable inferences and resolve factual conflicts in
favor of the non-moving party.  Murphy v. Schneider
Nat'l, 362 F.3d 1133, 1138 (9th Cir. 2004).

2.  Forum Selection Clauses

Federal law applies to the analysis of both the
validity and the enforcement of a forum selection
clause.  Manetti-Farrow v. Gucci Am., 858 F.2d 509, 513
(9th Cir. 1988).  "Forum selection clauses are *prima
facie* valid, and are enforceable absent a strong
showing by the party opposing the clause that
enforcement would be unreasonable or unjust, or that
the clause [is] invalid for such reasons as fraud or
overreaching."  Id. at 514 (internal quotation marks
omitted); see also Bagdasarian Prods., LLC v. Twentieth
Century Fox Film Corp., No. 2:10-CV-02991-JHN, 2010 WL

515136 at *2 (C.D. Cal. Aug. 12, 2010) (holding that enforcement "is unreasonable where it would 'contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision'").

**B.  Analysis**

1. Plaintiff's Objections

As a preliminary matter, Plaintiff objects to the Declaration of Ms. Buer, and the exhibits attached thereto on the basis of lack of foundation and lack of personal knowledge.  Because the Court need not rely on Ms. Buer's Declaration or the attached exhibits for its analysis, Plaintiff's objections are **DENIED** as moot.

Additionally, Plaintiff objects to the Supplemental Declaration of Ms. Buer on the basis of lack of foundation, lack of personal knowledge, and irrelevance.  Moreover, Plaintiff objects to the attached exhibits, which are screen shots of Defendant's Editorial Guidelines, last accessed on October 9, 2012, and Defendant's AdWords trademark policies, last accessed on October 9, 2012.  The Court finds that Ms. Buer's statement about working as a legal analyst for Defendant's Online Legal Support, absent additional facts, is insufficient for finding that Ms. Buer has personal knowledge about the guidelines or policies to which she attests or about their application to Plaintiff's Agreement.  See Fed. R. Evid. 602.  Ms. Buer also fails to properly

authenticate the attached exhibits pursuant to Rule 901.  Accordingly, the Court **GRANTS** Plaintiff's objections to the Supplemental Buer Declaration and the exhibits attached thereto.

    2.  <u>Motion to Transfer</u>

    The Court **DENIES** Defendant's Motion to Transfer. It is clear from a plain reading of the forum selection clause in light of Plaintiff's Agreement that the clause does not apply to the claims at issue here.  <u>See Doe 1 v. AOL LLC</u>, 552 F.3d 1077, 1081 (9th Cir. 2009) ("Contract terms are to be given their ordinary meaning . . . .  Whenever possible, the plain language of the contract should be considered first. . . . We read a written contract as a whole, and interpret each part with reference to the whole.")  The Agreement explicitly "govern[s] *Customer's* participation in Google's advertising program(s)".  Opp'n 5:7-9 (emphasis added).  The Agreement solely addresses *Plaintiff's* participation as a customer in Defendant's advertising program, not Plaintiff's rights or duties in regard to a third party's unlawful infringement of its trademark.

    Defendant argues that the "Google Program(s)" phrase will be rendered "superlative" if the Court interprets it as covering only claims relating to *Plaintiff's participation in* the Google Program.  Reply 6:5-21.  In support of its argument, Defendant relies on <u>U.S. v. Hathaway</u>, 242 F.2d 897, 900 (9th Cir. 1957)

1  and <u>Clarendon Nat. Ins. Co. v. Ins. Co. of the West</u>,
2  442 F. Supp. 2d 914, 926 (E.D. Cal. 2006).  These cases
3  are not on point here because the Court is neither
4  disregarding the "Google Program(s)" phrase, as
5  addressed by the <u>Hathaway</u> court, nor is it reading
6  inconsistent or contradictory meaning into the plain
7  language of the clause, as addressed by the <u>Clarendon</u>
8  court.  Furthermore, this interpretation of the "Google
9  Program(s)" phrase does not amount to the objectionable
10 surplusage about which Defendant is so concerned.

11      Lastly, as to Defendant's assertion that
12 Plaintiff's claims relate directly to the Agreement
13 because of Defendant's Editorial Guidelines and
14 trademark policies that are found on separate Web
15 pages, the Court is not persuaded.  Plaintiff's claims
16 are unrelated to Defendant's general monitoring
17 policies and therefore are not subject to the forum
18 selection clause.

19      Based on the aforementioned, the Court **DENIES**
20 Defendant's request to transfer the case because the
21 forum selection clause in Plaintiff's Agreement does
22 not apply to the claims at issue in the case.

23    **III. Dismissal of Plaintiff's State Law Claims**
24 **A.   <u>Legal Standard</u>**

25    1.   <u>FRCP 12(b)(6)</u>

26      In a Rule 12(b)(6) motion to dismiss, the Court
27 presumes all factual allegations of the complaint to be
28 true and draws all reasonable inferences in favor of

the non-moving party.  <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).  A dismissal can be based on the lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citation omitted).  Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The Ninth Circuit has repeatedly held that a district court should grant leave to amend a dismissed claim, unless the court determines that the pleading cannot possibly be cured by the allegation of other facts.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

2.   <u>Communications Decency Act</u>

1    The federal Communications Decency Act ("CDA")

2  provides, in part: "No provider or user of an

3  interactive computer service shall be treated as the

4  publisher or speaker of any information provided by

5  another information content provider."  47 U.S.C. §

6  230(c)(1).  The statute goes on to define "information

7  content provider" as "any . . . entity that is

8  responsible, in whole or in part, for the creation or

9  development of information provided through the

10  Internet or any other interactive computer service."

11  Id., § 230(f)(3).  The Ninth Circuit clarified that if

12  an interactive computer service provider "materially

13  contribut[es]" to the alleged illegal content, it is

14  deemed as having developed the information and acted as

15  an information content provider that is not entitled to

16  the CDA's general immunity provision.  Fair Hous.

17  Council of San Fernando Valley v. Roommates.com, LLC,

18  521 F.3d 1157, 1168 (9th Cir. 2008); see also Swift v.

19  Zynga Game Network, Inc., No. C 09-05443 SBA, 2010 WL

20  4569889 at *5 (N.D. Cal. Nov. 3, 2010).  An information

21  service provider does not become liable as an

22  "information content provider" merely by augmenting

23  online material; it must materially contribute to the

24  information's "alleged unlawfulness."  Roommates, 521

25  F.3d at 1168.

26  ///

27  ///

28

11

**B.    Analysis**

    First addressing Plaintiff's state law claim of false advertising, Plaintiff alleges that both Defendant and ContentWatch willfully and intentionally "made untrue and misleading statements in . . . False Ads concerning Plaintiff's products and services." Compl. ¶ 87.  However, Defendant argues that the advertisements were created by ContentWatch alone and not by Defendant.  Opp'n 13:20-14:3.  Because Defendant's entitlement to immunity under the CDA depends on whether Defendant "developed" or materially contributed to the content of these advertisements, it is too early at this juncture to determine whether CDA immunity applies.  Thus, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's eighth claim for false advertising.  See Chang v. Wozo LLC, No. 11-10245-DJC (D. Mass. March 28, 2012).

    As to Plaintiff's remaining state law claims of trademark infringement, contributory infringement, unfair competition, and unjust enrichment, Plaintiff's allegations do not amount to the heightened level of "material contribution" that the Ninth Circuit requires in order for the Court to find that Defendant is an information content provider.  Thus, Defendant is entitled to CDA immunity to the extent that Plaintiff's state law claims attempt to hold Defendant liable for infringing content of the advertisements at issue. ///

1    However, to the extent Plaintiff's claims arise

2  from Defendant's tortious conduct related to something

3  other than the content of the advertisements, CDA

4  immunity does not apply. See Jurin v. Google Inc., 695

5  F. Supp. 2d 1117, 1122 (E.D. Cal. 2010); see also

6  Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d

7  413, 419 (1st Cir. Feb. 23, 2007) (noting that "[a] key

8  limitation [of the CDA] is that immunity only applies

9  when the information that forms the basis for the state

10  law claim has been provided by 'another information

11  content provider.'" (emphasis in original)).

12    Plaintiff has pled sufficient facts in the

13  Complaint to support cognizable state law claims for

14  trademark infringement.  See Vallavista Corp. v.

15  Amazon.com, Inc., 657 F. Supp. 2d 1132, 1136 (N.D. Cal.

16  2008) (finding that actions for trademark infringement

17  under both California law and the Lanham Act require

18  the same support).  To prevail on a claim of trademark

19  infringement, the holder of a registered trademark must

20  show that another person is using: (1) a reproduction,

21  counterfeit, copy or colorable imitation of a mark; (2)

22  without the registrant's consent; (3) in commerce; (4)

23  in connection with the sale, offering for sale,

24  distribution, or advertising of any goods or services;

25  (5) where such use is likely to cause confusion, or to

26  cause a mistake or to deceive.  15 U.S.C. § 1114(1)(a);

27  Century 21 Real Estate Corp. v. Sanlin, 846 F.2d 1175,

28  1178 (9th Cir. 1988).  Here, Plaintiff alleges that

Defendant, without authorization from Plaintiff, sold to third parties the right to use Plaintiff's CYBERsitter trademark in Defendant's advertising program, AdWords. Compl. ¶ 72. Plaintiff further alleges that as a result of Defendant selling the right to use Plaintiff's trademark, consumers are likely to mistakenly associate Plaintiff's goods and services with those offered by third parties. Id. at ¶ 73. Thus, Plaintiff has sufficiently pled a claim of trademark infringement that is not barred by CDA immunity.

As to Plaintiff's state law claim of contributory infringement, California Business and Professions Code § 14245(a)(3) provides, in relevant part, that an individual who "[k]nowingly facilitate[s], enable[s], or otherwise assist[s] a person to manufacture, use, distribute, display, or sell goods or services bearing a reproduction, counterfeit, copy, or colorable imitation of a mark registered under [California trademark law], without the consent of the registrant" is subject to civil liability. Plaintiff alleges that Defendant, without Plaintiff's consent, (1) encouraged and facilitated third parties to use the CYBERsitter trademark in paid advertisements, (2) facilitated, encouraged, and assisted in the incorporation and display of the CYBERsitter trademark in the text and title of third party's advertisements, (3) sold the right to use the CYBERsitter trademark to third

parties, (4) displayed the CYBERsitter trademark in close proximity to third party advertisements, and (5), displayed the CYBERsitter trademark in Defendant's proprietary directory in order to encourage and facilitated the mark's unlawful use in the AdWords program. Compl. ¶ 72. Thus, Plaintiff's claim sufficiently alleges the facts necessary under Section 14245(a)(3) to stand as an independent claim that does not hinge on Defendant's alleged contribution to the content of the injurious advertisements.

Under California's Unfair Competition Law ("UCL"), "unfair competition . . . [means] and include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. To state a claim under the UCL, a plaintiff must plead that (1) the defendant engaged in one of the practices prohibited by the statute, and (2) the plaintiff suffered actual injury in fact as a result of defendant's actions. Rolling v. E*Trade Securities, LLC, 756 F. Supp. 2d 1179, 1192 (N.D. Cal. 2010). In its Complaint, Plaintiff alleges that Defendant violated Plaintiff's trademark rights under both federal and California law and engaged in acts of false and deceptive advertising. Compl. ¶ 96. Presuming such allegations to be true, Plaintiff has sufficiently pled a claim for unfair competition that withstands Defendant's Motion to Dismiss based on CDA immunity.

15

As to Plaintiff's claim for unjust enrichment, Defendant additionally argues that it should be dismissed on other grounds.  Mot. Part III.  Because a determination of whether Plaintiff's unjust enrichment claim stands as an "independent tort" depends on the Court's ruling on this additional argument, the Court will address whether Plaintiff's unjust enrichment claims survives this Motion in Part III.B, <u>infra.</u>

In sum, for the state law claims of trademark infringement, contributory infringement, and unfair competition, Plaintiff has sufficiently pled the facts necessary to establish Defendant's acts as independent torts that are not barred by CDA immunity.  Therefore, the Court **DENIES** Defendant's Motion to Dismiss these claims.

## IV. DISMISSAL OF PLAITIFF'S UNJUST ENRICHMENT CLAIM

As noted by both parties, there is a split within California courts regarding whether unjust enrichment is an independent cause of action.  Compare Jogani v. Superior Ct., 165 Cal. App. 4th 901 (2008), McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457 (2006), and McBride v. Boughton, 123 Cal. App. 4th 379 (2004), with Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723 (2000), and First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657 (1992).  "Generally, federal courts in California have ruled that unjust enrichment is not an independent cause of action because it is duplicative of relief already available under various legal doctrines."  See

1  Vicuna v. Alexia Foods, Inc., No. C 11-6119 PJH, slip
2  op. at *3 (N.D. Cal. April 27, 2012).  The Court
3  follows suit and **GRANTS without leave to amend**
4  Defendant's Motion to Dismiss Plaintiff's claim against
5  Defendant for unjust enrichment.

6                      **V. CONCLUSION**

7       For the reasons stated above, the Court **DENIES**
8  Defendant's Motion to Transfer and Motion to Dismiss
9  Plaintiff's State Law Claims.  The Court **GRANTS without**
10 **leave to amend** Defendant's Motion to Dismiss
11 Plaintiff's unjust enrichment claim against Defendant
12 Google.

13
14 **IT IS SO ORDERED.**
15 DATED: October 24, 2012
16
17                     RONALD S.W. LEW
                       _____
18                     **HONORABLE RONALD S.W. LEW**
19                     Senior, U.S. District Court Judge
20
21
22
23
24
25
26
27
28

                                 17